USCA4 Appeal: 16-7208    Doc: 12    Filed: 10/28/2016    Pg: 1 of 54

4 a

USPS TRACKING # & CUSTOMER RECEIPT

9114 9014 9645 0640 4576 16
For Tracking or inquiries go to USPS.com or call 1-800-222-1811.

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## INFORMAL BRIEF FOR HABEAS AND SECTION 2255 CASES

**No.** 16-7208,    US v. Franesiour Kemache-Webster

8:10-cr-00654-RWT-1, 8:14-cv-02005-RWT

### 1. Jurisdiction

A. Name of court from which you are appealing: U. S. District Court Southern District, Md.

B. Date(s) of order or orders you are appealing: August 03, 2016

### 2. Timeliness of notice of appeal (for prisoners)

Exact date on which notice of appeal was placed in institution's internal mailing system for mailing to District Court: August 21, 2016 it was sent to the U.S. District Court - Southern District of Maryland, Greenbelt. On September 08, 2016 - this Court filed and forwarded to appellant.

### 3. Certificate of Appealability

Did the district court grant a certificate of appealability?   Yes [ ]No[X]  Did not state - See Order

If Yes, do you want the Court of Appeals to review additional issues that were not certified for review by the district court?    Yes [ ]No[ ]  I would like to address several

If Yes, **you must** list below the issues you wish to add to the certificate of appealability issued by the district court. If you do not list additional issues, the Court will limit its review to those issues on which the district court granted the certificate.

I would like to also address

1. — Conflict of Interest. The trial/sentencing lawyer made several attempts to sever from each other. The trial court would 6th Amend Violation not sever... lawyer sends letter to Appeals Court - See Exh.

2. — Cruel and Unusual Punishment... The trial court sentence me 8th Amend Violation to a life sentence while others of worst records received the 10 year minimum - and order I serve in the CMU
— See additional sheet for more information —

### 4. Issues on Appeal

Use the following spaces to set forth the facts and argument in support of the issues you wish the Court of Appeals to consider on appeal. You must include any issue you wish the Court to consider, regardless of whether the district court granted a certificate of appealability as to that issue. You may cite case law, but citations are not required.

**Issue 1.** 5th Amend Violation  Plain Error - Amended Indictment · Variance

See Attached  **Supporting Facts and Argument.**

The Appellant was charged with Coercion & Enticement of 18 U.S.C. § 2422(b). The indictment list no victim, no sexual offense nor overt acts. Yet the trial court and sentencing court convicted & sentenced for Enticement of Minor to wife

46

page 4 - #3 Addendum

Additional Arguments
To Be Raised

1.- Conflict of Interest
   See: Attorney's Letter To U.S. Court of Appeals
       Exhibit — 4 and 5a-5c

2. — Cruel and Unusual Punishment
   Sentenced To Service Incarceration In
   Terre Haute, Indiana's Counter Terrorism Unit's (C.T.U's)
   Communications Management Unit (C.M.U.) a known
   Terrorist Unit also called Gitmo Bay North East

3. — Collateral Estoppel - Double Jeopardy
   Main Portions of the Instant Offense Were
   Heard and Held Six Months Earlier In
   D.C. Superior Court --- Rule In Appellant's
   Favor - With All The Same Parties

4.    Void Son- Vagueness Doctrine
      The Use of 18 USC § 2422(b) and
      4B.1.1 and 4B1.2 Misage

5

where the Appellant's e-mails, letters and phone calls were nothing more than inappropriate conversations and communications. e.g. non social-normal speech between he and his then teenage daughter. The daughter had expressed and explained in her On-Camera-Interview that there was nothing going on with her and the Appellant, and that she had just came into his life since they'd been estranged for over 11 years by the birth mother & step father.
*See Exhibit - 2 & 3*

5th Amend Violation
See attached

**Issue 2.**

6th Amend Violation
See Attached

— Ineffective Assistance of Counsel      *Indictment & On Service...*

**Supporting Facts and Argument.**

Through out the entire case from appointment until sentencing the attorney/client relationship was in duress and distress

Both the lawyer and appellant made several attempts to be removed - severed from each other... The Trial Court refused

The lawyer did not cross-examine the mother of the case for her reason or motives -- when it was addressed that she was an issue to the daughter... He (the lawyer) was aware of a career criminal case for 18 USC § 2422(b) who received 12 years as apposed to the Appellant receiving a life sentence and sent to the CMU.
*See Exhibit -*

**Issue 3.**

14th Amend Violation
See Attached

Batson Violation and Improper Jury Instruction

**Supporting Facts and Argument.**

— During Voir dire - The Appellant was tried by 12 women an arrangement of 10 black women and 2 white women. On Aquittal/New Trial Rule 29 The trial court on the day of sentencing denied appellant's argument and motion - Sentenced to Life and to the C.M.U. of Terra Haute, Indiana for the past was 7 years

— During Jury instructions - The Court and Judge instructs the Jury that a minor cannot consent/assent to 18 USC § 2422(b) and did not instruct on a substantial step prong.

**Issue 4.**

8th & 14th Amend Viol.

Imposition of Sentence

**Supporting Facts and Argument**

See Attached

The Sentencing Court used improper guidelines to sentence the appellant - he was quadruple counted - where he had only 3 criminal history points and was given 12 -- then issued changes not found by a jury -- sentenced to 'life' where the same court, prosecution and police... gave a career offender with the same 12 history points and a greater offense level 144 months

*The trial Court Sentenced appellant to life, and ordered it to be serviced in Terre Haute, Indiana's Death Row Unit now called CTU's CMU CTU - Counter Terrorism Unit --- CMU Communications Management Unit, e.g. a Terrorism Unit ... which was unregulated until May 2015. See Exhibit -*

## 5. Relief Requested

**Identify the precise action you want the Court of Appeals to take:** *The Appellant wishes to have a certificate of appealability ... have conviction and sentence vacated ... at the worst have sentence reduced to the mandatory mem of 10yrs.*

## 6. Prior appeals (for appellants/petitioners only)

A. Have you filed other cases in this Court? Yes [X] No [ ]

B. If you checked YES, what are the case names and docket numbers for those appeals and what was the ultimate disposition of each?

*Arlington, Va 03 - 041 - 1994*
*CR - 96 - 025 ; 10-17*
*USCA - 11-4801*
*15 - 6844*
*16 - 9922 → was prematurely heard before filing was entered*

_Jon Francisco B. Kemache-Webster_
Signature
[Notarization Not Required]

_Jon Francisco B. Kemache-Webster_
[Please Print Your Name Here]

*I have been following up with Deputy Clerk, Jeffery S Neal.*

## CERTIFICATE OF SERVICE
### *********************

I certify that on _19 Oct 2016_ I served a copy of this Informal Brief on all parties, addressed as shown below:

*I provided Cover missive to request by direction for the Clerk of the Court to ECF to all parties involved on page 2 and 3 of this filing*

_Jon Francisco B. Kemache-Webster_
Signature

---

**NO STAPLES, TAPE OR BINDING PLEASE**

Addendum:
Issue #1 Plain Error, Amended Indictment - Variance
Under: Stirone v United States
(1959) 4 Led 2d 252; 361 U.S. 212; 80 S.Ct.270
Absence of a charge in the indictment
it was reversible error for a trial court to
try defendant on a charge not indicted for.

On or about October 18, 2010; the Appellant
was issued a one count - no overt act - nor listed
victim indictment; for a crime of Coercion and
Enticement pursuant to 18 U.S.C § 2422(b).
which carries a minimum mandatory of 10 years
to a life sentence. The Appellent was sentence
to a life sentence and ordered to service it
at CTU's CMU... e.g. CTU- Counter Terrorisen
Units CMU - Communication Management Unit of
Terre Haute, Indiana also termed Guantanamo Bay
North East... it's known as FBOP- Federal Bureau
of Prisons Terrorism Unit... which was unregula-
ted by the Congressional C.F.R. and Prisons
Program Statement until May of 2015.
The Appellant [KeMarche Webster] serviced
nearly (7) seven years incident free until he
was transfered out of there by the FBOP
Regional Director on August 05, 2016.
to service his sentence and a more -less
restrictive and less stressful environment;

7

Continued:
Issue - #1

where the immediate administration and staff have deemed him "Not A Threat" but as that of "An Asset" to the institutions. Most in part -- because on or about July 25, 2012 the Appellant, had displayed extreme and complete heroism -- when he assisted in protecting the life of a female lieutenant Correctional officer who was being brutally assaulted by one of the C.M.U. Terrorist inmates.

So now the Appellant is currently housed in USP Tucson, Arizona which is not only a "drop off yard", but also a "sex offence program yard" as well as a "protection" yard. Psychology has deemed the Appellant a non sexual preditor nor in need of any Sex Offense Program (SOP) assistance.

Under Bain Supra, 121 US. 1; 30 L. Ed 849; 7 S. Ct. 781 (1887) It is error for a trial court upon an indictment charging a defendant with crime (in this case Coercion and Enticement under 18 U.S.C. § 2422(b)... by means of interstate commerce of a minor to commit a sexual activity) and later add other charges after it was returned by a grand jury without being re-sent to the grand jury.

8

Continued:
Issue # 1

After an indictment has been issued its charges may not be broadened through amendment except by the grand jury itself.

A federal Court cannot permit a defendant to be tried on charges that are not made in the indictment against him.

Although the trial court does not permit a formal amendment of an indictment, the rule that the charges of the indictment may not be broadened through amendment except by the grand jury itself is violated where the trial court, over defendant's objection permits the gov't to offer evidence on a charge not in the indictment and submit that charge to the jury.

A Variance (variation) between indictment and proof is more than a variance between pleading and proof and cannot be dismissed as harmless error, where the variation destroys defendant's substantial right to be tried only on charges presented in an indictment returned by the (a) grand jury.

Herein the jury were informed that the relationship between the Appellant and Biological daughter was a violation of Maryland Code Annotated 3-323 Incest, which he was never charged with nor indicted for.

9

Continued:
Issue. #1

The empaneled jury... which had consisted of 12 women (10 black women and 2 white women) addressed more so on a case of incest and rape more so on Coercion and Enticement by means of Interstate Commerce. which the Appellant Still finds extremely hard to find since... Coercion means "Threat" and "Force" and Enticement means "Solicite" and "Enchant" which either never had taken place Since the Appellant was 1017 miles away Servicing a 6 month Sentence in Illinois for a white collar crime of one count of personal bad check over $200.°° AC Code

The purpose of the requirement of the Fifth Amendment that a person be indicted by a grand jury is to limit his jeopardy to the offense(s) charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge; the purpose is defeated by a device or method which subjects the defendant to prosecution for an act which the grand jury did not charge—

A defendant's right under the Fifth Amendment, to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away with or without court amendment of the indictment.

See _Ex parte Bain_, 121 U.S.1; 30 L.Ed 849; 7. S.Ct 781
16. Am. Crim. Rep. 122 (1887)

Continued:
Issue - 1

If it lies within the province of a court
to change the charging part of an indictment
to suit its own notions of what it ought to have
been, or what the grand jury would probably have
made it - if their attention had been called to
suggested changes, the great importance which
the common-law attaches to an indictment
by a grand jury, as a prerequisite to a prisoner's
trial for a crime, and without which the United
States Constitution says.

"No person shall be held to answer," may be
broken away until its value is almost destroyed.
Id. 121 U.S. 1, 10. . . . that after the indictment
was changed it was no longer the indictment
of the grand jury who presented it. Any other
doctrine would place the rights of the citizen
which were intended to be protected by the
Constitutional provision, at the mercy or control
of the court or proceeding attorney. Id 121 U.S. 1, 13.

See: United States v Norris: 281 U.S. 619; 50 S. Ct 424 (1930)
Cf  Clyatt v United States; 197 U.S. 207, 25 S. Ct. 429 (1905)

- Nothing: Can be added to an indictment without
    the concurrence of the grand jury by
    which the true bill was found —

3.  Continued: Such as that of:
    Accept and sign on as Counselor of Record for the Petitioner's case.

4.  That during the [ENTIRE] process of: detention, trial, request of acquittal
    and sentencing there had been an extreme attorney-client conflict of interest
    concern and claim established, that both parties had made several request to
    severe the attorney-client relationship, but were made to continue. The attorney-
    client relationship was [NEVER] accepted between both parties [NOR] was there
    ever an attorney-client bond ever established.
    During the dates of: on or about; December 27, 2010 to August 05, 2011; the
    Petitioner, had made several request to the Counselor of Record, which were [NOT]
    (accepted), (honored) or (taken into consideration).
    Example:
        The Petitioner, [KEMACHE-WEBSTER], was never presented physically in
    front of an official e.g. [Magistrate] or [District Court Judge] to have a
    detention hearing held while appearing in the Southern District of Maryland,
    Greenbelt. The Call Docket Sheet [Entry #8-10], states that there was a deten-
    tion hearing held, but it was [NOT] held with the Petitioner present. The prior
    Counselor of Record: Mr. Andrew Carter Esq. waivered on the Petitioner's behalf
    without the Petitioner's knowledge or approval. [THERE IS NO SIGNATURE, STIPULA-
    TION, or AGREEMENT on the Petitioner's part] The Petitioner was not given an
    opportunity to be given a bond or any combination of one.
        The Call Docket Sheet, [Entry #9], shows that the entry was sealed.
        On September 16, 2010, the Petitioner was arrested and detained in the
    U.S.P. Marion prison, while preparing for release, after having serviced a six
    month sentence for a bad check case, that was imposed from Washington, D.C.'s
    Superior Court on March 18, 2010; Case No.: 2009 CF2 019166  Judge: J.M.Mott.
        The Petitioner, was taken by the local Illinois Sheriff's Office of
    the Williamson County Sheriff's and detained. Later transported to the Benton
    County Southern District of Illinois, to answer to the arrest and detention of
    the Southern District of Maryland, Greenbelt; complaint filed by U.S Postal
    Investigator Ms. Kia T.Pickens; who was not even a victim or a party of the
    complaint. The Petitioner, was presented before the Honorable Magistrate Judge:
    P.M. Frazier, as well as participated in a 3-way conference with Illinois/ D.C.
    and self on a Pre-Trial Status and signed waivers under Rule § 5 for Preliminary
    an Detention Hearing on September 16, 2010; This was brought to Mr. Proctor's
    full attention and nothing was done about it. The petitioner was not arraigned
    in Greenbelt, Maryalnd until 32 days later from arrest in Marion, Illinois.

Also see:

> Hutchins v. Garrison, 724 F.2d 1425, 1430-31(4th Cir. 1983)
> Marzullo v. Maryland, 561 F.2d 540, (4th Cir. 1977)

Furthermore, in considering the prejudice prong of the analysis, the court must not grant relief solely because the petitioner can show that; but for counsel's performnce, the outcome would have been different.

> Sexton v. Trench, 163 F.3d 874, 882 (4th Cir. 1998) ( stating....

Rather, the Court " can only grant relief under Strickland if the 'result of the proceeding was fundamentally unfair or unreliable."

> Id.,(quoting Lochhart v. Fretwell, 506 U.S. 364 369-70, 113 S.Ct.838, 122
>                                                                   L.Ed 2d 180 (1993)

Under these circumstances the petitioner "bears the burden of proving the Strickland prejudice" Fields supra @ 1297 (citing Hutchins supra))

A ineffective assistance of counsel claim requires the petitioner to establish that his counselor's error was so flagrant that this court can conclude that it resulted from neglect or ignorance rather than from informed professional deliberation or a strategic motive.

See: Marzullo v. Maryland, 561 F.2d 540-44 (4th Cir. 1977)

* The Petitioner, KEMACHE-WEBSTER will bring before this Honorable Said Court his I.A.C. claim as thus..........

1. The Counselor's failure to obtain a detention hearing.

2. The Counselor's failure to follow through on Petitioner's Rule § 5 waiver from Illinois to Maryland, after being received by the Southern District of Maryland to answer to the instant offense.

3. The Counselor's failure to challenge the "Subject Matter Jurisdiction" e.g. the 10th Amendment of the U.S. Constitution in regards to the Petitioner, where it is undisputed that the Petitioner did NOT commit a crime of incest in the State of Maryland or else-where, nor was the crime committed or at no time initiated in the States of Maryland by the Petitioner, NOR against that of the United States of Americas.

4. The Counselor's failure to investigate or obatin exculpatory evidence that would of favored the Petitioner or show his innocence or to in the latter aid in his abondonment/renouncement/ withdrwal defense pursuant to MPC 5.01(4).

5. The Counselor's failure to cross-examine the government's witness.

6. The Counselor's failure to invoke the petitioner's Subpoena Powers as is given and provided to him under the 6th Amendment of the U.S. Constitution.

7. The Counselor's failure to invoke the Petitioner's Due Process Clause as is given and provided to him under the 5th & 14th Amendment of the U.S. Constitution.

8. The Counselor's failure to invoke the Petitioner's Right To Confrontation as is given and provided to him under the 6th Amendment, as well as all other rights that are granted to the Petitioner and due to him under the that of 4th, 5th, 6th, 7th, 8th, 9th, 10th, 11th & 13th Amendment of the U.S. laws & its Constitution.

Ineffective Assistance of Counsel

9. The Counselor's failure to challenge the Courts' Jury Instructions as to how they were given and applied, where the Petitioner was charged and also indicted on an "ATTEMPTED THEORY", yet instructions were given on a uncharged and unindicted "COMPLETED THEORY", where at the very least, the Counselor of Record should of requested an alternative instruction to the jury.

10. The Counselor's failure to fully address the Petitioner's Defense Theory of abandonment/ renouncement/ withdrawal to the Court and the jury where that of Model Penal Code = MPC 5.01(4) applies with attempted & a substantial step to the Petitioner's instant offense of 18 USC § 2422(b), Coercion & Enticement are of concern.

11. The Counselor's failure to argue the Petitioner's Rule 29, Motion For Acquittal where it was undisputed that the Rule § 29, Motion should of been properly agrued and accepted, especially when the Court had directed the Counselor of Record to assist the Petitioner in his Rule § 29 claim.

12. The Counselor's failure to call upn the victim/witness "NIKKI", when the Counselor of Record knew that her statements before the Court & Jury would be conflicted and where he knew that she had been keeping contact or attempted to keep contact with the Petitioner; where the government continued to state that it was the Petitioner violating Court orders.

13. The Counselor of Records'failure to challenge the validity of the governments witnesses true moral or ethical--motive for the actual complaint against the Petitioner, where it is undisputed that a related charge should of been brought towards the government's witness and her current spouse.

14. The Counselor's failure to raise or bring to the Court or Jury's attention the In-Camera Interview of the government's victim/witness, where it showed that the government's victim/witness "NIKKI" was coerced, conflicted & that the behaviour and statements were confabulations from beginning to end. And where the government failed to bring such evidence to the Court and Jury's attention, as well as other peices of exculpatory evidence that the Petitioner has recently provided before the Court. The Counselor failed to raise such, Brady, Giglio & Jenks Material before the Court or the Jury which prejudiced the Petitioner.

15. The Counselor's failure to address a, Batson violation, where the Petitioner was facing a min/man Life sentence for the instant offense, that involved that of a case that centered around all women, had in-fact presented him with an all women jury, because the Counselor of Record struck four white males from the venerie pool during his permptory chaleenges, which perjured the Petitioner.

16. The Counselor's failure to put on a defense. The Counselor of Record refused to put on a defense, stating that it was not for him to prove on innocence but for the government to make a Prima facie showing and to prove the Petitioner to be guilty.

17. The Counselor's failure to address the constructive amendment, of the indictment where it is undisputed that the Petitioner was charged in a one count indictment but was found guilty of something totally different from the charged indictment.

Becuse of the Counselor of Records lack of performance, which goes
way beyond his actions being accepted as one of a strategic move for
the defense is truly a Strictland; violation, and both prongs are met.
The Strickland Prongs:

1. Counsel's performance fell below an objective standard of reasonableness.

2. Counsel's deficient performance prejudiced the defendant, resulting in
   an unreliable and fundamentally unfair outcome in the proceeding.

A Defendants failure to meet one of the promgs  to the test negates a  ←
court's need to consider the other. In deciding whether counselor's per-
formance was ineffective, a court must consider the totality of the circum-
stances. Under the performance prong of the Strickland test, though there
is a "strong possibility" & "strong presumption" that the counselor's
stratergy and tactics fall ' within the wide range of reasonable profes-
sional assistance. Court's typiclly refuse to characterize counselor's
performance as ineffective assistance when counsel acted accordingly to
the defendant's restrictions on stratergy, if the defendant failed to
provide the counselor with complete  and accurate information, or counsel
refused to assist the client / defendant in presenting false evidence or
otherwise violating the law.

In interpreting the prejudice prong, the Supreme Court has held and
identified a narrow catagory of cases in which prejudice is presumed: when
there has been an actul or constructive denial of the assistance of coun-
sel altogether; whencounsel is burden by an actual conflict of interest, or
when there are various kinds of state interference with counsel's assistance.

In these situations & circumstances, prejudice is so likely to occur
that a case-by-case inquiry is required and necessary.

If prejudice is not presumed, the defendant must show that the counsel's
error were prejudicial and had deprived the defendant of a "fair trial, a
trial whose result is relaible." This burden is met generally by showing
a reasonable probaility that the outcome of the proceeding would have been
different but for the counselor's error.

In regards to the Petitioner's, position, there was an extreme and very
continued conflict of interest between the Counselor of Record and that of
the Petitioner, that, a Memorandum of Opinion was posted in Lexis on the
issue and problems that the Petitioner was having, yet the District Court
found disfavor and challegend the Petitioner with being belligerent & dis-

-ruptive; in his behavior, and that the Court did not feel that the Conflict of Interest did not exist, though through every step of the process both the Petitioner & Counselor of Record stressed this issue before the Court's immediate attention, which was during detention, pre-trial and trial as well during the request for a Rule § 29, its argue and setencing.

The Petitioner's request for an instruction on the abandonment/ renounce-ment/ withdrawal defense was a viable and affirmative defense which was not taken under advisorment by the Counselor of Record, does constitute an open ineffective of assistance of counsel claim and meets both Strickland prongs. See:

Sanchez-Lopez v. Fuentes-Pujolos, 375 F.3d 121, 133 (1st Cir. 2004)(citing Gray v. Genlyte Group Inc., 289 F.3d 128, 133 (1st Cir. 2002) ( stating... such a refusal constitutes reversable error, only if it was prejudicial within light of the entire record. Id @ 133

The rational in the MPC for recognizing such a defense to attempt crimes is said to be two-fold:

1. First allowance of the defense recognizes that the actor's conduct no longer poses a threat or danger to society as the governemnt peceives the actor to be.

2. Secondly; the availability of the defense provides actor with a motive for desisting from their criminal design, thereby deminishing the risk that the substantive crime will be committed.

See:
United States v. Shelton, 30 F.3d 702 (6th Cir. 1994)(quoting in part.....
MPC § 5.01(4) cmt. 8 (official Dect. 1985)

Federal law provides an statutory definition of attempt:

See:
United States v. Dworken, 855 F.2d 12, 16 (1st Cir. 1988)(stating.......
Precedent, however establishes that a defendant can be convicted of an attempt, only if the gov't proves beyond a reasonable doubt that:

1. culpable intent; to commit the crime charged.

2. a substantial step towards the completion of the crime that strongly corroborates that crime, that strongly corroborates that intent.

See:
United States v Mc lamb, 985 F.2d 1284, 1292 (4th Cir. 1993) &
United States v. Sutton, 961 f.2d 476, 478 (4th Cir. 1992)cert. denied, 506
U.S. 858, 121 L.Ed. 2d 118, 113 S.Ct. 171 (1992)

The definition is consistent with the definiation of attempt in that of

attempt found in the MPC § 5.01(1)(c) (Propsed Official Draft 1988)
See:
> United States v. McFadden, 739 F.2d 149, 152 (4th Cir. 1984) cert denied
> 469 U.S. 920, 83 L.Ed 2d 235, 105 S. Ct. (1984)

The law of attempt is reasonably clear in the center but quite fuzzy around the edges; different formulations have been used to cope with a range of problems, such as degree of invovement, impossibility and also abandonment / renouncement / withdrawal, MPC § 5.01 cmt. (1985).

In the Fourth Circuit as well as other circuits including the First, the Courts', have taken the MPC as its guide. Under the Code of this guide's definition, set forth in part § 5.01 (reprint as an appendix to this opinion)

There are two key elements the offense of attempt.

1. An "intent" to commit the substantive offense; and

2. a "substantial step" towards its commission.

An attempt to commit a crime which is recognized as a crime distinct from the defendant's point of view results in the commission of a crime, but for some intervening circumstances. And 18 USC § 2422(b) specifically punishes an attempt to violate Coercion & Enticement laws, while the statute does not define the elements of attempt, the crime is nonetheless well in-fact understood in the law and its elements are not generally disputed.

To establish that a defendant committed a crime of attempt; the gov't must prove that:

1. the defendant had the requisite intent to commit a crime;

2. the defendant undertook, a direct act in a course of conduct planned to culminate in his commission of the crime;

3. the act was substantial, in that it was strongly corroborative of the defendant's criminal purpose; and

4. the act fell short of the commission of the intended crime due to some intervening circumstances.

See:
> United States v. Neal, 78 F.3d 901, 906 (4th Cir. 1996)
> United States v. Sutton, 961 F.2d 476, 478 (4th Cir. 1992)
> United States v. McFadden, 739 F.2d 149, 152 (4th Cir. 1984)( developing Fourth
> Circuit Standard from § 5.01 of the Model Penal Code)
> MPC § 5.01(1)(c);
> Clark & Marshall's Treatise on the law of Crimes § 4:06
> ( Melvin F. Wingersky ed, 6th ed 1958)

Ineffective Assistance of Counsel

The MPC from which the court's formulation was originally drawn; the following list of facts, which provides:

a)  lying in wait, searching for the following; the contemplated victim of the proposed crime.

b)  enticing or seeking to entice the contemplated victim of the crime, to go to the place contemplated for the commission of the proposed crime.

c)  reconnoitering the place contemplated for the commission of the crime.

d)  unlawful entry of a standard structure, vehicle or enclosure in which it is contemplated that the crime will be committed.

e)  possession of material to be employed in the commission of a proposed crime, that are specifically designed for such unlawful use or that can serve no lawful purpose of the actor under the circumstances.

f)  possession, collection or fabrication of materials to be employed in the commission of the proposed crime, at or near the place contemplated for its commission, of such possessions, collections or fabrications serves no lawful purpose of the actor under the circumstances.

g)  soliciting an innocent agent to engage in conduct constituting an element of the; proposed crime    MPC § 5.01(2)

Mere preparation for the commission of a crime however, does not constitute an attempt to commit a crime. Yet if preparation comes so near to the accomplishment of the crime that it becomes probable that the crime will be committed absent an outside intervening circumstance, the preparation may become an attempt.

Thus the line between preparation and a substantial act done towards the commission of a crime is inherently fact-intense, and it is not always a clear one to cypher through.

See:

Neal, 78 F.3d @ 906  ( citing U.S. v Coplon, 185 F.2d 629, 633 (2nd Cir 1950)

To determine whether conduct is preparation or an attempt, a court must accesses how probable it would have been that the crime would have been in it self committed, at least an perceived by the defendant had intervening circumstances not occured. Applying this standard, it becomes clear that this direct substantial act towards the commission of a crime need not be the least possible act before the commission.

An attempt comprises any substantial act in progression of conduct that is meant to culminate in the commission of the crime intended.

Thus; while [words] and discussions would usually be considered preparation for most crimes, a specific discussion could be so final in nature that it left little doubt that a crime was intended and would be committed had intervening circumstances not occured.

Herein; KeMache-Webster, while at the USP Marion, went to the administration to discuss with staff and the psychology department, months, weeks, and days prior to his discharge from the institution that such conversations and communications had taken place and that he was concerned about how best he could arrest them and what type of impact that they have, and how to deal with them without having some type of discord or reprocussions from his own than teenaged daughter, whom the conversations & communications stemmed from.

The government contends; that the Petitioner had not notified or had not spoken or given any one any indication of what was going on or had transpired.

The government contends; that they had in fact were the intervening party when the truth of the matter is that; the Petitioner was in direct contact with the psychology department in regards to the actions & matters and had made several request on how to best deal with the conversations & communications with his teenage daughter as well as asked the psychologist if they could give him a referral on how to properly address the issue.

The Petitioner's last consultation with the psychologist was on that of:

September 13, 2010; which was 3 days before the Petitioner's release date, and the date of his arrest for this instant offense, which was not thrawted, not hindered nor stopped by any agent or LEO at any point and time, since it was the Petitioner, [NOT] an agent or LEO that brought the incident forward to thrawt, hinder, stop, abandon, renounce, withdraw from going any further or be at any point and time completed [NOR] perceived as attempted.

See:

Federal Bureau of Prisons Psychology Data System Sheets (05/ to 09/2010) & In re: F.K.W., D.C. Superior Court; 2010 Neg. 000175 (03/26/2010 Wash, D.C.)

The Sixth Amendment of the U.S. Constitution & its Laws, has an ethical and fundamental right due to the client from their counsel.

In Florida v. Nixon, 543 U.S. 175, 76 CrL 171 (2004), the U.S. Supreme Court made clear that defense attorney's constitutional & ethical obligation to consult with their client does not require them to obtain express consent from the client regarding decisions of strategy. At the same time, however; the Nixon court reaffirmed the Sixth Amendment principle established in:

19

In Jones v. Barnes, 463 U.S. 745 (1983), and other cases-that some decisions respecting certain rights are so fundamental that the accused's choice will override that of learned counsel. Such rights cannot be waived by counsel without the defendant's informed consent on the record.

These decisions include the choice whether to plead guilty, whether to testify, and whether to take an appeal. In addition, Rule 1.2(a) of the ABA's Model Rules of Professional Conduct provides; in part, that " a lawyer shall abide by a client's decision concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be persued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation... In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

In the case of the Petitioner,[KEMACHE-WEBSTER]; the conduct of his defense counselor was inherently prejudicial and does not require a seperate showing of prejudice, because the Petitioner's counsel negated his basic trial rights and "failed to function in any meaningful sense as the given [prosecution's] adversary. Especially in not providing the jury with an alternative defense or a viable defense when the Petitioner gave counsel all of the important and useful information to investigate and persue such a plausible and viable defense.

Ordinarily; the Sixth Amendment: as interpreted in Strickland v. Washington, 466 U.S. 688 (1984), requires a defendant alleging an ineffective assistance of counsel claim to show not only that counsel's performance was deficient, but also that the deficient performance did caused prejudice to the defense, However; in United States v. Cronic, 466 U.S. 648 (1984), the court recognized that there are certain circumstances in which prjudice should be persumed from counsel's deficient performance.

One of the circumstances identified by any court is the situation in which " counsel entirely fails to subject the prosecution's case to any meaningful adversarial testing." In subsequent opinions the courts has explained that the difference between the rule of Strickland and the rule of Cronic, " is not of degree but of kind " and depends on whether the defendant alleges a defect in the " proceedings as a whole " or " at a specific point or points " in the proceedings.

CONFRONTATION CLAUSE:

MARYLAND CONSTITUTIONAL LAW § 37
&
U.S. CONSTITUTIONAL SIXTH AMENDMENT

The Confrontation Clause of the Sixth Amendment affords the defendant the right " to be confronted with the witness against him."[1]

The U.S. Supreme Court has interepted this Clause to bear that the introduction of out-of-court testimonial statements; unless the declarant is unavailable and the defendant has a prior opportunity to cross-examine the declarant[2]:

See:

Crawford v. Washington, 541 U.S. 36, 68, 124 S.Ct. 1354 158 L.Ed 2d 177(2004)

Inherent in this rule are two limitations:

1.   The statements at issue must be testimonial in nature.

See: Davis v. Washingtoin, 547 U.S. 813, 821, 126 S.Ct. 2266 165 L.Ed 2d 224(2006)

2.   The statement at issue must be hearsay.

( The Clause does not bar the use of testimonial statements for the purpose other than establishing the truth of the matter asserted. )


In Crawford, the "principle evil" the Confrontation Clause was meant to address, was ex-parte statements which were used as evidence against that of the accused. The Court held that the Confrontation Clause does not only apply to in-court testimony, but also out-of-court statements introduced at and during trial.

Under Crawford, it also left open how to reliably make the distinction between testimonial and non testimonial statements.

Justice Scalia: In discussion of "witness" as someone who bears testimony.

State and Federal Constitutions Guarantee Right of Confrontation does suggest--- the right of an accused to be confronted with the witness against him is not only guaranteed by this article, but is also available under the Fourteenth Amendment to the U.S. Constitution, in that the right given by the

---

[2] The Petitioner's daughter "NIKKI" the victim/witness did not testify, but was made unavailable, by the gov't. She was not unavailble by being out of the country nor in the hospital or incapacitated. She was under house arrest.

Sixth Amendment of the U.S. Constitution, which was made obligatory on the states in Pointer v. Texas, 360 U.S. 400, 85 S. Ct. 1065, 13 L.Ed 2d 923 (1965)

and also in Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed 2d 934 (1965)

and also in Franklin v. State, 239 Md. 645, 212 A.2d 279 (1965) ( stating....

The preogative of the defendant to have his accuser confront him is a keystone to our concept of criminal justice –– grounded on the unwaivering belief that an individual should be afforded the opportunity to challenging the witness against him through cross-examination.

See:
   State v. Collins, 265 Md. 70, 288 A.2d 163 (1972)

Both the federal & state guarantee of the right of confrontation does appear to be identical, and both are equally binding in criminal prosecutions in Maryland, as a matter of federal as well as state constitutional law.

See:
   Jackson v. State, 31 Md. App. 332, 356 A. 2d 299 (1967)

In terms of the right of confrontation, this article and the Sixth Amendment to the federal Constitution are virtually identical and have been held to express "the exact same right."

See:
   Gregory v. State, 40 Md. App. 297, 391 A.2d 437 (1978) cert. denied, 471 U.S. 1103 105 S.Ct. 2333 85 L.Ed 2d 849 (1985);
   Tichnell v. State, 290 Md. 43, 427 A.2d 991 (1981).

Court of Appeals declined to construe the Confrontation Clause of this article differently from the U.S. Supreme Court's construction of the Confrontation Clause of the Sixth Amendment.

See:
   Craig v. State, 322 Md. 418, 588 A.2d 328 (1991)

Purpose:

There are two signifigant purposes that lay at the core of the right of confrontation; or to why the confrontation clause is important:

1. Is to provide the defendant with an adequate opportunity for cross-examination; and

2. Is to give the judge and jury opportunities to observe the testifying witness's demeanor.[3]

---

[3]
The witness/victim was [NOT] made available to attend the trial she was under the direction of Juvenile Justice "Home Detention" Probation Violation

Ineffective Assistance of Counsel

## Production of The Victim/Witnes

I.   The government would contend that; the Petitioner should have invoked his 5th Amendment to the U.S. Constitution's Subpoena Powers, instead of stating that they were suppose to had shown a good-faith-effort of producing the victim/witness; and that the victim/witness was actually unavailable.

II.  The government would contend that; they did not need to produce the victim/witness for trial, and that none of the victim/witness's testimony was ever used or obtained to be used; to proceed in the Petitioner's trial.

III. The government would contend that; the Petitioner, in having to make his argument on the Confrontation Clause, that if he had faced his daughter during trial, [their victim/witness]; that it would of been harmful to the Petitioner's case, and perhaps ineffective of the Counselor of Record, by having confronted her.

## Petitioner's Counter of Production

I.   The length to which the government must go to had produced the victim/witness, was not a question of "reasonableness"; due mainly in part to it was very minimal; she was a 16 year old daughter living at home, in Silver Spring, Maryland, when she was not running away from home. She was a 16 year old student of Albert Einstein High School, until she was removed for several excessive behavior problems; not limited to disruptive and destructive actions that had her expelled. She was a 16 year old juvenile, displaying all of the signs of delinquency,- having several arrest, misdemeanor & felony; ranging from petit theft to assault and battery & resisting arrest on L.E.O's.

She as a 16 year old, was under the strict direction & supervison of the State of Maryland of Montgomery County's Juvenile Justice System; placed on H.I.S.P. = High Intensity Supervised Probation with an ankel monitor, than placed on Home Monitoring for V.O.P. = Violation of Probation, and restricted to Home Detention, eventually to some additional time in jail.

She was [NOT] displaced, out-of-the country [NOR] in the hospital under any LIFE or DEATH threatening situations or circumstances, and surely she was not and is not deseased. To have the Petitioner to have him invoke his 5th Amendment, U.S. Constitutional Subpeona Power Rights, to compel the Petitioner to bring forward the governments victim/witness, where it is his 6th Amendment U.S. Constitutional right to face his accuser, even though she made it perfectly clear that she never made such a claim or took out such an accusation against the Petitioner.

Petitioner's Counter of Production
Continued

I.     Yet, she is the victim/witness and the Petitioner had a Constitu-
tional right under the 6th Amendment Confrontation Clause to face her.

It appears that by the actions of the government, that she enjoys
and nefariously continues to relish an appetite for constantly trying
to play both sides of the Judicial [team] System, not knowing if she
pitching or catching, defending or prosecuting, or right or wrong; she's
constantly appearing; in the guise of the Devil's Advocate, yet deceiving
this Honorable Said Court at every turn and their Judicial Decisions by
presenting law in one way, changing it to suit another way at her choosing.

This is not the Devil's Advocate, but; that of the likes of the Devil
Incarnate herself.

See: Crawford v. Washington, 541 U.S. 36, 74 CrL 401 (2004)

In Crawford, the U.S. Supreme Court held that the Confrontation Clause
does not allow the admission at trial of a "testimonial" statements made by
a witness who does not appear at trial unless the witness is unavailable to
testify and the defendant has had a prior opportunity to cross-examine the
witness. The Crawford, however, expressly declined to provide its own precise
definition of a "testimonial statement" in the first instance. The Court did
explain that "[t]he constitutional text, like the history underlying the given
common-law right of confrontation...reflects an especially acute concern with
a specific type of out-of-court statement," and it noted that "[v]arious formu-
lations of this core class of "testimonial statements exist..."

These formulations include:

1.     "ex-parte in-court testimony or its functional equivalent-that is, consi-
dered material such as affidavits, custodial examinations, prior testimony
that the defendant was unable to cross-examine, or similar pretrial state-
ments that declarants would reasonably expect to be used prosecutorially."

2.     "extra-judicial statements...contained, in formalized testimonial materials
such as affidavits, depositions, prior testimony, or confessions,"

---

2.

A.U.S.A. Ms.LisaMarie Freitas Esq. has displayed this role & behavior at least on one
prior occasion, during trial and the answering of the Rule 29; vs. Direct Appeal. Where
she states, the witness [cannot] consent/assent to render a conviction, than states on
Direct the only way a conviction can be accepted the witness [must] consent/assent.
It seems that the government wants it both ways down the middle, the law does not straddle.

Petitioner's Counter of Production
Continued I.

3.   "statements that were made under circumstances which would lead an
objective witness reasonably to believe that the statement would be
available for use at a later trial.

The Crawford court said that "[t]hese formulations all share a common
nucleus and than define the Clause's coverage at various levels of abstractions
around it. "The Court ultimatly decided, however, that regardless of
which orbit around the common nucleus is the correct one, it includes statements
of the type at issue in Crawford.

Also See:

Davis v. Washington, 79 CrL 333 (U.S. 2006) (stating....

" Statements are nontestimonial when made in the course of police
interrogation under circumstances objectively indicating that the
primary purpose of the interrogation is to enable police assistance
to meet an on-going "emergency".   They are testimonial when the
circumstances objectively indicate that there is no such on-going
"emergency", and that the primary purpose of the interrogation is
to establish or prove past events potentially relevent to later
criminal prosecution.

Also See:

Ebb v. State, 341 Md. 578, 671 A.2d 974 (1996); overruled in part
on other grounds by Calloway v. State, 2010 Md. Lexis 211 (Md. 2010)

The Right of Cross-examination is not unlimited, the Confrontation
Clause is guaranteed to a defendant in a criminal case, and the right
to confront the witness against him and affords the defendant the true
right to cross-examine witness about matters relating to the witness's
bias, interest, or motive to fasify; this right, however, is not un-
limited, and trial judges retain wide latitude to impose reasonable
limits on cross-examination based on concerns about, among other things
harassment, prejudice, confusion of the issues, the witness's safety,
or interrogation that is repetitive or only marginally relevent.

Limitation on defense counsel's cross-examination may also arise,
provided that the defendant had a prior opportunity to confront the
witness in pretrial.

II.    The personal first hand knowledge that the government had and
possesed of the victim/witness making inquire that she wanted to keep
speaking and contacting the Petitioner, her father, before the Nov. 24,
2010; Protections Order, that she wanted clear & direct ties and contact
yet, the government wants to continue to make the relationship out to be
something else more than it was or is. The governemnt has received over
these past several months, letters, rejection notices from the Federal
Bureau of Prison official's, D.C. Superior Court Trial Transcripts as
well as Facebook post, which show that the victim/witness's general
demeanor and day to day conversation is no differ in how she spoke &

Petitioner's Counter of Production
Continued

II.   dealt with the general public the same as she did with her father
the Petitioner. In turn it shows that there is standing and concern
[NOT] discord [NOR] discernment as the government would contend.

The government has received validation and direct proof from a
D.C. Superior Court Trial transcript; dated March 26, 2010 a period
of exactly 6 months prior to the arrest of the Petitioner, showing
that Her Honor; Magistrate Judge: S.Pamela Gray; asked the victim/
witness [ what did she want and Why ]; and through out the entirety
of the transcript it showed favor to the Petitioner, but questions
and concern towards the mother and her present husband [NOT] to the
the Petitioner-father, as the government continues to prejudicely
proclaims and displays at any given turn.

See:
    D.C. Superior Court Trial Transcript
    In re: FKW, 10 Neg.175 (D.C. Superior Court 03/26/2010)
    Page 42 Line 12 - 25 & Pages 43 - 47

There was no issues or problems with the government's victim/
witness other than the abnorm, communications & conversations, there
were no other sexual or abnorm or aberrant behaviors involved. Nor
was there any YEARS of abuses, since there were no numbered amount of
years attached to the Petitioner and victim/witness family history.

Having the victim/witness to confront the Petitioner would of [NOT]
been a detrament to the Petitioner or his case, due in part that the
government's victim/witness had a multitude of behavior problems and
was [NOT] credible [NOR] presentable to the Court or the Jury in the
state that she was in at that moment, which was revealed to the Peti-
by the victim/witness of that time, which was released and recently
provided to the government.

See:
    Commonwealth v. Polk, 462 Mass. 23, 965 N.E. 2d 815 (2012)
    The defendant's constitutional right to present a defense was
    violated, when the trial court judge excluded defense evidence
    that the child victim had been previously sexually abused by
    another, and may have suffered from an undiagnosed memory dis-
    order or condition. On the defense theory, was that the child
    had confabricated her statements by filing in gaps in her memory
    with dim memories of prior sexual abuse.

Petitioner's Counter of Production
Continued II

In opinion; by Justice Ralf D. Gant, Mass Supreme Court

The defendant was constitutionally entitled to present the evidence, regardless, of the prohibitions.

In the courts statement:
The jury needs to learn what Molly [the victim] said, saw heard, and experienced regarding her prior sexual abuse; to properly evaluate the risk that Molly had a dissosociative disorder and that her memory of what had happend to explain her own events and her confabulations.

III.    Through out the three day trial, the government used e-mails, letters and phone calls from both parties the victim/witness and the Petitioner. The out-of-court statements are considered testimonials, and by Crawford & Davis; statements & testimonials are all useful to the Confrontation Clause of the 6th Amendment of the U.S. Constitution

See:
    Clark v. Edison, 2012 U.S. Dist. Lexis 103349 (07/25/2012)
    Crawford v. Washington, 541 U.S. 36, 74 CrL 401 (2004)

It seems, the ultimate question here is whether the victim/witness was unavailable dispite good-faith-eéffort on the prosecutions part, prior to the commencement of trial or sometime thereof, to locate and present the victim/witness.

The Petitioner's 6th Amendment's Confrontation Clause was in fact violated and he was deprived of that privilege. In retrospect the Counsel of Record was deficient in that aspect, it was not his call to [NOT] allow the Petitioner his fundamental right of the Confrontation Clause.

This in fact prejudiced the Petitioner, and the outcome of the case could of had a far different out-come.

Which includes:

1. Whether the lawyer had previously handled criminal cases.

2. Whether strategic tactics were involved in the allegedly incompetent action.

3. To what extent the defendant was prejudiced as a result of the lawyer's alleged ineffectiveness towards the defendant's criminal case; and

4. Whether the ineffectiveness was due to matters beyond the lawyer's control.

Currently we're not, or are concerning ourselves with the effectiveness of counsel; where there was a conscientious, meaningful legal representation whereby the defendant is advised of all rights and aspects, and the lawyer performs all required tasks reasonably according to the providing professional standards in criminal cases; such as that of the petitioners' case, here being addressed. See:
    Federal Rules of Criminal Procedures § 44, 18 U.S.C. § 3006A

    In order to collaterally attack a conviction or sentence based upon error that could have been, but were not persued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains [.] or he must demonstarte that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. See:
    United States v. Mikalayunas, 186 F.3d 490, 492-93(4th Cir. 1999)(citing Frady v. United States, 456 US 152 167-68, 102 S.Ct. 1584, 71 L.Ed 2d 812(82)).

Also see:
        Slone v. Powell, 428 US 465, 479 n.10 96 S.Ct 3037
                        49 L.Ed 2d 1069 (1976) (stating...

"Cause....requires a showing of some external impediment preventing counsel from constructing or raising the claim."

See:
    Murray v. Carrier, 477 US 478, 479 106 S.Ct. 2639, 91 L.Ed 2d 397 (1986) also
    Turner v. Jabe, 58 F.3d 924, 927 (4th cir. 1995)(citing Stricland v. Washington, Strikland v. Washington, 466 US 668, 687-91 104 S.Ct 2052 80 L.Ed 2d 674 (1984)

    A petitioner, pressing an ineffective assistance of counsel claim in relation to his sentence or conviction must demonstarte "a reasonable probability" that but for counsel's performance he would have received a more lenient sentence or may have not been found guilty and convicted of the instant offense. See:
    Royal v. Taylor, 188 F.3d 239, 249 (4th Cir 1999)(citing Strickland, 466 US @ 694)
    Id.@ 689; see also Fields v Attorney Gen. of Md., 956 F.2d 1290, 1297-9 (4th Cir.92)

The Petitioner, was commandeered from the State of Illinois, after having been released from the Federal custody of Illinois, he did [NOT] go before a State of Illinois, Judge or Justice of the Peace, but was held and detained by the local authorities of Illinois. that is a violation of the Petitioner's Tenth Amendment of the U.S. Constitution, which did not give the Southern District of Maryland subject matter jurisdiction. The Counselor of Record failed to argue. "The State of Illinois had original jurisdiction.

The Petitioner, constantly requested for a bail hearing e.g. detention hearing, but was [NOT] allowed [NOR] offorded the opportunity. This is a true violation of the petitioner's pre-trial rights & the Federal Bail Reform Act.

Though there is no constitutional right to bail. Yet under the Due Process Clause of the Fourteenth Amendment to the Constitution, a federal detainee is allowed to have a "hearing" and be heard on the merits of his given detention or relaese pending the out come of the instant offense.

For the court to conclude that the governments assesment of the defendant is to pose a dnager or, threat to the public or community a hearing on matter needs to be held. The defendant has a right to have a hearing held, to have counsel present at the hearing, to testfy on his own behalf, to cross-examine witnesses, and to present evidence.

See:
  18 USC § 3153(c)(1),(3) &  18 USC § 3142(e)(f)
  Rule 9 of Federal Rules of Appellate Procedure (District Court is required
      to state in writing or orally its reason for detention or release).
  U.S v. Abad, 350 f.3d 793 (8th Cir. 2003)(gov't must prove by preponderance
              of evidence that "no" conditions will reasonably assure the
              defedants' appearance.)
  U.S. v. Quatermaine, 913 F.2d 910, 917 (11th Cir. 1990) ( gov't must prove
                        that defendant by perpondeance of the evidence is no risk.)

During the Petitioner's detention, the Counselor of Record: Mr.Proctor was asked on several occassions what is his stratergy or defense of the case; his remark as it was during trail, was that he would [NOT] put on a defense, it was for the gov't to find the petitioner guilty, [NOT] for him to prove the Petitioner innocent. The  Counselor of Record did not cross-examine the gov't witness, Mrs. Morch-Tobe the Petitioner's ex-spouse, when he was constantly told and explained that the witness, had a motivation to go against the Petitioner as she had, and that the witness was very much aware that her own spouse was a main and direct issue to the instant offense, yet during trial the Court states that there is no immediate proof the witness the victims mother had a true or real knowledge of the fact that the victim "Nikki's" accusation of the witness "mother" had knowledge of the abuse of her spouse not the Petitioner.

The Counselor of Record, Mr. Proctor was told that there was a great deal of evidence that was readily available that if he had of been very diligent and zealous in his research and investigations, he would of been able to have obtained the evidence of the Washington, D.C. Superor Court Transcripts of the victim/witness "Nikki's" statements to the Magistrate Judge Her Honor S. Pamela Gray on March 26, 2010; which was made (6) six full months before the initiation of an arrest warrant for the Petitioner, when all information and accusations pointed [NOT] to the Petitioner, but to the gov't witness Mrs. Morch-Tobe and her spouse, Mr. Johnathan Tobe. As was with the In Camera Interview that was recorded on September 20, 2010, where the victim/witness was interviewed, rediculed and coerced by the detective "Levi" and the Montgomery County Dept of Social Service Worker "Courtney" while the victim/witness, at the time a minor; did not have a Guardian Ad Litem, a parent, an attorney nor adult present during the interview. And when the mother did make arrangements to show up, both the detective and social worker stated that they did not want the mother to come into the interview, but made it clear that the mother did in fact "Throw both the victim/witness [daughter] & the Petitioner [father] under the bus, and if they could they would make sure that the victim/witness would not be returned back to the gov't witness [mother]."

Yet, in the Transcripts from the March 26, 2010 hearing it states in part. Page 42 line 12:

> The Court [FKW] , I want to ask you, tell us why you want to go back and live with Dad once he is released?

Page 42 Line 14:

> FKW: Because he just got me and he treats me really well.

Page 43 Line 04:

> The Court: Okay. All right, And FKW when you go back to live with your mom, are you going to behave?

Page 43 Line 07:

> FKW: Yeah; I told everyone I would.

Page 43 Line 08:

> The Court: So you're going to listen?

Page 43 Line 09:

> FKW: Because if I wouldn't, and he isn't able to get me back, if I don't behave, I won't be able to live with him after he gets out.

Page 43 Line 13:

> FKW: And that's what I want.

Page 43 Line 14:

> The Court: All right. Okay. And will you feel safe going to live in Montgomery home and in the P.G. county home?

Page 43 Line 17:

> FKW: No. Just the Montgomery home.

Though at the time of trial the Petitioner was not made aware of all of the evidence that was readily available to him, he did direct his Counselor of Record to evidence and information that was at his grasp that the Petitioner could not obtain or have immediate access to as a Pre-trial detainee. Such as knowledge to D.C. Superior Court Records, the idea that the Petitioner had spoken to the USP Marion Prison staff and authorities in regards to the conversations and communications that had transpired between he and his daughter, whom later became a victim/ witness to the gov't.

The Petitioner had provided to the previous as well as the newly appointed Counselor's of Record the exact same information, yet the prior Counselor of Record had in-fact had his Private Investigator of the Federal Public Defenders Office: Mr. Sean Gordon attempt to retrieve a great deal of the evidence and information that the Petitioner has now obtained and has now presented that was not available to him at the time of trial or at the time of his sentencing, but was absolutely relevent for the case.

The fact that the Counselor of Record, did not persue any of the peices of evidence or information denied the Petitoner a meaning for defense to his case and instant offense. One of the greatest harms to the Petitioner is the fact that the Couselor of record did not put on or argue the possible defense of abandonment / renouncement / withdrawla from the given actions that the gov't and their witness professed had existed, when it was to be actually verified and shown that the Petitioner, had in-fact went before the USP Marion Prison staff & administration ⌊BEFORE⌋ there was a complaint made or an arrest or indictment made available.

See:

Baylor v. Estelle, 94 F.3d 1321 (9th Cir. 1997)(cert.denied 520 US 1151)
Counsel was ineffective for failing to follow up on lab reports suggesting that the defendant was not rapest.

United States v. Leibech, 347 F.3d 219 (7th cir. 2003)
Counsel was ineffective for failing to investigate the exculpatory evidence and not keeping promis made at opening statement.

Soffer v. Dretke, 368 F.3d 441 (5th Cir. 2004)
Defense Counsel failed to interview exculpatory witness.

Tenny v. Dretke, 416 F.3d 404 (5th Cir. 2005)
Defense Counselor failure to investigate.

The Petitioner, had brought to the Trial Court's attention on several occasions that there was a Conflict of Interest with his Counselor of Record yet the Court charges the Petitioner as being a person belligerent & dis-

-ruptive in his behavior; and that the Petitioner was trying to create a delay in the trial process, which was truly far from the truth. The Petitioner and his Counselor of Record were constantly at odds, and under no type of combination of mediation could or would repair or resolve their Conflict of Interest. A letter was provided by the Counselor of Record requesting his withdrawal from the case as well as included in his missive his collection of why the Petitioner should be granted relief in that court; stating that there was a Conflict of Interest and that he did not feel that he represented the Petitioner properly especially while having a pending judgment of a Bar Complaint hanging in the balance.

See:
    Letter to the Court of Appeals for the Fourth Circuit w/ request to withdraw.
    United States v. KeMache-Webster, 825 F.Supp. 2d 594 (4th Cir. 04/12/2012) &
    United States v. Kissi, 2013 U.S. Dist. Lexis 21044 (4th Cir. 02/07/2013)
                   (citing KeMache-Webster; belligerance & disruptive.)

    A criminal defendant is entitled to an instruction on his theory of defense, so long as the theory is a valid one and there is evidence in the record to support it. In making this determination; the Court is allowed to weight the evidence, make credibility determinations, or resolve conflicts of the proof.

    Rather, the Court's function is to examine the evidence on the record and to draw those inferences as can reasonably be drawn there from, determining whether the proof rather in light most favorable to the defense can plausibly support the theory of the defense.

    Though this is [NOT] a very high standard to meet for in its present context; to be "plausible" is to be "superficially reasonable"

    (["A] defendant is entitled to an instruction on his theory of defense if sufficient evidence is produced at trial to support the defense and the proposed instruction describes the applicable law.

    At trial, the defenses theory was that: Mr. KeMache-Webster had never at all ever formed an intent to engage in illicit sexual activity, nor did he initiate such illicit communications or conversations; with his teenage minor daughter.

    Nonetheless, at the close of trial courts argue; the Petitioner w/ his Counselor of Record, requested an instruction of Substantial Step as well as an instruction based on MPC 5.01(4); which defines that of:
* Abandonment/ Renouncement/ Withdrawal; as an affirmative defense to the instant offense of "ATTEMPT", the jury was not provided such instruction nor another alternative.

With the Petitioner, having so much exculpatory evidence readily available for the Counselor of Record to delve into, there was enough to prove and show petitioner' actual innocence as well as the petitioner's actaul proof of abandonment / renounciation / withdrawal from the given actions that the gov't and their witness professed existed.

See:

Baylor v. Estelle, 94 F.3d 1321 (9th Cir, 1997)(cert. denied 520 US 1151)
    Counsel was ineffective for failing to follow up on
    lab reports suggesting that defendant was not rapest.

United States v. Leibach, 347 F.3d 219 (7th Cir. 2003)
    Counsel was ineffective for failing to investgate the
    exculpatory evidence and not keeping promises made at
    opening statement.

Soffar v. Dretke, 368 F.3d 441 (5th Cir. 2004)
    Defense counsel failed to interview exculpatory witness.

Tenny v. Dretke, 416 F.3d 404 (5th Cir. 2005)
    Defense failure to investgate.

Because the Counselor of Record did not cross-examine the gov't's witness Ms. Morch-Tobe, about the actual cause or motive to bringing forward such a complaint through the use of the U.S.Postal Investigator, the jury did get an open opportunity to find out if there were any other reasons or motives that may of led to such an instant offense having been placed upon that of the petitioner. With; failure to do so, leads to [NOT] being represented effectively.

See:

Coleman v. Thompson, 501 U.S. 722, 754, 111 S. Ct. 2546, 2567, 115 L.Ed 2d
    640 (1991)(citing Murray v. Carrier, 477 U.S. 478, 488
    106 S.Ct. 2639 91 L.Ed 2d 397 (1986)

Addendum
Issue # 3

## Batson Violation and Jury Instruction

Under Batson, the State cannot use their peremptory challenges to exclude jurors of a cognizable racial group (or gender) to which the defendant belongs.

However, if the State gives a credible, non-racial reason for excluding a juror, there is no bar to the use of the peremptory challenge.

As in any equal protection case, the burden is, of course on the defendant who alleges the given discriminatory selection of the venire to prove the existence of some purposeful discrimination. In deciding if the defendant has carried his burden of persuasion, a court must undertake a sensitive inquiry into such circumstantial and direct evidence of intent as may be available. Circumstantial evidence of invidious intent may include proof of disproportionate impact. Once the defendant makes the requisite showing, the burden shifts to the State to explain adequately the racial exclusion. The State cannot meet this burden on mere general assertions that its officials did not discriminate or that they properly performed their official duties.

34

Continued
Issue #3

Rather the State must demonstrate the permissibly racially neutral selection criteria and procedures have produced the monochromatic result.
See: Robb v Ballard; 2011 US District Lexis 35576 (4th Cir 02/24/2011)

The equal protection clauses confers a right to be free from gender discrimination that is not substantially related to important governmental objectives. Beardsley v Webb. 30 F.3d 524 (4th Cir 1994) and also Davis v Passman; 442 U.S. 228; 99 S. Ct. 2264; 60 L Ed 2d 846 (1979).

The Equal Protection Clause of the 14th Amendment commands-that no State shall 'deny to any person within its jurisdiction the equal protection of the law,' which is essentially a direction that all persons similarly situated should be treated alike
See: City of Cleburne, Texas v Cleburne Living Ctr; 473 U.S. 432; 105 S. Ct. 3249, (1985) quoting Plyler v Doe, 457 U.S. 202; 102 S. Ct. 2382; (1982)-

Although "[t]he Equal Protection Clause was introduced as a restriction on State legislative action --- Plyler; 457 U.S @ 214 (emphasis added); gov't's do not escape the strictures of the equal protection clause in their roles as employees

Continued:
Issue #3

Consequently Maryland Courts (as that of the Southern District Court of Greenbelt, Maryland) rely on federal decisions interpreting the 14th Amend. as authority for interpreting Article 24 of the State of Maryland Statute. See; e.g. Att'y Gen. of Md. v. Waldron; 289 Md 683, 426 A 2d 929, (Md 1981)

Therefore, the analysis under Art. 24, is, for all intents and purposes, duplicative of the analysis under the 14th Amendment of the U.S. Constitution. See: Murphy v. Edmonds; 325 Md 342, 601 A 2d 102, 108 (Md 1992)

The Supreme Court has held that intentional gender discrimination by use of peremptory challenges contravenes the Equal Protection Clause. See: J. E. B. v. Alabama; 511 US 127, 128 L. Ed 2d 89; 114 S. Ct. 1419 (1994) (extending its holding in Batson v. Kentucky; 476 US 79; 80 L Ed 2d 69; 106 S. Ct. 1712 (1986), from racial discrimination to gender discrimination). The Appellant had in fact raised the issue during trial and felt that the Government had abused its discretion nor could they make a prima facie showing --- yet the trial court allowed the empaneling of the 12 women venire (10 black women and 2 white women) (based on a case that pertained to only females). The Appellant again raised the issue under Rule 29, which was denied at the opening of the Sentencing hearing.

Continued
Issue - #3

The Government States that its the trial
Counselor's fault of the 12 women (10 black women
2 white women) jury panel, the Counselor of record
States it's the gov't's fault... yet the jury
panel Still consisted of (10 black women and 2
white women) a panel of 12 women (to a female
gender only) case where the Government, the
lead law enforcement officials and gov't's
witnesses were female. The Appellant is a
mixed race male of color and gender bias was
a major issue to his case. See: [ECF Document 111
pages 2-4 of 8 pages US of A's Response To Defendant's Motion
For A New Trial - Exhibit -18] >18a through 18h

The exercise of peremptory challenges by the
gov't in a racially discriminatory manner violates
the equal protection clause. A defendant who challenges
the exercise of a peremptory challenge on equal protection
grounds bears the burden of proving intentional discrimi-
nation by the government. There is a burden-shifting
procedure for courts to follow in analyzing a claim
of purposeful discrimination in the jury selection
process. The party raising the Equal Protection challenge
must first establish a prima facie case of purposeful
discrimination in the selection process, in light of all
the relevant circumstances, including whether there
has been a pattern of strikes against members of —

37

Addendum:
Issue - #2

## Ineffective Assistance of Counsel

The decision of which witness to call upon at trial is a matter of trial Strategy under the trial Counsel's discretion. Such a decision comes with a strong presumption that it is a practice of several trial strategies, and it is generally --- immune from claims of Ineffective Assistance of Counsel.

Yet, still on the other hand it can be considered ineffective for failing to present exculpatory evidence, such as failing to call witnesses to support the defendant in an alternative - uncorroborated defense theory.

See: People v. Harmon, 26 NE 3d 344 Ill App (2d) Oct 28, 2013

other citations omitted: Harmon 26 NE 3d @ 351

Effective representation requires more than the advocate's courtroom function per se.

Indeed, adequate investigation may event the need for confrontation. Consideration --- may be required to locate persons who observed the Criminal act charged or who has information Concerning it.

38

Continued
Issue #2

After they are located, their full
and complete cooperation must be secured.
It may be necessary to approach
a witness several times to raise new facts
stemming from facts to be learned from
that of others.

See ABA Section of Criminal Justice
Defense Function Standard 4-4.1
Duty To Investigate (1993 ed)

Numerous federal courts have held that
a failure to call an exculpatory witness may
constitute Ineffective Assistance of Counsel
See: White v. Roper, 416 F.3d 728 (8th Cir 2005)
United States v. Ramsey, 323 F. Supp. 2d 1176 (ANC 2004)

A petitioner may request to set aside his
conviction based on jurisdictional errors, errors
of constitutional magnitude, or when a miscarriage
of justice has occured -- In reviewing a petition,
the Court reviews the evidence and draws all
reasonable inferences from it in the light most
favorable to the Government.

Continued
Issue #2

In the instant petition, Petitioner alleges errors of constitutional magnitude and several miscarriages of justice that (has) in fact been created by trial counsel and the Government; which, standing alone, or in combination has severely impacted the outcome of Petitioner's trial, and; have resulted in a miscarriage of justice; where, at present day; the Petitioner a mixed race black - native american male, with an ancient [and no violent - sexual] record nor history of attempting to commit any type of any aggrivated violence or sexual offenses is serving a 'LIFE' sentence based on a conviction at trial for one count of violating 18 USC § 2422(b).

Yet; due to the ineffective assistance of his trial counsel was convicted on an open court directed addressed -- amended indictment of a violation of Maryland Code Annotated 3-323 Incest; which he was never charged nor indicted upon.

During the original (starting date) of trial of April 19, 2011 -- the trial counselor used his peremptory challenges to strike four (4) white male from the veneire, in turn the prosecution removed all black males --- leaving Petitioner to proceed in trial with twelve women (ten black and 2 white).

Continual
Issue #3

— a particular race (or gender). Once a prima facie case of discrimination is established the burden shifts to the party whose conduct is challenged to come forward with a non-discriminatory explaination for the use of the peremptory strike. See: [ECF Doc. III page 3, 2nd paragraph, line 4] (stating: — The Government finds it ironic that the Defendant's primary complaint about the jury is it consisted of more females than males — when he repeatedly requested a female attorney to represent him in this case —

The request was based on ... the race containing [all females] involved to prosecute the Appellant, he felt his best defense would be to have a female to challenge the other females; not to empanel on [all female] jury to aid, assist, help or support the arguments of [all females] involved to prosecute the Appellant. That in and of it self would in fact prejudice the Appellant. There were no men available to aid, assist, help or support the defenses challenges against the [all females] involved. Men and women think, react and process things, situations, circumstances and events much differently; without a race neutral — gender neutral cross-section of veniremen the Appellant is prejudiced at the start of the trial ... an throughout. As for strikes -- The Court struck 3 white males not defense See: [Trial Transcript Apr 19, 2001 page 80 line 1-8]

41

Addendum,
Issue #4

## Imposition of Sentence - Sentence Disparity

The touchstone for the determining whether a fact
must be found by a jury beyond a reasonable doubt
is whether the fact constitutes as 'element' or 'ingredient'
of the charged instant offense. United State v O'Brien; 560
U.S. 218; 130 S.Ct. 2169 (2010).

The district court violated well established
Sentencing principles in imposing a Sentence that
resulted in 'LIFE' based upon an incorrect approach
and application of the United States Sentencing Guidelines [USSG].

Under 18 USC § 3742(f)(1), it permits the court
to address 'reasonableness' of the resulting Sentence
in light of 3553(a). Booker Suggest a reasonableness
Standard should govern review of the evidentiary guidelines
by the district court. United States v Crawford; 487 F.3d 1174 (11th Cir 2005)
also see; under United States v Booker; 543 U.S. 220; 125 S.Ct. 738
(2005) and Blakely v Washington; 542 U.S. 296; 124 S.Ct 2531 (2004)

Particularly, the Appellant's Sentence violates
his 6th Amendment right to a jury trial based upon his
Sentencing enhancements.

Blakely holds that because the facts Supporting
appellant's Sentence were neither admitted to nor found
by a jury trial on his federal Sentencing enhancement
ed. 542 U.S. 264 @ 306 (2004)

42

Continued,
Issue - #4

It also holds that because the facts supporting the defendant's sentence were neither admitted nor found by a jury, the sentence violates his 6th Amendment right to trial by jury. (Id).

When a judge inflicts punishment that the jury verdict alone does not allow, the jury has not found or proved all the facts which the law makes essential to the punishment and the judge exceeds his proper authority." (Id) As in Apprendi held, every defendant has the right to insist that the prosecutor prove to a jury all the facts legally essential to the punishment (Id)." The Statutory maximum sentence that a judge may impose should be solely on the basis of the facts reflected in the verdict and/or admitted to by the defendant ... in other words the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without "(a)ny additional findings."(Id)

Whether the judge's authority to impose an enhanced sentence depends on a specific fact (as in) Apprendi; 120 S. Ct. 2348 (2000)
one of several specific facts; or (as in) Ring; 122 S. Ct. 2428 (2002)
on (a)ny aggravating fact - as here; or (as in) Alleyne; 133 S. Ct. 2151 (2013
on judge found facts - as here; or (as in)

43

Continued:
Issue - #4

Molina-Martinez;

plain error when a Substantial right is there for violated, as also here with the criminal history score having been quadruple counted, where the Appellant's original criminal history score based up his original PSR where he had received a 6 (six) month federal sentence and was never released to the streets; so there is no way his criminal history points could have risen from a criminal history category score of II (3 points) to that of a criminal history category score of V (12 points) for the exact same conduct and history time table. See Exhibit -

And with the adjustment of the judge-found-aggravating facts, it remains the case that the jury verdict alone does not authorize the sentence.

"This suggest that the hard constraints found throughout Chapter 2 and 3 of the Federal Sentencing Guidelines, which require an increase in the Sentencing range upon 'specified' and 'factual' findings, will meet the same facts

See: e.g. USSG § 3C1.1 "obstruction of justice".
also see: In Blakely v Washington; 124 S. Ct. 2531 (2004)

44

Continued:
Issue #4

Appellant's claim against the Sentencing guideline enhancements is also based upon his 5th Amendment right to a grand jury indictment e.g. (Indictment Clause - right to be charged by the grand jury... "unless indictment is waived") also incorporating the Due Process Clause 14th Amend. See: United States v Cotton; 122 S. Ct. 1781 (2002)

Under Blakely, supra, there is a Categorical challenge to the enhancement under the federal Sentencing guidelines. In reviewing the indictment there's nothing to support the enhancements to the Appellant's sentence. See: [Indictment Exhibit - 1]

Similarly, Appellant challenges the enhancement because there was insufficient evidentiary support for the finding by the district court based on the Appellant's sentencing objections and the Sentencing hearing transcripts... Yet, this Court reviews de novo district court's interpretation of the sentencing guidelines and its application of the guidelines to the facts. See: United States v Gunn 369 F.3d 1229 (11th Cir 2004) also United States v Booker; 125 S. Ct. 738 (2005), Alleyne v United States; 133 S. Ct. 2151 (2013); Descamps v United States; 133 S. Ct. 2276 (2013); Peugh v United States; 133 S. Ct. 2072 (2013); Apprendi v New Jersey; 120 S. Ct. 2348 (2000) and Ring v Arizona; 122 S. Ct. 2428 (2002).

45

Continued!
Issue - #4

The District Court erroneously denied.
Appellant's objections to the factual allegations
as alleged in the PSR and addendums thereto...
... the Appellant through his Rule 29 motion
had objected to the facts in the P.S.R. as well as
several other issues brought up at trial -- yet
the Government cherry-picked which ones to
answer and address... yet also made statements
or affirmations to their answers which were factually
incorrect. Example... They stated; under Argument
1. - Jury Selection Was Properly Conducted: -
... The defendant struck four white males
during the Selection process. By doing so limited
the number of male jurors to the jury... See [Exhibit -26]
    This is so untrue... Appellant's trial consisted
of a 12 women jury panel [10 black women, 2 white women]
the two alternates were males whom had no fight in the
process... The Defendant -- did not remove four white
males from the Venire the Court removed three white
males on its own -- the Defense removed only one
white male... the prosecution removed the majority
See: [April 19, 2011 Trial Transcript page 80 line 1-8]
        Basically, the information that the Government
provides is not always correct, accurate, factual
nor right... especially if they know the information is not.

46

Continued:
Issue #4

One of the main factors... though not the only factor is the Appellant's issue on his mis-calculated criminal history categorical score; where the Appellant was quadruple counted... e.g. (the original criminal history categorical score was given points 4 times greater than what had already been issued, given and had the Appellant service a six month federal sentence prior to the now instent offense --- especially when the Appellant had not been released or incurred (a?ny new criminal history categorical point(s) or score(s)).

On March 18, 2010 in the District of Columbia Superior Court; the Appellant was sentenced to a six month sentence to service for a one count (non-indicted --- due to waiver) charge of personal bad check over $200.00. While servicing the six month sentence in U.S.P. Marion in Marion, Illinois... the Appellant and his then 16 year old teenaged daughter had in fact exchanged several e-mails, letters and phone calls where about 1/5 to 1/4 of them were considered by todays standard of society's social norms to be inappropriate in the way a parent and child or a father and daughter should be speaking. The conversations and communications were not criminal --- just considered inappropriate.

47

Continued -
Issue - #4

Though the Appellant made the U.S.P. Marion prison administration very much aware of the on-going communications and conversations that were being transpired between he and his daughter... The Staff e.g. administration <u>did not</u> see harm, threat, fear or coercion in the conversations and communications, especially since the Appellant had also made an open request on how to better deal with the given conversations and communications that had transpired, by asking the institutional psychology staff how does he better deal with them and his daughter, who was the one that brought those communications and conversations to the immediate forefront. Upon the Appellant having completed his six month sentence, he was immediately taken into custody... based on a criminal complaint filed by the birth mother... the Appellant's ex-spouse of tens years of marriage. Reason(S). 1- because upon the Appellant's release he had plans to go to the local District of Columbia authorities to file an open criminal complaint -- based on the information that was provided by the daughter; that stated her mother's current husband was taking liberties with her and that the mother was allowing it... which is why they would constantly fight.

Continued:
Issue - #4

2- because the mother had overheard the conversation on the phone that was the plans of the Appellant and his daughter. 3- because the daughter had ran away from home --- because the mother had continued to bring her husband around the daughter. 4- because instead of the mother reporting that the daughter had ran away, she instead thought to go through her e-mails and letters and use those to say that the daughter and birth father, were having an incestuous relationship --- instead of reporting that her own husband had been taking liberties with her daughter for years -- (since she was in second grade -- making her 6 or 7 years of age) until the daughter was forced to go reside with the Appellant and his family or be subjected to the foster care system as a juvenile delinquent or a wayward child.. the Appellant took her in after not having had no type of contact with her or the mothers family for nearly 12 years. (The mother ran off with the daughter (age 3) and her brother (age 1) while carrying a third child another daughter .to be with the person she is currently married with and is afraid to leave him... At no time had there been any contact between the Appellant, the mother or the children from 1997 until 2008. The daughter came to permanently reside in Jan. 2009.

49

Continued
Issue · #4

As for the main sentencing disparity ... the
Appellant when sentenced to go to prison for the
six month bad check charge in 'federal' custody
he had a total of three (3) criminal history categorical
points ... after the six months sentence was
completed and he was <u>not</u> released from federal
custody ... but re-arrested at the federal facility
upon processing for release he was taken some-
time later to answer to the criminal complaint
of Coercion and Enticement ... (which is an absurd
charge to issue to a parent-child e.g. father-daughter
case ) 18 U.S.C. § 2422(b), he was not, charged with
(a)ny additional charge nor overt act. On October
18, 2010 he was indicted on a one count indictment
of 18 U.S.C. § 2422(b). See Indictment Exhibit - 1
On April 21, 2011 ... the Appellant was
convicted of the one count indictment of not attempt
while suspectively committing the crime in federal
custody, but a completed crime ... where that to
is absurd. On May 09, 2011 ... the Appellant was
taken back before the original bad check judge, for
which he had the three criminal history categorical
points and had the original case vacated although
he serviced the six month sentence for the
imposed bad check.

50

Continued
Issue - #4

On May 17, 2011 ... the Appellant was granted leave to file for relief under Rule 29 Motion for Acquittal - New Trial. On August 05, 2011 ... the Appellant is given a criminal history categorical score of now ~~twelve~~ twelve (points) ... four times greater than the original score ... which moved him from Criminal History categorical score of C.H.C. II (with 3 points) to C.H.C. V (with 12 points) and giving him an offense level of 28 with an 8 level enhancement to level 36 moving him from the original placement of 87-108 months (under the minimum mandatory of 10 years to life) to that of 292 to 365 months - because of an 8 level enhancement based upon Judge-found-factors .... even after the enhancements, the level remained at level 36 at C.H.C. V (with 12 points) yet the Sentencing judge still Sentenced the Appellant to a life Sentence ... Stating ...

That he did not care if the defendant had 2 points or 20 points he would of still came to the same conclusion of sentencing him to life. ...

Yet after the imposition of the life Sentence, he then imposed a conditional Sentence for the defendant to service his Sentence in the F.B.O.P. C.I.U.'s C.M.U for the duration of his Sentence. (Appellant served nearly 7 years there)

51

Continued:
Issue #4

The Appellant was charged and indicted in a one count indictment for Coercion and Enticement of a minor (his then teenaged daughter), yet he was convicted of Enticement of Incest. e.g. (an unknown charge)... the case finalized on a case of rape and incest --- charges he was not charged of nor had he admitted guilt to.

The Government... had attempted to make clear that a 'LIFE' sentence for a one count indictment of Coercion and Enticement without no additional charges nor overt acts.

Although... the exact Same law enforcement officials, the exact Same Government prosecutors the exact Same Federal Defender's Office and sentencing e.g. presiding judge that were involved with the Appellant's case were involved with a career criminal defendant's case... whom had numerous convictions of 18 U.S.C. § 2422(b) and other sexual offenses... was sentence to 144 months

This defendant had multiple convictions, multiple jurisdictions, multiple victims and also multiple additional charges, was offered a release bond, a plea of 120 to 168 months, after the plea was accepted released on self surrender and sentence to a term of 144 months to service.

Continued
Issue. #4

This defendant was on parole, probation and supervised release while committing the new charges of 18 U.S.C. § 2422(b). This defendant was caught in a sting-operation, he had several under age minors from several jurisdictions yet was still offered release and self surrender.

He was a 37 year old white male, as a registered sexual offender... was presented before the exact judge several months before that of the Appellant... yet the Appellant is listed as the worst person before his court. The Appellant a 50 year old mixed race male with an ancient criminal record of only 3 criminal history points was placed in the exact same criminal history category as that defendant with an offense level of 37, which therefore means he should of been given a guideline sentence of 324 to 405 months, instead he's given 140 months to 168 months and sentenced to 144 months twelve years (where he should of had a civil committed sentence or a life sentence), where the Appellant receives life and has a history nor a standing of no where as harmful, harmful or horrendous as this defendant.

See: United States v. Michael Allen Alger; 11-CR-0344-RDT
[Exhibit -

From: J.F.B. KeMache Webster
CSM# 42459-007
USP Tucson C2-121u
PO BOX- 24550
Tucson, Arizona 85734-4550

To: Ms. Patricia S. Connor, Clerk
L.F. Powell U.S. Courthouse Annex
1100 East Main Street Suite-501
Richmond, Virginia 23219-3525

In re: United States of America
v. F.B. KeMache-Webster

Core No: 16-9208
Reflecting: 10-0654-RWT

Subject: Informal Brief Filing
19 October 2016

Dear Hon. Clerk of the Court:

Again, as always I wish you and yours well.

Please find attached the above listed given Subject matter 'Informal Brief Filing'.

Also, please accept my humble apology, the brief is hand written --- unlike my usual type-written style you are accustom to. I am still without my [Legal-Work Product] legal materials from Terre Haute, Indiana's CMU, which was the reason for the enlargement of time filing.

Thirdly, can you please make a true test copy of these filings and return me the originals

Dear Hon: Clerk of The Court:

Again, as always I wish you and yours well.
Please find attached the above listed given
subject matter 'Informal Brief Filing'.

Also, please accept my humble apologies,
The brief is hand written --- unlike my usual type-
written style you are accustom to. I am still
without my [Legal-Work Product] legal materials
from Terre Haute, Indiana's C.M.U., which was the
reason for the enlargement of time filing.

Thirdly; can you please make a true text
copy of these filings and return me the originals
with the enclosed envelope.

Lastly; please forward to all parties involved
that are listed on pages 2 and 3 of these filings by ECF

Thank you and God bless

Respectfully submitted

J.F.B. Ke Mache-Webster
USM# 42459-007

United States Court of Appeals
For The Fourth Circuit
L. F. Powell U. S. Courthouse Annex
1100 East Main St. Suite - 501
Richmond, Virginia 23219-3525

Attention To:
Forward To:

Mr. Jon Francisco B. Kewedke
Registration Number: 42459-00
United States Penitentiary Tucson
Post Office Box - 24550
Tucson, Arizona 85734-4550