# APPENDIX

LOGGED ENTERED
RECEIVED

OCT 25 2010

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND

BY _____ DEPUTY

LMF/SDB, USAO 2010R00784

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. RWT 10 CR 0654 |
| | * | |
| FRANESIOUR B. KEMACHE-WEBSTER, | * | (Use of Interstate Commerce Facility to |
| a/k/a Bryan Webster | * | Entice Minor to Engage in Sexual |
| | * | Activity, 18 U.S.C. § 2422(b)) |
| Defendant | * | |
| | * | |

\* \* \* \* \* \* \*

## INDICTMENT

The Grand Jury for the District of Maryland charges that:

Between on or about May 4, 2010 and on or about August 20, 2010, in the District of Maryland

and elsewhere, the defendant,

**FRANESIOUR B. KEMACHE-WEBSTER,**
**a/k/a Bryan Webster,**

did knowingly use and attempt to use a facility and means of interstate and foreign commerce to

knowingly persuade, induce, entice and coerce an individual who has not attained the age of 18

years to engage in sexual activity for which any person could be charged with a criminal offense.

18 U.S.C. § 2422(b)

_____
Rod J. Rosenstein
United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**

Foreperson

Date: October 25, 2010

Exhibit - 1

_____ ENTERED
_____ LODGED     _____ RECEIVED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

APR 18 2011

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND

BY_____DEPUTY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | |
| | * | |
| FRANESIOUR B. KEMACHE-WEBSTER, | * | CRIMINAL NO.  RWT 10-654 |
| a/k/a Bryan Webster, | * | |
| | * | |
| Defendant | * | |
| | * | |

* * * * * * *

## VERDICT FORM

How do you find the defendant, Franesiour B. Kemache-Webster, aka Bryan Webster, as to Count One (Use of Interstate Commerce Facility to Entice a Minor to Engage in Sexual Activity), guilty or not guilty?

Guilty _____          Not Guilty _____

**The foregoing constitutes the unanimous verdict of the jury.**

_04/21/11_
Date

**Redacted**

Exhibit 2a

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

Case No.: RWT 10cr0654

FRANESIOUR B. KEMACHE-WEBSTER,

Defendant.

## ORDER

Upon consideration of the Defendant's *Pro Se* Motion for Extension to Address Conviction [ECF No. 102], the Court having construed the same as a motion for an extension of time within which to file a motion for a new trial, it is, this 17th day of May, 2011, by the United States District Court for the District of Maryland, hereby

**ORDERED**, that the Defendant's *Pro Se* Motion for Extension to Address Conviction [ECF No. 102] is **GRANTED**; and it is further

**ORDERED**, that Defendant is **GRANTED LEAVE** to file a motion for a new trial **on or before May 24, 2011**.

_____
/s/
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE

Exhibit-3

# LAWLOR & ENGLERT, LLC
### Attorneys at Law

MICHAEL E. LAWLOR
lawlor@lawlor-englert.com

ANDREW R. SZEKELY
aszekely@lawlor-englert.com

SICILIA C. ENGLERT
englert@lawlor-englert.com

GWENDOLYN R. WATERS
gwaters@lawlor-englert.com

---

August 11, 2011

Mr. Franesiour Bryan Kemache-Webster
Federal Inmate #266679
Central Treatment Facility
1901 E Street, SE
Washington, DC 20003

Dear Mr. Webster:

Enclosed is the Motion to Withdraw that Gary filed with the Fourth Circuit regarding your appeal. Since Gary is currently in trial, he asked that I send you this copy and inform you that if you wish to respond to this Motion, you must do so within 7 days of the date it was filed.

Sincerely,

Gwendolyn R. Waters

Enclosure

Exhibit - 4

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES                          \*
                                       \*
                    *Appellee,*        \*
                                       \*     No.   11-4801
        v.                             \*
                                       \*
FRANESIOUR KEMACHE-WEBSTER             \*
                                       \*
                    *Appellant*        \*
                                       \*

## MOTION TO WITHDRAW

Gary E. Proctor, Law Offices of Gary Proctor, LLC, respectfully requests that

this Court allow him to withdraw from further representation of the Appellant in this

matter, and that substitute counsel be appointed.  In support of this Motion, Counsel

states as follows:

1.  Undersigned counsel was appointed to represent Appellant, pursuant to the

Criminal Justice Act, in the district court below.  Following a 3 day jury trial, Mr.

Webster was convicted of the crime charged.  18 U.S.C. § 2422(b).

2.  On August 5, 2011 Mr. Webster was sentenced to life in prison.  A timely

notice of appeal was filed on that same date.

3.  On August 10, 2011, counsel was appointed by the U.S. Court of Appeals

for the Fourth Circuit, under the Criminal Justice Act. In counsel's opinion, the most

meritorious issue for appeal is that counsel continued to represent Appellant, even

Exhibit 5a

though a bar complaint filed by Appellant was pending against him. The district court ordered that trial counsel should continue to represent Appellant, during the pendency of the bar complaint. As the undersigned was trial counsel, he cannot litigate whether he labored under a conflict of interest during trial in this matter. Counsel has discussed this issue with Appellant, and believes he has no objection to him withdrawing from further representation of him in this matter.

WHEREFORE, Counsel respectfully request that he be allowed to withdraw from the case at bar, and that alternative counsel be appointed under the Criminal Justice Act. As there has been no briefing schedule set, there is no prejudice to Appellant in doing so.

Respectfully Submitted,

_____ /s/ _____
Gary E. Proctor
Law Offices of Gary E. Proctor, LLC
8 E. Mulberry Street
Baltimore, Maryland 21202
Tel:    410.444.1500
Fax:    866.230.4455

Exhibit-5b

# CERTIFICATE OF SERVICE

I hereby certify that on this day, August 11, 2011, a copy of the foregoing was served on the parties via ECF and mailed to Mr. Webster at Correctional Treatment Facility, 1901 E Street, S.E., Washington, D.C. 20002 with proper postage affixed.

_____/s/_____

Gary E. Proctor

Exhibit - 5e

Appeal: 11-4801   Document: 5-1   Date Filed: 08/17/2011   Page: 1 of 2

FILED:  August 17, 2011

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 11-4801
(8:10-cr-00654-RWT-1)

———————————

UNITED STATES OF AMERICA

        Plaintiff - Appellee

v.

FRANESIOUR B. KEMACHE-WEBSTER, a/k/a Bryan Webster

        Defendant - Appellant

———————————

O R D E R

———————————

The court grants the motion to withdraw as counsel on appeal.

The court appoints David W. Lease to represent appellant on appeal.

Counsel is referred to the memorandum on **Payment of Counsel Appointed**

**under the Criminal Justice Act** for information on appointment terms, obtaining

a fee exempt PACER account for electronic access to documents in CJA cases,

redacting private and sensitive data from transcripts and other documents, and

maintaining time and expense records. If appointed counsel has not previously

Exhibit - 4 a

received CJA payments from the federal courts, or if their information has changed, counsel should complete the <u>CJA Taxpayer Identification Form</u>.

Counsel not yet registered for electronic filing should proceed to the court's web site to register as an ECF filer, **www.ca4.uscourts.gov**.

The enclosed notice to new counsel provides counsel with additional information relevant to the appointment.

Former counsel shall immediately provide new counsel with all case papers, including any prepared transcripts, and information of relevance to the representation.

The court having appointed new counsel for purposes of this appeal, any motion for further substitution of counsel shall be disfavored.

For the Court--By Direction

<u>/s/ Patricia S. Connor, Clerk</u>



FILED:  April 13, 2012

## UNITED STATES COURT OF APPEALS
### FOR THE FOURTH CIRCUIT

————————————

No. 11-4801
(8:10-cr-00654-RWT-1)

————————————

UNITED STATES OF AMERICA

   Plaintiff - Appellee

v.

FRANESIOUR B. KEMACHE-WEBSTER, a/k/a Bryan Webster

   Defendant - Appellant

————————————

## O R D E R

————————————

The court defers action on the motion for leave to file a pro se supplemental brief, with proposed pro se supplemental brief, pending consideration of the appeal on the merits.

For the Court--By Direction

/s/ Patricia S. Connor, Clerk

Exhibit-7

FILED:  August 21, 2012

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

———————————

No. 11-4801
(8:10-cr-00654-RWT-1)

———————————

UNITED STATES OF AMERICA

       Plaintiff - Appellee

v.

FRANESIOUR B. KEMACHE-WEBSTER, a/k/a Bryan Webster

       Defendant - Appellant

———————————

O R D E R

———————————

Upon consideration of submissions relative to the motion to file a pro se

supplemental brief, the court grants the motion and accepts the pro se supplemental

brief for filing.

For the Court

/s/ Patricia S. Connor, Clerk

---

**Franesiour <u>Kemache</u>-Webster, Petitioner v. United States.**
**SUPREME COURT OF THE UNITED STATES**
**133 S. Ct. 2041; 185 L. Ed. 2d 901; 2013 U.S. LEXIS 3407; 81 U.S.L.W. 3615**
**No. 12-9451.**
**April 29, 2013, Decided**

---

**Editorial Information: Subsequent History**

US Supreme Court rehearing denied by <u>**Kemache**</u>-Webster v. United States, 134 S. Ct. 29, 186 L. Ed. 2d 942, 2013 U.S. LEXIS 5002 (U.S., 2013)

**Editorial Information: Prior History**

United States v. <u>**Kemache**</u>-Webster, 497 Fed. Appx. 339, 2012 U.S. App. LEXIS 24655 (4th Cir. Md., 2012)
**Judges:** Roberts, Scalia, Kennedy, Thomas, Ginsburg, Breyer, Alito, Sotomayor, Kagan.

Opinion

Petition for writ of certiorari to the United States Court of Appeals for the Fourth Circuit denied.



---

lecases           1

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

42459007

---

**Franesiour Kemache-Webster, Petitioner v. United States.**
**SUPREME COURT OF THE UNITED STATES**
**134 S. Ct. 29; 186 L. Ed. 2d 942; 2013 U.S. LEXIS 5002**
**No. 12-9451.**
**July 22, 2013, Decided**

---

**Editorial Information: Prior History**

**Kemache**-Webster v. United States, 133 S. Ct. 2041, 185 L. Ed. 2d 901, 2013 U.S. LEXIS 3407 (U.S., 2013)

**Judges:** Roberts, Scalia, Kennedy, Thomas, Ginsburg, Breyer, Alito, Sotomayor, Kagan.

### Opinion

Petition for rehearing denied.



---

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

---

**FRANESIOUR B. KEMACHE-WEBSTER, Petitioner, v. UNITED STATES OF AMERICA, Respondent.**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

**2014 U.S. Dist. LEXIS 110975**

**Case No.: RWT 10cr654, Case No.: RWT14cv2005**

**August 7, 2014, Filed**

---

**Editorial Information: Subsequent History**

Post-conviction relief denied at, Certificate of appealability denied, Request denied by
**Kemache**-Webster v. United States, 2015 U.S. Dist. LEXIS 63096 (D. Md., May 14, 2015)

**Editorial Information: Prior History**

**Kemache**-Webster v. United States, 2014 U.S. Dist. LEXIS 79236 (D. Md., June 11, 2014)

**Counsel**            For Minor Victim, Interested Party: Mary Elizabeth Davis, Davis and Davis Law Firm, Washington, DC.

            For USA, Plaintiff: LisaMarie Freitas, LEAD ATTORNEY, United States Department of Justice, Washington, DC; Stacy Dawson Belf, Office of the United States Attorney, District of Massachusetts, Boston, MA.

**Judges:** ROGER W. TITUS, UNITED STATES DISTRICT JUDGE.

Opinion

**Opinion by:**        ROGER W. TITUS

Opinion



---

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

42459007

**ORDERED**, that the Motion to Set as Placeholder (ECF No. 174) is **DENIED AS MOOT**; and it is further

**ORDERED**, that the Motion/Request for Leave to File a Supplemental to Come Forward to File a Rule 33(b)(1) (ECF No. 175) is **DENIED**; and it is further

**ORDERED**, that the Motion to Amend Motion to Inspect Grand Jury Minutes" (ECF No. 176) is **DENIED AS MOOT**; and it is further

**ORDERED**, that the Motion for Reconsideration of Rule 33(b)(1) Filing of Newly Discovered Evidence (ECF No. 177) is **DENIED**; and it is further

**ORDERED**, that the Motion to Proceed in Forma Pauperis (ECF No. 179) is **DENIED AS MOOT**; and it is further

**ORDERED**, that the Motion to Appoint Counsel (ECF No. 180) is **DENIED**; and it is further

**ORDERED** that the Petitioner's "Ex Parte Communique/Motion for Extension of Time" (ECF No. 182) is **GRANTED** to the extent that the Petitioner shall have until September 8, 2014 to supplement his motion filed under 28 U.S.C. § 2255.

/s/ ROGER W. TITUS

UNITED STATES DISTRICT JUDGE



1ydcases                                    1

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

42459007

---

**FRANESIOUR B. KEMACHE-WEBSTER, # 42459-007, Petitioner, v. UNITED STATES OF AMERICA, Respondent.**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

**2015 U.S. Dist. LEXIS 63096**

**Criminal No. RWT-10-0654c/wCivil No. RWT-14-2005**

**May 14, 2015, Filed**

---

**Editorial Information: Subsequent History**

Appeal dismissed by, Certificate of appealability denied United States v. Kemache-Webster, 2015 U.S. App. LEXIS 16332 (4th Cir. Md., Sept. 14, 2015)

**Editorial Information: Prior History**

Kemache-Webster v. United States, 2014 U.S. Dist. LEXIS 110975 (D. Md., Aug. 7, 2014)

**Counsel**                For Minor Victim, Interested Party (8:10-cr-00654-RWT): Mary Elizabeth Davis, Davis and Davis Law Firm, Washington, DC.
                For USA, Plaintiff (8:10-cr-00654-RWT):  LisaMarie Freitas, LEAD ATTORNEY, United States Department of Justice, Washington, DC; Stacy Dawson Belf, Office of the United States Attorney, District of Massachusetts, Boston, MA.

**Judges:** ROGER W. TITUS, UNITED STATES DISTRICT JUDGE.

Opinion

**Opinion by:**        ROGER W. TITUS

Opinion

Exhibit-12a

---

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

42459007

**CONCLUSION**

The Court finds that all **Kemache**-Webster's claims are time-barred, and that even if timely filed, they are neither cognizable under § 2255 nor adequate to satisfy the *Strickland* two-prong test establishing ineffective assistance of counsel. **Kemache**-Webster's motion will be denied and no certificate of appealability shall issue. Accordingly, it is, this 13th day of May, 2015, by the United States District Court for the District of Maryland,

**ORDERED**, that Petitioner's Motion to Set Aside, Correct, or Vacate Sentence Under 28 U.S.C. § 2255 (ECF No. 178) is hereby **DENIED**; and it is further

**ORDERED**, that Petitioner's Motion Request for Counselor (ECF No. 190) is hereby

**DENIED**; and it is further

**ORDERED**, that a certificate of appealability **SHALL NOT BE ISSUED**; and it is further

**ORDERED**, that the Clerk is hereby **DIRECTED** to mail a copy of this Memorandum Opinion and Order to Petitioner; and it is further

**ORDERED**, that the Clerk is hereby **DIRECTED** to close Civil Action No. RWT-14-2005.

/s/ ROGER W. TITUS

UNITED STATES DISTRICT JUDGE

### Footnotes

1

At the time of this sentencing, **Kemache**-Webster already had an extensive criminal history, including more than fourteen convictions from 1982-2001, at least nine of which involved various forms of fraud. ECF No. 58, at 2.

2

**Kemache**-Webster also filed a second motion to appoint counsel. ECF No. 190. Because **Kemache**-Webster is able to adequately articulate his claims, the claims do not appear unduly complex, and an evidentiary hearing is not required, the Court does not find that the interests of justice require the appointment of counsel and will deny his motion. 18 U.S.C. § 3006A(a)(2)(B) (2012); Rules Governing § 2255 Proceedings, Rule 8(c).

3

**Kemache**-Webster does not identify who this "primary witness" is, leaving the Court to guess that he is referring to the victim in this matter, his biological daughter. ECF No. 178, at 26-27.


Exhibit -126

---

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

FILED: October 9, 2015

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

No. 15-6844
(8:10-cr-00654-RWT-1)
(8:14-cv-02005-RWT)

---

UNITED STATES OF AMERICA

       Plaintiff - Appellee

v.

FRANESIOUR B. KEMACHE-WEBSTER, a/k/a Bryan Webster

       Defendant - Appellant

---

STAY OF MANDATE UNDER
FED. R. APP. P. 41(d)(1)

---

Under Fed. R. App. P. 41(d)(1), the timely filing of a petition for rehearing or rehearing en banc or the timely filing of a motion to stay the mandate stays the mandate until the court has ruled on the petition for rehearing or rehearing en banc or motion to stay. In accordance with Rule 41(d)(1), the mandate is stayed pending further order of this court.

Exhibit-13

/s/Patricia S. Connor, Clerk

FILED: December 7, 2015

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

———————————

No. 15-6844
(8:10-cr-00654-RWT-1)
(8:14-cv-02005-RWT)

———————————

UNITED STATES OF AMERICA

        Plaintiff - Appellee

v.

FRANESIOUR B. KEMACHE-WEBSTER, a/k/a Bryan Webster

        Defendant - Appellant

———————————

O R D E R

———————————

The court denies the petition for rehearing and rehearing en banc. No judge

requested a poll under Fed. R. App. P. 35 on the petition for rehearing en banc.

Entered at the direction of the panel: Judge Shedd, Judge Wynn and Judge

Floyd.

For the Court

/s/ Patricia S. Connor, Clerk

Exhibit - 14

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT
1100 East Main Street, Suite 501, Richmond, Virginia 23219

### July 5, 2016

_____

## DOCKET CORRECTION NOTICE

_____

No. 16-9922,    <u>In re: Franesiour Kemache-Web</u>
                8:10-cr-00654-RWT-1

TO:    Franesiour B. Kemache-Webster

Please file the exhibit identified below immediately.

[ X] Proposed Section 2255 motion you seek authorization to file in the district court (on the attached form).

Jeffrey S. Neal, Deputy Clerk

Exhibit-15

Case 8:10-cr-00654-RWT   Document 204   Filed 08/03/16   Page 1 of 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | Case No. RWT 10-cr-0654 |
| | * | |
| **FRANESIOUR B. KEMACHE-WEBSTER** | * | |
| | * | |

## ORDER

The Court has reviewed Defendant Franesiour B. Kemache-Webster's Motion for Reconsideration [ECF No. 202] of this Court's May 14, 2015 Order denying Defendant's Motion to Vacate and Motion to Appoint Counsel [ECF No. 191].   On July 29, 2016, the United States Court of Appeals for the Fourth Circuit issued an Order denying Defendant's motion for authorization to file a second or successive 28 U.S.C. § 2255 (2012) motion [ECF No. 203]. Finding the Defendant's Motion for Reconsideration to be without merit, it is this 3rd day of August, 2016, by the United States District Court for the District of Maryland,

**ORDERED**, that Defendant's Motion for Reconsideration [ECF No. 202] is hereby **DENIED**; and it is further

**ORDERED**, that the Clerk **SHALL PROVIDE** a copy of this Order to the Defendant.

_____/s/_____
Roger W. Titus
United States District Judge

_Exhibit - 14_

FILED:  September 27, 2016

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 16-7208
(8:10-cr-00654-RWT-1)
(8:14-cv-02005-RWT)

———————————

UNITED STATES OF AMERICA

        Plaintiff - Appellee

v.

FRANESIOUR B. KEMACHE-WEBSTER, a/k/a Bryan Webster

        Defendant - Appellant

———————————

O R D E R

———————————

Upon consideration of the motion for extension of the informal briefing schedule, the court extends the time for serving and filing the informal opening brief to 10/24/2016. Any further request for an extension of time in which to file the informal opening brief shall be disfavored.

For the Court--By Direction

/s/ Patricia S. Connor, Clerk

Exhibit-17

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | * |
| | * |
| **v.** | * |
| | *    **CRIMINAL NO.  RWT 10-654** |
| **FRANESIOUR B. KEMACHE-WEBSTER,** | * |
| **a/k/a BRYAN WEBSTER** | * |
| | * |
| **Defendant** | * |
| | * |
| | ******* |

### UNITED STATES OF AMERICA'S RESPONSE
### TO DEFENDANT'S MOTION FOR A NEW TRIAL

The United States of America, by its attorneys, file this Response to the Defendant's Motion

for A New Trial [Document 109].  The Defendant was convicted by a jury on April 21, 2011

following a three day trial.  Following his conviction, the Defendant filed a motion for a new trial

based on eight different factors.  As these eight factors have no factual or legal basis and provide no

valid authority for granting a new trial, the motion should be denied.

## BACKGROUND

The Defendant, Franesiour B. Kemache-Webster, also known as Bryan Webster, was

residing in the District of Columbia in 2008. In October of 2008, F.W., the minor female and

biological child of Webster, moved into the residence occupied by Webster. F.W. resided with

Webster from October 2008 through March of 2010, at which time he was incarcerated. During

that period, Webster vaginally and orally raped his daughter.  On March 18, 2008, the Honorable

Judge Mott of D.C. Superior Court sentenced Webster to six months of incarceration and 48

months of probation for a charge of Bad Check- More than $200.00, in violation of D.C. Code

22-1510. At the time of that sentencing, Webster already had an extensive criminal history,



including at more than 14 convictions from 1982 to 2001, at least nine of which involved various forms of fraud. Webster was eventually transferred to Marion Federal Penitentiary, in Marion, Illinois, in April of 2010.

During his incarceration in Marion, Webster wrote letters, sent emails and made telephone calls to his daughter F.W., who resided and attended school in Silver Spring, Maryland. The Defendant made over 200 phone calls, sent over 700 emails and wrote numerous letters. The content of these calls, emails and letters was sexual in nature, discussing Webster's desire to have sex with F.W. and various sex acts they would do together, including sexual acts that they had previously done before Webster was incarcerated.

In August of 2010, F.W.'s mother discovered and read several letters that the Defendant wrote to F.W. from jail. She photocopied the letters and printed emails from the computer at the residence in Silver Spring, Maryland and provided them to law enforcement. An investigation ensued and the Defendant was initially detained pursuant to a criminal complaint on September 15, 2010. On October 24, 2010, the Defendant was indicted on one count of Coercion and Enticement of a minor pursuant to 18 U.S.C. § 2422(b). Following a three day trial that began April 19, 2011, a federal jury convicted Webster on one count of Coercion and Enticement of a minor.

## ARGUMENT

### I.    JURY SELECTION WAS PROPERLY CONDUCTED.

The Defendant offers several arguments which are factually incorrect and misstate the events that occurred during jury selection. First, the Defendant argues that his counsel, Gary Proctor, did not assist him during the jury selection process. The Defendant supports this contention by pointing out that the jury consisted of twelve women and two men. The Defendant

Exhibit-14b

fails to state that he struck four men during selection process and when challenged by the

Government, Mr. Proctor successfully defeated a challenge based on race and gender.[1]  Second,

the Defendant argues that the Government should not have been permitted to exclude potential

jurors based on their race.  This argument is accurate legally, but inaccurate factually.  The

Government did not, during the course of jury selection, exclude any jurors based on race or

gender.  In fact, it was the Defendant that struck four white males, prompting the Government to

assert a challenge.  Mr. Proctor successfully defeated the Government's challenge and the

resultant jury consisted of twelve women and two men.

   The defendant asserts that he has the right to trial by a jury selected from a fair cross-

section of the community.  What the Defendant neglected to state is that the jury panel did in fact

consist of a cross section of the community, however, the Defendant struck four white males

during the selection process.  By doing so, the Defendant limited the number of male jurors to the

jury.  The Government finds it ironic that the Defendant's primary complaint about the jury is

that it consisted of more females than males when he has repeatedly requested a female attorney

to represent him in this case.

   The Defendant also contends, but offers no factual basis, that a lottery process determined

the alternate jurors.  This argument has no merit as the alternate jurors were selected not through

a lottery system, but through the course of the selection process whereby both sides exercised

their peremptory challenges and jurors were seated according to the order in which they were

selected based on their juror number.  The jury selection process was conducted pursuant to the

Federal Rules of Criminal Procedure and local rules and did not violate any of the Defendant's

---

[1]The Government challenged the Defense's peremptory strikes of four white males, asserting that the defense had excluded these individuals based on race and gender, pursuant to *Batson v. Kentucky*, 476 U.S. 79, 90 L.Ed. 2d 69, 106 S. Ct. 1712 (1986).


Exhibit - 14 e

rights.[2]

## II.    THE DEFENDANT'S SIXTH AMENDMENT RIGHTS WERE NOT VIOLATED.

The Defendant contends, in a two part argument, that his Sixth Amendment rights were

violated because he did not have the right to confront his accuser nor compel witnesses to testify.

Both of these assertions are factually inaccurate.

The Defendant is charged with violating federal statute 18 U.S.C. § 2422(b) based upon

the Government's review of evidence obtained during the course of a federal investigation.

During the pre-trial motions hearing, which took place on March 24, 2011, the Government

stated in open court that the victim, F.W., while not under Government subpoena to testify at

trial, would be made available if the defense elected to call her during their case presentation.

During the trial, the Government elected not call F.W. to testify.  The Defendant had the

opportunity to call F.W. to testify during their case presentation, however, elected not to.  The

Defendant's decision to not call F.W. to testify when access to her was not impeded, does not

constitute a violation of the Sixth Amendment.

The Defendant's second basis for arguing his Sixth Amendment rights were violated

hinges on yet another factual inaccuracy.  The Defendant alleges that he had no process or means

by which to call witnesses in his defense.  The Defendant confuses his decision not to call

witnesses with his ability to call witnesses.  Prior to the commencement of the trial on March 19,

2011, Michelle Corley, friend of the Defendant, approached the Government prosecutors with a

document in her hand that requested her to be present to testify at trial.  This document was not

generated by the Government, but was in fact generated by the Defense.  Further, the Defense has

---

[2]In this section of his motion, the Defendant reasserts his previous complaints about his
attorney.  As the Court as ruled on this issue on previous occasions, the Government will not
address this argument.



a subpoena process available for calling witnesses to testify. In this case, Mr. Proctor employed an investigator who interviewed the victim prior to trial and had the ability to locate witnesses and serve subpoenas. Clearly, the Defense had the ability to obtain legal process and summon witnesses to testify. The Defendant's choice to not call witnesses does not constitute a violation of his Sixth Amendment rights.

## III.    RELEVANT EVIDENCE WAS ADMITTED THROUGHOUT THE TRIAL.

The Defendant states factual inaccuracies when arguing that the Government gave the jury " misinformation" in regard to the Defendant's behavior. The Government presented evidence deemed admissible by the Court pursuant to the Federal Rules of Evidence. The Defendant's argument that the victim, F.W., was the "initiator" of the offense is absurd. Children cannot consent to engage in sexual acts with adults. Further, as the adult, the Defendant is obligated to obey the laws of both the state and country where he resides as well as exercise common sense. Regardless of the actions of his biological daughter, the Defendant simply cannot engage in sexual acts with her nor entice her via communications to do so. The evidence presented at trial survived the objections made by the Defense under the Federal Rules of Evidence. The proposition that a minor child is an "accomplice" and "principal party" to her own rape and victimization by an adult is absolutely absurd. A child cannot consent to her own rape and victimization, regardless of her actions.

The Defendant sought to introduce the statements of the child to demonstrate what he perceived to be her complicity in his coercion and enticement. The Court reviewed each of the emails challenged by the Defendant to determine their relevance and ruled accordingly. "Decisions regarding the admission or exclusion of evidence are committed to the sound discretion of the district court and will not be reversed absent an abuse of that discretion."



*United States v. Lancaster,* 78 F.3d 888, 896 (4th Cir. 1996). *Accord United States v. Hedgepeth,*

418 F.3d 411, 418-19 (4th Cir. 2005); *United States v. Aramony,* 88 F.3d 1369, 1377 (4th Cir.

1996); *United States v. Bostain,* 59 F. 3d 474, 480 (4th Cir. 1995); *United States v. Moore,* 27

F.3d 969, 974 (4th Cir. 1994) ("A district court's evidentiary rulings are entitled to substantial

deference and will not be reversed absent a clear abuse of discretion."); and *United States v.*

*Whittington, 26 F. 3d 456, 465 (4th Cir. 1994).* The Court did not, during the course of the trial,

restrict the Defendant from introducing evidence, but limited, pursuant to the Federal Rules of

Evidence, both the Government and Defense, from introducing evidence that was not relevant.

The Defendant was not denied the opportunity to admit relevant evidence, but was denied the

opportunity to admit evidence that was not relevant.

## IV.  THE DEFENDANT WAS PROPERLY CHARGED AND CONVICTED OF VIOLATING A FEDERALLY ENACTED STATUTE.

The Defendant's assertion that his Constitutional rights were violated because the

Government did not establish the "attempt" requirement of the statute in its case presentation is

unsubstantiated and defies logic.  In cases involving a charge of an attempt to violate 18 U.S.C. §

2422(b), the government must prove that the defendant (1) acted with the culpability required for

conviction of the underlying offense, and (2) took a substantial step toward the commission of

the crime. *See United States v. Kaye,* 451 F. Supp.2d 775, 782 (E.D.V.A. 2006) (citing *Farner,*

251 F.3d at 513); *United States v. Helder,* 452 F.3d 751 (8th Cir. 2006). "To constitute a

substantial step toward the commission of a crime, the defendant's conduct must (1) advance the

criminal purpose charged, and (2) provide some verification of the existence of that purpose."

*United States v. Goetzke,* 494 F.3d 1231, 1236 (9th Cir. 2007); *see also United States v. Barlow,*

568 F.3d 215, 219 (5th Cir. 2009) (describing a substantial step as "conduct which strongly

Exhibit 18 ℓ

corroborates the firmness of defendant's criminal attempt such that '[m]ere preparation' is not

enough"(citation omitted)). The focus therefore is whether the defendant crossed "the line

between preparation and attempt by unequivocally demonstrating that the crime will take place

unless interrupted by independent circumstances." *Goetzke*, 494 F.3d at 1237; *see also United

States v. Murrell,* 368 F.3d 1283, 1288 (11th Cir. 2004) ("To find that a substantial step was

taken, the court must determine that the defendant's objective acts mark his conduct as criminal

such that his acts as a whole strongly corroborate the required culpability.").

The Government sufficiently established a substantial step was completed by the

Defendant and that he knew he was intending to commit the crime of incest.  The evidence

admitted at trial demonstrated the existence of a prior sexual "relationship" and the Defendant's

intent to continue that relationship upon his release from jail with his biological underage

daughter.  The specific date for that "reunion" coupled with the specific acts intended and

described in detail, established a substantial step on the part of the defendant.  The evidence

introduced at trial overwhelmingly demonstrated that the Defendant's plan to engage in sex with

and impregnate his daughter would have taken place but for the interruption caused by his arrest

pursuant to a criminal complaint.[3]

**CONCLUSION**

The Defendant was charged with and found guilty of violating a federal statute

prohibiting an adult from coercing or attempting to coerce a minor to engage in prohibited sexual

conduct.  The Defendant's motion, premised on inaccurate statements of what occurred during

trial coupled with the erroneous and ridiculous argument that a minor child can consent to engage

---

[3]The Defendant asserts in this section of his argument that there was improper expert
testimony offered by the Government.  As there was no expert testimony offered during the
course of this trial, the Government did not respond to this argument.



in sex or be coerced to engage in sex with her biological father, does not provide sufficient grounds for a new trial.  The Government respectfully submits that for the reasons stated above, the Defendant's Motion for a New Trial should be denied.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney

By:  /s/ *Lisa Marie Freitas*
LisaMarie Freitas
Special Assistant United States Attorney

Stacy Belf
Assistant United States Attorneys

UNITED STATES SENTENCING GUIDELINE
CRIMINAL HISTORY CATEGORY SCORE INFORMATION

The Petitioenr [KEMACHE-WEBSTER] presents before this Said
Honorable Court his 'VERIFIABLE CRIMINAL HISTORY INFORMATION'

On March 18, 2010 Petitioner [KEMACHE-WEBSTER] a/k/a
Bryan Webster --- went before D.C. Superior Court Associate
Judge John Mott.

On March 18, 2010, Petitioner was sentenced to six (6) months
of incarceration for Bad Check over, $200.oo dollars
During the sentencing negotiations phase, there was a discre-
pency with the 'Criminal History Scoring' which was worked out.

Originally, the argument was on four (4) points or three (3)
Three (3) points was agreed upon.

## INFORMATION

In re:      United states of America v. Webster
Case No.:   2009-CF2-018166
Judge:      Associate Judge: John Mott
AUSA        Ms. Katherine Worthington Esq.    (202) 514-7622
CSO         Mr. George Eatman - CSOSA         (202) 442-1420
Conviction Date:   November 20, 2009  D.C. 'Fast Track'

Total Score of CHCS 'Criminal History Category Score'   3.25

Criminal History:

| Date | Offense | Point |
|---|---|---|
| Instant Offense: | Bad Chek over $200.oo | 0 point |
| 11/09/01 | Larceny - 1000 days  Based on a 1995 arrest and conviction | 1 point |
| 12/01/00 | Fraud - 180 days  Based on a 1995 rental car arrest & conviction | .25 point |
| 06/23/95 | Fraud - 1000 days  The original Rental Car conviction & sentence | .50 point |
| 06/23/94 | UUV - 180 days | .50 point |
| 01/24/90 | Forgery / Uttering | .50 point |
| 02/14/89 | Felony Check | .50 point |

Website:   C:\ ProgramFiles\Neevia.Com\DocumentConversion\temp\knrsh5uOshy
5nas3fnsf5_311084cr_ReportSign.rtf

# SENTENCING TABLE
### (in months of imprisonment)

### Criminal History Category  (Criminal History Points)

| Offense Level | I (0 or 1) | II (2 or 3) | III (4, 5, 6) | IV (7, 8, 9) | V (10, 11, 12) | VI (13 or more) |
|---|---|---|---|---|---|---|
| **Zone A** | | | | | | |
| 1 | 0-6 | 0-6 | 0-6 | 0-6 | 0-6 | 0-6 |
| 2 | 0-6 | 0-6 | 0-6 | 0-6 | 0-6 | 1-7 |
| 3 | 0-6 | 0-6 | 0-6 | 0-6 | 2-8 | 3-9 |
| 4 | 0-6 | 0-6 | 0-6 | 2-8 | 4-10 | 6-12 |
| 5 | 0-6 | 0-6 | 1-7 | 4-10 | 6-12 | 9-15 |
| 6 | 0-6 | 1-7 | 2-8 | 6-12 | 9-15 | 12-18 |
| **Zone B** | | | | | | |
| 7 | 0-6 | 2-8 | 4-10 | 8-14 | 12-18 | 15-21 |
| 8 | 0-6 | 4-10 | 6-12 | 10-16 | 15-21 | 18-24 |
| 9 | 4-10 | 6-12 | 8-14 | 12-18 | 18-24 | 21-27 |
| **Zone C** | | | | | | |
| 10 | 6-12 | 8-14 | 10-16 | 15-21 | 21-27 | 24-30 |
| 11 | 8-14 | 10-16 | 12-18 | 18-24 | 24-30 | 27-33 |
| 12 | 10-16 | 12-18 | 15-21 | 21-27 | 27-33 | 30-37 |
| **Zone D** | | | | | | |
| 13 | 12-18 | 15-21 | 18-24 | 24-30 | 30-37 | 33-41 |
| 14 | 15-21 | 18-24 | 21-27 | 27-33 | 33-41 | 37-46 |
| 15 | 18-24 | 21-27 | 24-30 | 30-37 | 37-46 | 41-51 |
| 16 | 21-27 | 24-30 | 27-33 | 33-41 | 41-51 | 46-57 |
| 17 | 24-30 | 27-33 | 30-37 | 37-46 | 46-57 | 51-63 |
| 18 | 27-33 | 30-37 | 33-41 | 41-51 | 51-63 | 57-71 |
| 19 | 30-37 | 33-41 | 37-46 | 46-57 | 57-71 | 63-78 |
| 20 | 33-41 | 37-46 | 41-51 | 51-63 | 63-78 | 70-87 |
| 21 | 37-46 | 41-51 | 46-57 | 57-71 | 70-87 | 77-96 |
| 22 | 41-51 | 46-57 | 51-63 | 63-78 | 77-96 | 84-105 |
| 23 | 46-57 | 51-63 | 57-71 | 70-87 | 84-105 | 92-115 |
| 24 | 51-63 | 57-71 | 63-78 | 77-96 | 92-115 | 100-125 |
| 25 | 57-71 | 63-78 | 70-87 | 84-105 | 100-125 | 110-137 |
| 26 | 63-78 | 70-87 | 78-97 | 92-115 | 110-137 | 120-150 |
| 27 | 70-87 | 78-97 | 87-108 | 100-125 | 120-150 | 130-162 |
| 28 | 78-97 | 87-108 | 97-121 | 110-137 | 130-162 | 140-175 |
| 29 | 87-108 | 97-121 | 108-135 | 121-151 | 140-175 | 151-188 |
| 30 | 97-121 | 108-135 | 121-151 | 135-168 | 151-188 | 168-210 |
| 31 | 108-135 | 121-151 | 135-168 | 151-188 | 168-210 | 188-235 |
| 32 | 121-151 | 135-168 | 151-188 | 168-210 | 188-235 | 210-262 |
| 33 | 135-168 | 151-188 | 168-210 | 188-235 | 210-262 | 235-293 |
| 34 | 151-188 | 168-210 | 188-235 | 210-262 | 235-293 | 262-327 |
| 35 | 168-210 | 188-235 | 210-262 | 235-293 | 262-327 | 292-365 |
| 36 | 188-235 | 210-262 | 235-293 | 262-327 | 292-365 | 324-405 |
| 37 | 210-262 | 235-293 | 262-327 | 292-365 | 324-405 | 360-life |
| 38 | 235-293 | 262-327 | 292-365 | 324-405 | 360-life | 360-life |
| 39 | 262-327 | 292-365 | 324-405 | 360-life | 360-life | 360-life |
| 40 | 292-365 | 324-405 | 360-life | 360-life | 360-life | 360-life |
| 41 | 324-405 | 360-life | 360-life | 360-life | 360-life | 360-life |
| 42 | 360-life | 360-life | 360-life | 360-life | 360-life | 360-life |
| 43 | life | life | life | life | life | life |

November 1, 2010

### SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

#### Criminal Division  -  Felony Branch

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | **Criminal No. 2009 CF2 19166** |
| | | **J. Mott** |
| BRYAN WEBSTER | * | **5/11/11** |

### MOTION TO VACATE SHOW CAUSE

Defendant, Bryan Webster, through his undersigned counsel, respectfully moves this Court to  vacate the show cause order in the  above-captioned case.

In support of this motion defendant states the following:

1. On March 18, 2010, defendant Webster was sentenced by this Court after having entered a guilty plea to one count of felony Bad Check, to one to twenty months, three years supervised release; ESS all but six months, followed by forty-eight months of supervised probation, with special conditions among with included  restitution of $13,9320.00.

2. Mr. Webster served his sentence at a federal designation in Marion, Illinois. Prior to his release and thus prior to his beginning the probationary period of his sentence  in the instant matter, Mr. Webster was charged in a federal matter with the enticement of a minor for indecent purposes, an offense/s which are alleged to have occurred while he was at the federal prison.  He continues to be held in federal custody. Defendant Webster was convicted and will be sentenced on August 5, 2011, in Greenbelt, Maryland.

Exhibit - 21 6

3.  Inasmuch as defendant Webster never began his probation in the instant case, the order to

show cause why his probation should be revoked in this matter should be vacated.

Moreover, as a practical matter, defendant requests that the Court consider closing his case.


**WHEREFORE,** defendant Webster respectfully requests that this motion be granted and

that the order to show cause be vacated.


Respectfully submitted,

Diane Bratter, #217836
601 Pennsylvania Ave. N.W.
Suite 900, South Bldg.
Washington, D.C. 20004
202-462-0657

Counsel for defendant Webster


## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing motion was served upon the United States
Attorney's Office, by e-mail at: USADC.DefensePleadings@usdoj.gov, and to probation
officer Tiffany Carter at tiffany.carter@csoca.gov, this ___9th___ day of May 9, 2011.

Diane Bratter

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT
OF
THE SEVENTH CIRCUIT OF ILLINOIS
BENTON COUNTY, ILLINOIS

MR. FRANCSIOUR B. KEMACHE-WEBSTER
# 42459-007
                    Petitioner        :
                                      :        Case No. 10-MJ-4035-PMF
                                      :
                                      :        Reflecting:
                                      :              10-3433-WC (4th Cir.)
v.                                    :
                                      :
THE UNITED STATES OF AMERICA          :
                    Respondant        :        Motion:
                                      :              Request For Documents
                                      :              Including Call Docket Sheets
            . . . .oooOooo. . . .

REQUEST FOR DOCUMENTS
INCLUDING
CALL DOCKET SHEETS

COMES NOW, THE PETITIONER: [KEMACHE-WEBSTER], by and through these
truths to all men in representation of himself by Pro-se.
Comes before this Said Court, to make a humble request to:
Motion: Request For Documents.
    * Pursuant To:
            Federal Rules of Civil Procedure, Rule(s) 5(c) & 34
    also ~ Rule: 26(a)(1)(A)(ii) & 30(b)(2), towards his filing his
Writ of Error, under Title 28 Section 2255.

The Petitioner, [KeMache-Webster], states as such:

1.    That all of the information provided is true, correct and accurate
      & under, penalties of perjury and by his signature set herein; he also
      verifies under the same penalties, pursuant to the provisions of Title
      28 Section 1746, that the facts given are based upon his own personal
      knowledge & belief unless otherwise noted to be different.

2.    That on September 16, 2010; he was while being processed for release
      from servicing a (6) six months sentence at USP Marion for a bad check
      charged, was arrested by Williamson County Sheriffs, based on a facimile
      that was forwarded to USP Marion for the United States Postal Services
      based on a complaint filed by United States Postal Investigator for the
      District of Columbia, Ms. Kia Pickens.

Exhibit #22ª

IN THE UNITED STATES DISTRICT COURT
FOR THE FOURTH CIRCUIT OF MARYLAND
GREENBELT, MARYLAND

MR. FRANÇSIOUR B. KEMACHE-WEBSTER
# 42459-007
        Petitioner      :

:      Case No. 10-00654-RWT
:      Reflecting:
:            4:10-MJ-4035-PMF(7th Cir.)
:            2010-3433-WC
:            Appl. Ct. 11-4801
:            U.S. S.Ct.12-9451

v.                    :

THE UNITED STATES OF AMERICA
        Respondant     :

Motion:
    Request For Documents
    Including Call Docket Sheets

....oooCCCOOOCooo....

REQUEST FOR DOCUMENTS
INCLUDING
CALL DOCKET SHEETS

COMES NOW, THE PETITIONER: [KEMACHE-WEBSTER], by and through these
truths to all men in representation of himself by Pro-se.
Comes before this Said Court, to make a humble request to:
Motion: Request For Documents.
  * Pursuant To:
      Federal Rules of Civil Procedure, Rule(s) 5(c) & 34
  also - Rule: 26(a)(1)(A)(ii) & 30(b)(2), towards his filing his
Writ of Error, under Title 28 Section 2255.

The Petitioner, [KeMache-Webster], states as such:

1.  That all of the information provided is true, correct and accurate
    & under, penalties of perjury and by his signature set herein; he also
    verifies under the same penalties, pursuant to the provisions of Title
    28 Section 1746, that the facts given are based upon his own personal
    knowledge & belief unless otherwise noted to be different.

2.  That on September 16, 2010; he was while being processed for release
    from servicing a (6) six months sentence at USP Marion for a bad check
    charged, was arrested by Williamson County Sheriffs, based on a facimile
    that was forwarded to USP Marion for the United States Postal Services
    based on a complaint filed by United States Postal Investigator for the
    District of Columbia, Ms. Kia Pickens.

Exhibit-22c

3. That on September 16, 2010; he was transported to the Williamson County
   Sheriff's Detention Center [THE JAIL] and processed into their system.
   Later on the same date he was transported to the Benton County, Illinois
   Federal Court House and turned over to the United States Marshal Service
   for federal processing.

4. That on September 16, 2010; he was interviewed by a Federal Public Defender
   a Ms. Malissa Day Esq.,whom in turn had he appointed to a Ms. Judith A.
   Kuerneke Esq. to represent he on the unknown matter.

5. That on September 16, 2010; he was brought before the United States
   Magistrate Judge: The Honorable:Philip M. Fraizer.
   whom explained to he the nature of the charge and had he speak with the
   appointed Counselor of Record about what was going on. The Petitioner, in
   turn spoke with Pre-trial, in both Illinios and Washington, D.C, about the
   steps to be taken to forego this above styled case.

6. That on September 16, 2010; waivers were signed, statements were made and
   transfer arraingments were made to send the Petitioner back to the complain-
   ing jurisdiction to answered to the complaint that was supposedly issued.

7. That on September 16. 2010; he was taken back to Williamson County Jail
   to await transport back to Greenbelt. Maryland the requesting jurisdiction
   but the Petitioner, was not moved until he made a call to Ms. Kuenneke Esq.
   explaining that there was no transportation order and that he was still in
   the Williamson County Jail (12) days later.

8. That on September 28, 2010; he was taken from Williamson County Jail back
   to Benton County Federal Court House, before the United States Marshal's
   Service, whom in turn obtained a transportation order and sent the detained
   Petitioner to White County Illinois Jail for detention.

9. That on September 29, 2010, he was transported to the Illinois Air Lift an
   therefore sent to Oklahoma Transfer Center in Oklahoma City, Oklahoma.

10. That on October 04, 2010; he was sent to Harrisonburg, Pennsylvania's Air
    Lift and later turned over to the Department of Coprrections of Maryland's
    authority and remained in their custody until October 18, 2010.

11. That on October 18, 2010; he was turned over to Greenbelt, Maryland to stand
    an answer to the complaint, which is now an arrest warrant.


Exhibit-22 d

2

13.  That on October 18, 2010: was appointed, new counsel from the Federal Public Defenders Office of Greenbelt, Maryland, a Mr. Andrew Carter Jr., I was given Pre-trial paper work to fill out, but was not given a detention hearing.

14.  That on October 25, 2010; he was indicted on a one count indictment of: Coecion & Enticement [of his daughter] under Title 18 Section 2422(b)

15.  That on April 21, 2011; he was convicted of a (12) women jury (10) black women and (2) white women, who deliberated for 28 minutes and found him guilty of a completed offense where it is shown and stated that he was incarcerated during the entire time of the offense.

16.  That on August 05, 2011; he was sentenced to a term of [LIFE] in prison and sent to Terre Haute, Indiana's C.M.U. [Communicatins Management Unit] e.g. [The Terrorist Unit of Indiana] under the United States S.A.M. [Special Administrative Measures] Act, monitored by the C.T.U. [Counter Terrorism Unit] of the Departmnt of Justice & Homeland Security, due in part because His Honor: Judge Roger W. Titus imposed the sentence based on his deciding that the imposition should [NOT] be guidelined but given a variance, and since the sentenced carried a minimum / manditory of 10 to Life, he decided to impose the entire sentence.

17.  That on August 05, 2011; his Notice of Appeal was entered.

18.  That on April 29, 2012; his conviction & senteced were affirmed based on the idea that the victim, [his daughter] assented to the conversations & communications that had transpired between the two.

19.  On November 19, 2012; his conviction & sentence were affirmed based on denial by Re-hearing/En banc. A Writ of Certiorari was entered for the 2013 October sesssion.

20.  On April 29, 2013; his convition & sentence was affirmed by the order of The United States Supreme Court, by denial to not be heard under the Writ of Certiorari, all Justices took part in the decision.

21.  On July 22, 2013: his conviction & sentence were affirmed by the order of The United States Supreme Court, by not having all of the proper files and documents presented for Rehearing of Writ of Certiorari, all Justices took part in the decision.

Exhibit -22c

3

The Petitioner, [KeMache-Webster], in preparation to go forward before the District Court of Greenbelt, Maryland in cause of submitting his Writ of Error, under Title 28 Section 2255; is without all of the needed & required paper work to move forward in preparation of his Writ of Error.

The paper work in request would consist of any and all:

Affidavits, Applications, Briefs, Certificates, Complaints, Documents, Evidence, Files, Guidelines, Informations, Judgments, Materials, Motions, Notices, Objections, Orders, Petitions, Pleadings, Records, Reports, Statements, Stipulations, Testimonies, Transcripts, Venues, Verifiers and Waivers, that could, should and would pertain to this above styled captioned case & matters.

The Petitioner, [KeMache-Webster], contends that without the proper paper work made availiable to him that if and when he files Writ of Error in the District Court of Greenbelt, Maryland [AND HE WILL FILE ]; he will not have readily availiable to him the needed, necessary & required paper work to forego his endeavor or more less respond back to the government when required and requested to do so in any case.

Even though the Petitioner, [KeMache-Webster], has not filed as of yet which means he is not required, to respond / answer the governments reply because one has not been entered as of yet.

Pursuant to:

Federal Rules of Civil Procedure 5(c)

* If the answer refers to briefs or transcripts of the prior proceedings that are not available in the court's records the judge [MUST] order the government to furnish them within a reasonable time that will not unduly delay the proceedings.

Pursuant to:

Federal Rules of Civil Procedure 26(a)(1)(A)(ii)

(A)  *Except as exempted by Rules: 26(a)(1)(B), as otherwise stipulated or ordered by the court, a party must without awaiting a discovery request, provide to the other parties.

(ii)  * A copy- or a discription by catagory and location- of all documents electronically stored information, and tangible things that the disclosing party has in its possession, custody or control and may use to support its claim or defense, unless the use would be solay for impeachment:

4    Exhibit-22 P

Pursuant to:

Federal Rules of Civil Procedure 30(b)(2)

(2)    Producing Documents:

&ast; If a subpoena duces tecum is to be served on a deponent, the materials
  designated for production, as set out in the subpoena, must be listed
  in the notice or as in an attachment. The notice to a party deponent
  may be accompanied by a request under Rule 34, to produce documents &
  tangible things at the deposition.

The Petitioner, [KeMache-Webster], also contends; that since he is currently
housed at FCI Terre Haute Complex's C.M.U. [Communications Management Unit]
under the S.A.M. [Special Administrative Measures] act, located in Terre Haute,
Indiana; it is another reason for why he is making his request at such an earlier
juncture to his filings of his Writ of Error, under Title 28 Section 2255.

The Petitioner, [KeMache-Webster], also states that since he is under such
strict regulations & requirements by the policies given by being in the C.M.U.
that he [MUST] make his request rather early in order for him to receive the
required, requested, needed & necessary paper work being:

&ast; Affidavits, Applications, Briefs, Certifications, Complaints, Documents,
  Evidence, Files, Guidelines, Informations, Judgments, Materials, Motions,
  Notices, Objections, Orders, Petitions, Pleadings, Records, Remedies, also
  Reports, Statements, Stipulations, Testimonies, Transcripts, Venues, Verifiers
  and Waivers, that could, should and would pertain to this above styled cap-
  tioned case & matters.

WHEREFORE:

The Petitioner, [KeMache-Webster] prays;

that this Said Court grant the Petitioner the requested relief that this
Said Court may deem needed, necessary and required; pursuant to the Federal
Rules of Civil Procedures: Rule 5(c), 26(a)(1)(A)(ii), 30(b)(2) & 34.

_26 April 2014_
26 April 2014

Respectfully submitted;

_Mr. KeMache-Webster_
Mr. KeMache-Webster
Federal No. 42459-007
FCI / CMU Terre Haute Complex
P.O. Box - 0033
Terre Haute, Indiana 47808

5

CERTIFICATE OF SERVICE

HEREIN, I THE PETITIONER, [KEMACHE-WEBSTER], doth so certify & declare under the penatlies of perjury, that all of the above styled information is true, correct and accurate to the best of my knowledge and abilities.

HEREIN, I THE PETITIONER, [KEMACHE-WEBSTER], also certify & declare that I have directed the United States Clerk of this Said Court to forward to all parties involved by direction of proved cover letter.

HEREIN, I THE PETITIONER, [KEMACHE-WEBSTER], lastly certify & declare that I have maild this postage pre-paid U.S. mail, to the United States District Court Clerk in its true, correct and accurate form.

Respectfully submitted;
/s/

26 April 2014
_____
Mr. F.B. KeMache-Webster
Federal No. 42459-007
FCI / CMU Terre Haute Complex
P.O. Box - 0033
Terre Haute, Indiana 47808

Exhibit - 22 h

# United States District Court
## District of Maryland

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| | (For Offenses Committed on or After November 1, 1987) |
| v. | |
| | Case Number: RWT 8:10-cr-0654-001 |
| FRANESIOUR B. KEMACHE-WEBSTER | USM Number: N/A |
| | Defendant's Attorney:  Gary Proctor and |
| | Gwendolyn Waters |
| | Assistant U.S. Attorney:  LisaMarie Freitas and |
| | Stacy Belf |

**THE DEFENDANT:**

☐ pleaded guilty to count(s) _____
☐ pleaded nolo contendere to count(s) _____ , which was accepted by the court.
☒ was found guilty on count __I of the indictment__ after a plea of not guilty.

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 U.S.C. 2422(b) | Use of an Interstate Commerce Facility to Entice a Minor to Engage in Sexual Activity | August 20, 2010 | I |

The defendant is adjudged guilty of the offenses listed above and sentenced as provided in pages 2 through _____ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984 as modified by U.S. v. Booker, 125 S. Ct. 738 (2005).

☐ The defendant has been found not guilty on count(s) _____
☐ Count(s) _____ (is)(are) dismissed on the motion of the United States.

**IT IS FURTHER ORDERED** that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

_____ FILED      _____ ENTERED
_____ LOGGED   _____ RECEIVED

AUG – 5 2011

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND

BY                          DEPUTY

__August 5, 2011__
Date of Imposition of Judgment

ROGER W. TITUS
UNITED STATES DISTRICT JUDGE

August 5 2011
Date

Name of Court Reporter:    Gloria Williams

Exhibit - 29a

Sheet 2 - Judgment in a Criminal Case with Supervised Release (Rev. 2/2005)                                                    Judgment Page 2 of 6

DEFENDANT: FRANESIOUR B. KEMACHE-WEBSTER                                    CASE NUMBER: RWT 8:10-cr-0654-001

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of ___LIFE___ .

☒ The court makes the following recommendations to the Bureau of Prisons:
   1. That the defendant participate in any appropriate mental health evaluation and treatment program.
   2. That the defendant not be permitted to send any communication whatsoever to the victim or the victim's mother whose identities are set forth in the Statement of Reasons. This recommendation is not made lightly, but is essential in light of the defendant's past communication history with the victim. This criminal history includes repeated instances of the defendant, communicating with the victim while incarcerated at USP Marion, IL. for which he has now received a life sentence.
   3. That the defendant be designated to the Communications Management Unit (CMU) at either FCC Terra Haute, IN or USP Marion, IL for service of his sentence.
   4. That the Bureau of Prisons provide the Court with a report on the actions taken by it on the Court's recommendations.

☒ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

   ☐ at _____ a.m./p.m. on _____ .
   ☐ as notified by the United States Marshal.

☐ The defendant shall surrender, at his/her own expense, to the institution designated by the Bureau of Prisons at the date and time specified in a written notice to be sent to the defendant by the United States Marshal. If the defendant does not receive such a written notice, defendant shall surrender to the United States Marshal:

   ☐ before 2 p.m. on _____ .

A defendant who fails to report either to the designated institution or to the United States Marshal as directed shall be subject to the penalties of Title 18 U.S.C. §3146. If convicted of an offense while on release, the defendant shall be subject to the penalties set forth in 18 U.S.C. §3147. For violation of a condition of release, the defendant shall be subject to the sanctions set forth in Title 18 U.S.C. §3148. Any bond or property posted may be forfeited and judgment entered against the defendant and the surety in the full amount of the bond.

## RETURN

I have executed this judgment as follows:

   Defendant delivered on _____ to _____ at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By:_____
DEPUTY U.S. MARSHAL

APP. 14    Exhibit -23b

Case 8:10-cr-00654-RWT   Document 127   Filed 08/05/11   Page 3 of 6

Sheet 3 - Judgment in a Criminal Case with Supervised Release (Rev. 2/2005)                    Judgment Page 3 of 6

DEFENDANT: FRANESIOUR B. KEMACHE-WEBSTER              CASE NUMBER: RWT 8:10-cr-0654-001

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of    LIFE    .

**The defendant shall comply with all of the following conditions:**

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

## A.   STATUTORY CONDITIONS OF SUPERVISED RELEASE

1)   The defendant shall not commit any federal, state or local crime.
2)   In any felony case, the defendant shall not possess a firearm or ammunition as defined in 18 U.S.C. §921.
3)   The defendant shall not illegally use or possess a controlled substance.
4)   The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.
   ☐   The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse.  (Check, if applicable.)
5)   Pursuant to Pub. Law 108-405, Revised DNA Collection Requirements Under the Justice for All Act of 2004, if applicable, the defendant shall cooperate in the collection of DNA while incarcerated in the Bureau of Prisons, or as directed by the probation officer.
6)   If this judgment imposes any criminal monetary penalty, including special assessment, fine, or restitution, it shall be a condition of supervised release that the defendant pay any such monetary penalty that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.  The defendant shall notify the court of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution, fines, or special assessments.

## B.   STANDARD CONDITIONS OF SUPERVISION

1)   The defendant shall not leave the judicial district without the permission of the court or probation officer;
2)   The defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3)   The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4)   The defendant shall support his or her dependents and meet other family responsibilities;
5)   The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
6)   The defendant shall notify the probation officer ten days prior to any change in residence or employment;
7)   The defendant shall refrain from excessive use of alcohol;
8)   The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9)   The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any persons convicted of a felony unless granted permission to do so by the probation officer;
10)  The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11)  The defendant shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer;
12)  The defendant shall notify the probation officer within 72 hours of being charged with any offense, including a traffic offense;
13)  The defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court;
14)  As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

Exhibit - 23 C

Sheet 4 - Judgment in a Criminal Case with Supervised Release (Rev. 2/2005)       Judgment Page 4 of 6

**DEFENDANT: FRANESIOUR B. KEMACHE-WEBSTER**      CASE NUMBER: RWT 8:10-cr-0654-001

## C.  SUPERVISED RELEASE
## ADDITIONAL CONDITIONS

1. The defendant shall register with any federal, state, and/or local sex offender registration agency in any location where the defendant resides, is employed, carries on a vocation, or is a student, as directed by the probation officer.

2. The defendant shall satisfactorily participate in a mental health treatment program approved by the probation officer, which may include evaluation, counseling, and testing as deemed necessary by the probation officer.

3. That the defendant shall not have any contact or communication with the victim or victim's mother in this case.

5. That the defendant pay the special assessment in the amount of $100.00 as directed herein.

Exhibit 23d

Case 8:10-cr-00654-RWT   Document 127   Filed 08/05/11   Page 5 of 6

Sheet 5, Part A - Judgment in a Criminal Case with Supervised Release (Rev. 8/2010)                    Judgment Page 5 of 6

**DEFENDANT: FRANESIOUR B. KEMACHE–WEBSTER**           CASE NUMBER: RWT 8:10-cr-0654-001

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | Assessment | Fine | Restitution |
|---|---|---|---|
| TOTALS | $ 100.00 | $ | $ |

☐ CVB Processing Fee $25.00

☐ The determination of restitution is deferred until _____ An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
|  | 0 | 0 |  |

| TOTALS | $        0 | $        0 |

☐ Restitution amount ordered pursuant to plea agreement _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for  ☐ fine  ☐ restitution

☐ the interest requirement for  ☐ fine  ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

Exhibit 23e

APP. 17

Case 8:10-cr-00654-RWT   Document 127   Filed 08/05/11   Page 6 of 6

Sheet 6 - Judgment in a Criminal Case with Supervised Release (Rev. 2/2005)                    Judgment Page 6 of 6

DEFENDANT: FRANESIOUR B. KEMACHE-WEBSTER              CASE NUMBER: RWT 8:10-cr-0654-001

## SCHEDULE OF PAYMENTS

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

Payment of the total fine and other criminal monetary penalties shall be due as follows:

A   [X]  In full immediately

B   [ ]  $_____ immediately, balance due (in accordance with C, D, or E); or

C   [ ]  Not later than _____; or

D   [ ]  Installments to commence _____ day(s) after the date of this judgment.

E   [ ]  In _____ (*e.g. equal weekly, monthly, quarterly*) installments of $_____ over a period of _____ year(s) to commence when the defendant is placed on supervised release.

The defendant will receive credit for all payments previously made toward any criminal monetary penalties imposed.

Unless the court expressly orders otherwise, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalties except those payments made through the Bureau of Prisons Inmate Financial Responsibility Program, are to be made to the Clerk of the Court..

If the entire amount of criminal monetary penalties is not paid prior to the commencement of supervision, the balance shall be paid:

    [ ]  in equal monthly installments during the term of supervision; or

    [ ]  on a nominal payment schedule of $_____ per month during the term of supervision.

The U.S. probation officer may recommend a modification of the payment schedule depending on the defendant's financial circumstances.

Special instructions regarding the payment of criminal monetary penalties:

[ ]  Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

[ ]  The defendant shall pay the cost of prosecution.

[ ]  The defendant shall pay the following court cost(s):

[ ]  The defendant shall forfeit the defendant's interest in the following property to the United States:



Exhibit - 23 R

U.S. Department of Commerce

People    Business    Geography    Data    Research

State & County QuickFacts

# Prince George's County, Maryland

| People QuickFacts | Prince George's County | Maryland |
|---|---|---|
| Population, 2011 estimate | 871,233 | 5,828,289 |
| Population, 2010 (April 1) estimates base | 863,420 | 5,773,552 |
| Population, percent change, April 1, 2010 to July 1, 2011 | 0.9% | 0.9% |
| Population, 2010 | 863,420 | 5,773,552 |
| Persons under 5 years, percent, 2011 | 6.8% | 6.3% |
| Persons under 18 years, percent, 2011 | 23.5% | 23.1% |
| Persons 65 years and over, percent, 2011 | 9.8% | 12.5% |
| Female persons, percent, 2011 | 52.0% | 51.6% |
| White persons, percent, 2011 (a) | 26.6% | 61.1% |
| Black persons, percent, 2011 (a) | 65.4% | 30.0% |
| American Indian and Alaska Native persons, percent, 2011 (a) | 1.0% | 0.5% |
| Asian persons, percent, 2011 (a) | 4.3% | 5.8% |
| Native Hawaiian and Other Pacific Islander persons, percent, 2011 (a) | 0.2% | 0.1% |
| Persons reporting two or more races, percent, 2011 | 2.5% | 2.5% |
| Persons of Hispanic or Latino Origin, percent, 2011 (b) | 15.2% | 8.4% |
| White persons not Hispanic, percent, 2011 | 15.2% | 54.4% |
| Living in same house 1 year & over, 2006-2010 | 83.8% | 85.9% |
| Foreign born persons, percent, 2006-2010 | 19.4% | 13.2% |
| Language other than English spoken at home, pct age 5+, 2006-2010 | 19.6% | 15.9% |
| High school graduates, percent of persons age 25+, 2006-2010 | 85.8% | 87.8% |
| Bachelor's degree or higher, pct of persons age 25+, 2006-2010 | 29.6% | 35.7% |
| Veterans, 2006-2010 | 64,735 | 455,328 |
| Mean travel time to work (minutes), workers age 16+, 2006-2010 | 35.5 | 31.3 |
| Housing units, 2010 | 328,182 | 2,378,814 |
| Homeownership rate, 2006-2010 | 64.3% | 69.0% |
| Housing units in multi-unit structures, percent, 2006-2010 | 32.9% | 25.7% |

Exhibit-24 a

9/21/2012



AMERICAN
FactFinder

DP-1 | Profile of General Population and Housing Characteristics: 2010

2010 Demographic Profile Data

NOTE: For more information on confidentiality protection, nonsampling error, and definitions, see http://www.census.gov/prod/cen2010/doc/dpsf.pdf.

**Geography: Prince George's County, Maryland**

| Subject | Number | Percent |
|---|---|---|
| SEX AND AGE | | |
| Total population | 863,420 | 100.0 |
| Under 5 years | 58,564 | 6.8 |
| 5 to 9 years | 54,482 | 6.3 |
| 10 to 14 years | 55,923 | 6.5 |
| 15 to 19 years | 67,439 | 7.8 |
| 20 to 24 years | 70,644 | 8.2 |
| 25 to 29 years | 64,682 | 7.5 |
| 30 to 34 years | 61,058 | 7.1 |
| 35 to 39 years | 60,695 | 7.0 |
| 40 to 44 years | 63,237 | 7.3 |
| 45 to 49 years | 66,200 | 7.7 |
| 50 to 54 years | 61,853 | 7.2 |
| 55 to 59 years | 53,261 | 6.2 |
| 60 to 64 years | 43,869 | 5.1 |
| 65 to 69 years | 29,761 | 3.4 |
| 70 to 74 years | 20,339 | 2.4 |
| 75 to 79 years | 14,175 | 1.6 |
| 80 to 84 years | 8,950 | 1.0 |
| 85 years and over | 8,288 | 1.0 |
| Median age (years) | 34.9 | ( X ) |
| 16 years and over | 682,665 | 79.1 |
| 18 years and over | 657,421 | 76.1 |
| 21 years and over | 611,270 | 70.8 |
| 62 years and over | 105,996 | 12.3 |
| 65 years and over | 81,513 | 9.4 |
| Male population | 414,161 | 48.0 |
| Under 5 years | 29,836 | 3.5 |
| 5 to 9 years | 27,774 | 3.2 |
| 10 to 14 years | 28,420 | 3.3 |
| 15 to 19 years | 34,955 | 4.0 |
| 20 to 24 years | 36,739 | 4.3 |
| 25 to 29 years | 32,020 | 3.7 |
| 30 to 34 years | 29,390 | 3.4 |
| 35 to 39 years | 28,907 | 3.3 |
| 40 to 44 years | 29,635 | 3.4 |
| 45 to 49 years | 30,630 | 3.5 |
| 50 to 54 years | 28,406 | 3.3 |
| 55 to 59 years | 23,829 | 2.8 |
| 60 to 64 years | 19,591 | 2.3 |
| 65 to 69 years | 13,097 | 1.5 |
| 70 to 74 years | 9,071 | 1.1 |
| 75 to 79 years | 6,053 | 0.7 |
| 80 to 84 years | 3,400 | 0.4 |
| 85 years and over | 2,408 | 0.3 |

Exhibit-24b

09/21/2012

| | | |
|---|---|---|
| Median age (years) | | |
| 16 years and over | 322,070 | 37.3 |
| 18 years and over | 309,092 | 35.8 |
| 21 years and over | 284,811 | 33.0 |
| 62 years and over | 45,043 | 5.2 |
| 65 years and over | 34,029 | 3.9 |
| Female population | 449,259 | 52.0 |
| Under 5 years | 28,728 | 3.3 |
| 5 to 9 years | 26,708 | 3.1 |
| 10 to 14 years | 27,503 | 3.2 |
| 15 to 19 years | 32,484 | 3.8 |
| 20 to 24 years | 33,905 | 3.9 |
| 25 to 29 years | 32,662 | 3.8 |
| 30 to 34 years | 31,668 | 3.7 |
| 35 to 39 years | 31,788 | 3.7 |
| 40 to 44 years | 33,602 | 3.9 |
| 45 to 49 years | 35,570 | 4.1 |
| 50 to 54 years | 33,447 | 3.9 |
| 55 to 59 years | 29,432 | 3.4 |
| 60 to 64 years | 24,278 | 2.8 |
| 65 to 69 years | 16,664 | 1.9 |
| 70 to 74 years | 11,268 | 1.3 |
| 75 to 79 years | 8,122 | 0.9 |
| 80 to 84 years | 5,550 | 0.6 |
| 85 years and over | 5,880 | 0.7 |
| Median age (years) | 36.8 | (X) |
| 16 years and over | 360,595 | 41.8 |
| 18 years and over | 348,329 | 40.3 |
| 21 years and over | 326,459 | 37.8 |
| 62 years and over | 60,953 | 7.1 |
| 65 years and over | 47,484 | 5.5 |
| RACE | | |
| Total population | 863,420 | 100.0 |
| One Race | 836,091 | 96.8 |
| White | 166,059 | 19.2 |
| Black or African American | 556,620 | 64.5 |
| American Indian and Alaska Native | 4,258 | 0.5 |
| Asian | 35,172 | 4.1 |
| Asian Indian | 8,166 | 0.9 |
| Chinese | 5,238 | 0.6 |
| Filipino | 10,067 | 1.2 |
| Japanese | 512 | 0.1 |
| Korean | 2,744 | 0.3 |
| Vietnamese | 3,082 | 0.4 |
| Other Asian [1] | 5,363 | 0.6 |
| Native Hawaiian and Other Pacific Islander | 541 | 0.1 |
| Native Hawaiian | 59 | 0.0 |
| Guamanian or Chamorro | 307 | 0.0 |
| Samoan | 44 | 0.0 |
| Other Pacific Islander [2] | 131 | 0.0 |
| Some Other Race | 73,441 | 8.5 |
| Two or More Races | 27,329 | 3.2 |
| White; American Indian and Alaska Native [3] | 1,099 | 0.1 |
| White; Asian [3] | 2,251 | 0.3 |
| White; Black or African American [3] | 6,475 | 0.7 |
| White; Some Other Race [3] | 4,994 | 0.6 |
| Race alone or in combination with one or more other races: [4] | | |
| White | 183,849 | 21.3 |
| Black or African American | 573,323 | 66.4 |
| American Indian and Alaska Native | 11,562 | 1.3 |

Exhibit -24C

2  of 4

09/21/2012

| | | |
|---|---|---|
| Native Hawaiian and Other Pacific Islander | 1,772 | 0.2 |
| Some Other Race | 82,639 | 9.6 |
| **HISPANIC OR LATINO** | | |
| Total population | 863,420 | 100.0 |
| Hispanic or Latino (of any race) | 128,972 | 14.9 |
| Mexican | 24,247 | 2.8 |
| Puerto Rican | 5,655 | 0.7 |
| Cuban | 1,471 | 0.2 |
| Other Hispanic or Latino [5] | 97,599 | 11.3 |
| Not Hispanic or Latino | 734,448 | 85.1 |
| **HISPANIC OR LATINO AND RACE** | | |
| Total population | 863,420 | 100.0 |
| Hispanic or Latino | 128,972 | 14.9 |
| White alone | 37,206 | 4.3 |
| Black or African American alone | 8,181 | 0.9 |
| American Indian and Alaska Native alone | 2,102 | 0.2 |
| Asian alone | 357 | 0.0 |
| Native Hawaiian and Other Pacific Islander alone | 211 | 0.0 |
| Some Other Race alone | 71,274 | 8.3 |
| Two or More Races | 9,641 | 1.1 |
| Not Hispanic or Latino | 734,448 | 85.1 |
| White alone | 128,853 | 14.9 |
| Black or African American alone | 548,439 | 63.5 |
| American Indian and Alaska Native alone | 2,156 | 0.2 |
| Asian alone | 34,815 | 4.0 |
| Native Hawaiian and Other Pacific Islander alone | 330 | 0.0 |
| Some Other Race alone | 2,167 | 0.3 |
| Two or More Races | 17,688 | 2.0 |
| **RELATIONSHIP** | | |
| Total population | 863,420 | 100.0 |
| In households | 844,092 | 97.8 |
| Householder | 304,042 | 35.2 |
| Spouse [6] | 122,000 | 14.1 |
| Child | 253,142 | 29.3 |
| Own child under 18 years | 165,222 | 19.1 |
| Other relatives | 95,979 | 11.1 |
| Under 18 years | 34,574 | 4.0 |
| 65 years and over | 10,551 | 1.2 |
| Nonrelatives | 68,929 | 8.0 |
| Under 18 years | 5,731 | 0.7 |
| 65 years and over | 2,030 | 0.2 |
| Unmarried partner | 19,508 | 2.3 |
| In group quarters | 19,328 | 2.2 |
| Institutionalized population | 4,283 | 0.5 |
| Male | 2,358 | 0.3 |
| Female | 1,925 | 0.2 |
| Noninstitutionalized population | 15,045 | 1.7 |
| Male | 7,660 | 0.9 |
| Female | 7,385 | 0.9 |
| **HOUSEHOLDS BY TYPE** | | |
| Total households | 304,042 | 100.0 |
| Family households (families) [7] | 203,520 | 66.9 |
| With own children under 18 years | 93,115 | 30.6 |
| Husband-wife family | 122,000 | 40.1 |
| With own children under 18 years | 54,069 | 17.8 |
| Male householder, no wife present | 19,519 | 6.4 |
| With own children under 18 years | 8,244 | 2.7 |
| Female householder, no husband present | 62,001 | 20.4 |
| With own children under 18 years | 30,802 | 10.1 |

Exhibit - 24 d

3  of 4

09/21/2012

| | | |
|---|---|---|
| Nonfamily households [6] | 150,322 | 50.1 |
| Householder living alone | 79,375 | 26.1 |
| Male | 32,938 | 10.8 |
| 65 years and over | 5,838 | 1.9 |
| Female | 46,437 | 15.3 |
| 65 years and over | 13,304 | 4.4 |
| Households with individuals under 18 years | 111,832 | 36.8 |
| Households with individuals 65 years and over | 61,728 | 20.3 |
| Average household size | 2.78 | (X) |
| Average family size [7] | 3.31 | (X) |
| HOUSING OCCUPANCY | | |
| Total housing units | 328,182 | 100.0 |
| Occupied housing units | 304,042 | 92.6 |
| Vacant housing units | 24,140 | 7.4 |
| For rent | 9,246 | 2.8 |
| Rented, not occupied | 405 | 0.1 |
| For sale only | 5,095 | 1.6 |
| Sold, not occupied | 656 | 0.2 |
| For seasonal, recreational, or occasional use | 676 | 0.2 |
| All other vacants | 8,062 | 2.5 |
| Homeowner vacancy rate (percent) [8] | 2.6 | (X) |
| Rental vacancy rate (percent) [9] | 7.5 | (X) |
| HOUSING TENURE | | |
| Occupied housing units | 304,042 | 100.0 |
| Owner-occupied housing units | 190,993 | 62.8 |
| Population in owner-occupied housing units | 546,683 | (X) |
| Average household size of owner-occupied units | 2.86 | (X) |
| Renter-occupied housing units | 113,049 | 37.2 |
| Population in renter-occupied housing units | 297,409 | (X) |
| Average household size of renter-occupied units | 2.63 | (X) |

X Not applicable.

[1] Other Asian alone, or two or more Asian categories.

[2] Other Pacific Islander alone, or two or more Native Hawaiian and Other Pacific Islander categories.

[3] One of the four most commonly reported multiple-race combinations nationwide in Census 2000.

[4] In combination with one or more of the other races listed. The six numbers may add to more than the total population, and the six percentages may add to more than 100 percent because individuals may report more than one race.

[5] This category is composed of people whose origins are from the Dominican Republic, Spain, and Spanish-speaking Central or South American countries. It also includes general origin responses such as "Latino" or "Hispanic."

[6] "Spouse" represents spouse of the householder. It does not reflect all spouses in a household. Responses of "same-sex spouse" were edited during processing to "unmarried partner."

[7] "Family households" consist of a householder and one or more other people related to the householder by birth, marriage, or adoption. They do not include same-sex married couples even if the marriage was performed in a state issuing marriage certificates for same-sex couples. Same-sex couple households are included in the family households category if there is at least one additional person related to the householder by birth or adoption. Same-sex couple households with no relatives of the householder present are tabulated in nonfamily households. "Nonfamily households" consist of people living alone and households which do not have any members related to the householder.

[8] The homeowner vacancy rate is the proportion of the homeowner inventory that is vacant "for sale." It is computed by dividing the total number of vacant units "for sale only" by the sum of owner-occupied units, vacant units that are "for sale only," and vacant units that have been sold but not yet occupied; and then multiplying by 100.

[9] The rental vacancy rate is the proportion of the rental inventory that is vacant "for rent." It is computed by dividing the total number of vacant units "for rent" by the sum of the renter-occupied units, vacant units that are "for rent," and vacant units that have been rented but not yet occupied; and then multiplying by 100.

Source: U.S. Census Bureau, 2010 Census.

Exhibit 24 e

Case 8:11-cr-00344-RWT   Document 6   Filed 07/06/11   Page 1 of 8

U.S. Department of Justice

United States Attorney
District of Maryland
Southern Division

June 15, 2011

Julie Johnson, Esq.
Office of the Federal Public Defender
6411 Ivy Lane, Suite 710
Greenbelt, Maryland 20770-1510

Re:   United States v. Michael Allen Alper,
    Criminal No. [to be determined]    RWT 11cr0344

Dear Ms. Johnson:

This letter confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by June 15, 2011, it will be deemed withdrawn. **The plea agreement is entered into and will be submitted to the Court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).** The terms of the agreement are as follows:

*Offense of Conviction*

1.   The Defendant agrees to waive indictment and plead guilty to a one-count information, which will charge him with coercion and enticement of a minor to engage in criminal sexual activity, pursuant to 18 U.S.C. § 2422(b). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

*Elements of the Offense*

2.   The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: (1) that the Defendant used a facility of interstate and foreign commerce; (2) to knowingly persuade, induce, entice and coerce; (3) an individual who had not attained the age of 18 years; (4) to engage in sexual activity for which any person can be charged with a criminal offense, in this case, second degree rape under Maryland Code, Criminal Law § 3-304, which requires that (a) the Defendant knowingly engage in vaginal intercourse with a female; (2) the female has not attained the age of 14 years; and (3) the Defendant is at least four years older than the female.

---

Case 8:11-cr-00344-RWT   Document 6   Filed 07/06/11   Page 2 of 8

*Penalties*

3.   The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: imprisonment for life (with a mandatory minimum term of incarceration of 10 years), supervised release for life (with a mandatory minimum term of five years), and a $250,000 fine. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 2259, 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

*Waiver of Rights*

4.   The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

    a.   If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b.   If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c.   If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

---

[1]   Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

2

---

Case 8:11-cr-00344-RWT   Document 6   Filed 07/06/11   Page 3 of 8

    d.   The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

    e.   If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f.   By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

    g.   If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

    h.   By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

*Advisory Sentencing Guidelines Apply*

5.   The Defendant understands that the Court will determine a sentencing guidelines range for this case (hereinafter the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. § 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

3

---

Case 8:11-cr-00344-RWT   Document 6   Filed 07/06/11   Page 4 of 8

*Factual and Advisory Guidelines Stipulation*

6.   This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth at Attachment A, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

    a.   Pursuant to U.S.S.G. § 2G1.3(a)(3) of the United States Sentencing Guidelines, the base offense level is 28.

    b.   Pursuant to U.S.S.G. § 2G1.3(b)(2), the offense level is increased by 2 levels, because the offense involved the knowing misrepresentation of the defendant's identity to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in prohibited sexual conduct.

    c.   Pursuant to U.S.S.G. § 2G1.3(b)(3), the offense level is increased by 2 levels, because the offense involved the use of a computer to persuade, induce, entice and coerce the minor to engage in prohibited sexual conduct.

    d.   Pursuant to U.S.S.G. § 2G1.3(b)(4), the offense level is increased by 2 levels, because the offense involved the commission of a sex act or sexual contact.

    e.   If U.S.S.G. § 4B1.5(a)(1)(B)(i) applies, the offense level is 37 and the criminal history category is V.

    f.   This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

7.   The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history category could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

4

Exhibit - 25a

8.    This Office and the Defendant agree that, with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, or adjustments in the Sentencing Guidelines will be raised or are in dispute. If the defendant intends to rely upon any expert report or opinion at sentencing, he must disclose any such opinion or report to the government 30 days in advance of the sentencing date.

### Rule 11 (c) (1) (C) Plea

9.    The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence between 120 and 168 months is the appropriate disposition of this case. This agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful condition of probation or supervised release. In the event that the Court rejects this plea agreement, *either* party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

### Obligations of the United States Attorney's Office

10.    At the time of sentencing, the parties will recommend that the Court accept the stipulated sentencing range. If the plea is accepted by the Court, this Office will recommend a sentence within the stipulated range, subject to the applicable mandatory minimum sentence, and a lifetime term of supervised release.

11.    The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

### Restitution

12.    The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663, 3663A, and 2259, the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

5

### Registration as a Sex Offender

13.    The defendant understands and agrees that as a consequence of his conviction for the crime to which he is pleading guilty, he will be required to register as a sex offender, and to keep that registration current, in the place where he resides, where he is employed, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may violate the terms of his supervised release and subject him to new criminal charges pursuant to 18 U.S.C. § 2250.

### Waiver of Appeal

14.    In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    a.    The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

    b.    The Defendant and this Office knowingly waive all rights, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), *except* as follows: (i) the Defendant reserves the right to appeal any sentence that includes a term of imprisonment above 168 months, and (ii) this Office reserves the right to appeal any sentence that includes a term of imprisonment below 120 months.

    c.    Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

    d.    The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Release Pending Sentencing

15.    The parties agree to recommend that the Defendant be released pending sentencing pursuant to the conditions mandated by 18 U.S.C. § 3142(c)(1)(B), specifically including electronic monitoring and each of the conditions set forth in §§ 3142(c)(1)(B)(iv), (v), (vi), (vii) and (viii).

6

### Obstruction or Other Violations of Law

16.    The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Entire Agreement

17.    This agreement supersedes any prior understandings, promises, or conditions between this Office and the Defendant and constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this agreement and none will be entered into unless in writing and signed by all parties.

    If the Defendant fully accepts each and every term and condition of this letter, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Stacy Dawson Belf
Assistant United States Attorney

LisaMarie Freitas
Special Assistant United States Attorney

7

    I have read this agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

6.15.20.11                    _____
Date                             Michael Allen Alper

    I am Michael Allen Alper's attorney. I have carefully reviewed every part of this agreement with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

June 15, 2011                _____
Date                             Julie Johnston, Esquire

Exhibit 25 b

8

Case 8:11-cr-00344-RWT   Document 6-1   Filed 07/06/11   Page 1 of 3

Case 8:11-cr-00344-RWT   Document 6-1   Filed 07/06/11   Page 2 of 3

### EXHIBIT A: STIPULATED FACTS – MICHAEL ALPER

*The undersigned parties hereby stipulate and agree that if this case had proceeded to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

**The Defendant's Prior Conviction for Statutory Rape**

In October 2003, **MICHAEL ALLEN ALPER** was 27 years of age and living in Virginia. **ALPER** actively used a computer to play games on the Internet, including role-playing games, through which he engaged minor females in instant messages and other means of communication. Through one such internet game, **ALPER** met L.S., a 13 year old girl living in Great Falls, Virginia. During internet chats, L.S. initially told **ALPER** she was 16 years old but later told **ALPER** she was 13. **ALPER** told L.S. that he was 21 years old. **ALPER** continued to chat with the minor victim and later asked her to "hang out." **ALPER** met up with L.S. at her parents' house, specifically by having L.S. sneak out in the late evening hours while **ALPER** waited in his car at the end of L.S.'s street to pick her up. When **ALPER** picked up L.S., he discussed various things including when L.S. would turn 18. **ALPER** drove to an abandoned street, parked the car, and encouraged the victim to get in the back seat. **ALPER** then removed L.S.'s clothing, and attempted vaginal intercourse with the victim. L.S., a virgin, was frightened and did not physically resist, but rather simply said "Ouch." **ALPER** did not stop but inserted his penis inside L.S.'s vagina, whereupon he engaged in intercourse to the point of ejaculation. During the course of the assault, **ALPER** scratched the L.S.'s back and bit her above her breast. L.S. later reported the incident to her school guidance counselor. Under the direction and surveillance of the Fairfax County Police, L.S. called **ALPER**, who asked the victim if she had fun, told L.S. he used a condom, and asked L.S. if he left a mark on her. **ALPER** then talked about hanging out with L.S. again. **ALPER** was later charged in Fairfax County and convicted of statutory rape and sentenced to three years incarceration, with all but six months suspended, and three supervised probation. During questioning, **ALPER** claimed that he believed the victim was 19 years old.

Also in the fall of 2003, **ALPER** met M.M., a 14 year old girl living in Reston, Virginia, on another website. In this instance, after M.M. stated she was 16 years old, **ALPER** told M.M. he was 17 years old. **ALPER** communicated with M.M. through instant messaging via the Internet after M.M. told **ALPER** that her parents did not allow her to speak on the phone with boys. As with L.S., **ALPER** asked M.M. to meet in person and again met up with her by waiting at the end of the street in her neighborhood. When M.M. arrived at the car, **ALPER** took her into nearby woods. While chatting, **ALPER** with M.M. that she was too pretty to be a virgin. **ALPER** then fondled M.M.'s vagina and caused M.M. to fondle his penis. **ALPER** removed M.M.'s clothing, told her he was wearing a condom, and then inserted his penis into M.M.'s vagina. M.M. told **ALPER** that it hurt but **ALPER** continued to insert his penis into M.M.'s vagina and asked her to be quiet. M.M. tried to pull herself up, but **ALPER** pushed M.M.'s head onto his penis. **ALPER** grabbed M.M. by the back of the head while M.M. pushed her hands against the ground trying to get up. **ALPER** ultimately ejaculated into M.M.'s mouth. **ALPER** then walked the victim back where he was parked and told her that he wanted to see her again. The victim returned home, where she threw up.

**ALPER** continued to chat with the M.M. via instant messaging. **ALPER** later visited M.M. again, whereupon M.M. was wearing her school uniform with her school logo. **ALPER** again took M.M. into the woods, where he tried to guide her head towards his penis but M.M. refused. **ALPER** then instructed M.M. to get on her hands and knees and had vaginal sex with M.M. As **ALPER** dropped M.M. off, **ALPER** mentioned the M.M.'s uniform and asked her if that is where she went to school. That night, during an instant message, M.M. told **ALPER** she was 14 years old and 16 as she originally stated. About a month later, over instant messaging via the Internet, **ALPER** asked M.M. to meet again and to wear a skirt. **ALPER** met with the victim a third time, but left suddenly without incident.

**The Defendant's Use of the Internet to Arrange the Rape of a 13-Year Old Girl**

In February 2010, a month after **ALPER**'s probation ended from the 2003 conviction, **ALPER** attended an anime and gaming conference at the Gaylord Hotel in Oxon Hill, Maryland. **ALPER** was now 33 years old and living in Silver Spring, Maryland. While at the conference, **ALPER** began speaking with L.M., a 13 year old girl from Alexandria, Virginia, and exchanged contact information. **ALPER** introduced himself to L.M. as "Michael Allen," and continued to communicate with L.M. through a Facebook account with the same name. Facebook is an on-line social networking web site accessed through the internet, which affects interstate and foreign commerce. During Facebook chats, L.M. told **ALPER** that she was 13 years old. In response, **ALPER** told L.M. that he was 16 years old. service and L.M. continued messaging each other via the Internet from February 2010 through April 2010.

On March 26, 2010, via chat, service encouraged L.M. to tell her mother a story about seeing a friend so she could leave her home in Virginia and come to **ALPER**'s home in Maryland. **ALPER** also asked L.M. via Facebook, if she minded that **ALPER** bites. **ALPER** made arrangements via internet and cell phone for L.M. to travel from her home in Virginia to the Fort Totten Metro station in Washington, D.C., where **ALPER** picked her up and drove to his home in Maryland. Upon arriving there, **ALPER** told L.M. that his father was asleep in another room and to be quiet. In fact, there was no one else in the house. **ALPER** then fondled L.M. and digitally penetrated L.M.'s vagina. **ALPER** attempted to move his head between L.M.'s legs but she pressed her legs together and pushed **ALPER** away. **ALPER** told L.M. not to be scared. L.M. then received a telephone call from her mother and **ALPER** drove her back to her home in Virginia.

**ALPER** and L.M. continued to communicate via Facebook on the Internet. On March 31, 2010, L.M. was staying overnight at her friend's house in Maryland. While at her friend's house **ALPER** communicated with L.M. via Facebook and agreed L.M. should sneak out of her friend's house to meet **ALPER** outside at a store near her friend's home. In the late evening hours of March 31, 2010 into the early morning hours of April 1, 2010, **ALPER** drove to pick up L.M. from a pharmacy parking lot in Maryland. **ALPER** then took L.M. to Greenbelt Park, a United States National Park in Greenbelt, Maryland. **ALPER** drove to a wooded area and parked his car. **ALPER** led L.M. into the wooded area, where **ALPER** laid down his coat. **ALPER** told L.M. to lie on the

2

---

Case 8:11-cr-00344-RWT   Document 6-1   Filed 07/06/11   Page 3 of 3

ground and took her clothes off. **ALPER** performed oral sex on L.M. and had vaginal intercourse with her. **ALPER** then drove L.M. back to her friend's home. L.M. later discovered **ALPER**'s true identity when an acquaintance found **ALPER**'s Sex Offender Registration under his true name.

After **ALPER**'s identity as a sex offender was discovered, **ALPER** created another on-line profile in the fictitious name of "Veronica Lacy" and contacted L.M. As Veronica Lacy, **ALPER** expressed concern that the police may be contacted, lied about the charges that led to the sex offender conviction, and said that **ALPER** could not afford to get into trouble because of his father's cancer. **ALPER** also contacted L.M.'s mother, again claimed that he did not know how old L.M. was, and again lied about the underlying sex offender conviction.

In this way, **ALPER** used a facility of interstate commerce, namely a cell phone and Facebook, through the internet on the computer, to knowingly persuade, induce, entice and coerce L.M., who had not attained the age of 18 years, to engage in sexual activity for which he could have been charged with second degree rape under Maryland law, as the Defendant knowingly engaged in vaginal intercourse with L.M., who had not attained the age of 14 years, while the Defendant was at least four years older than L.M.

I have read this Statement of Facts and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. I do not wish to change any part of it.

6-15-2011
_____        _____
Date                              Michael Allen Alper

I am Michael Allen Alper's attorney. I have carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to sign it is a voluntary one.

June 15, 2011
_____        _____
Date                              Julie Johnson, Esq.

3

Exhibit 25c

---

**DISTRICT OF COLUMBIA COURT OF APPEALS**
430 E Street, N.W.
Washington, D.C. 20001

JULIO CASTILLO
CLERK OF THE COURT

TELEPHONE 879-2725
AREA CODE 202

March 24, 2016

Howard Margulies, Esq.
P.O. Box 2577
Columbia, MD 21045

Re: *In re: B.W.; F.W.* – No. 15-FS-1020

Dear Mr. Margulies:

On March 22, 2016, this court received a submission from your client, appellant F.W., styled "Requesting Leave to File Supplemental Appellant's Brief" (*enclosed*). I am referring F.W.'s submission to you so that you may discuss with him the issues raised therein.

You may advise your client that since he has counsel, the court will not accept for filing pleadings that he proffers to the court. You may also wish to inform your client that an order issued by this court on March 8, 2016, granted the motion of the District of Columbia to dismiss as moot the appeals associated with appellant's matter (*enclosed*). Accordingly, the order dismissed the appeals as moot and remanded the matters to the trial court to vacate the order terminating the parental rights of the appellants.

Typically, the court would provide a copy of this communication to the appellant; however, in the interest of the appellant's privacy and in light of the matter being sealed before the court, F.W. has not been identified by name or federal registration number, and his address has not been noted below. Please share the enclosed information with your client, F.W., and advise this court, in writing, within 20 days as to how you have addressed his concerns.

Sincerely,

Julio A. Castillo
Clerk of the Court

Enclosures

cc:   Rosanna Mason, Esq.
      Staff Counsel – DCCA

U.S. Department of Justice

*United States Attorney*
*District of Maryland*
*Southern Division*

| | | |
|---|---|---|
| Rod J. Rosenstein | *United States Courthouse* | DIRECT: 301-344-4355 |
| United States Attorney | 6500 Cherrywood Lane | MAIN: 301-344-4433 |
| | Greenbelt, MD 20770-1249 | FAX: 301-344-4516 |
| LeeAnne Freitas | | TTY/TDD: 301-344-2426 |
| Special Attorney United States Attorney | | |

March 21, 2011

Gary Proctor, Esq.
8 E. Mulberry St.
Baltimore, MD 21202

Re:    United States of America v. Francisour Bryan Kemache-Webster,
        Criminal No. RWT 10-654

Dear Mr. Proctor:

This letter confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by 5:00 p.m. on March 24, 2011, it will be deemed withdrawn. **The plea agreement is entered into and will be submitted to the Court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).** The terms of the agreement are as follows:

*Offense of Conviction*

1.     The Defendant agrees to plead guilty to the one-count Indictment pending against him, which charges him with coercion and enticement of a minor to engage in criminal sexual activity, pursuant to 18 U.S.C. § 2422(b). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

*Elements of the Offense*

2.     The elements of the offense which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: (1) that the Defendant used the U.S. Mails and other facilities of interstate and foreign commerce; (2) to knowingly persuade, induce, entice and coerce: (3) an individual who had not attained the age of 18 years; (4) to engage in sexual activity for which any person can be charged with a criminal offense, in this case, incest under Maryland Code, Criminal Law § 3-323.

---

d.     The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e.     If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g.     If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration' status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

*Advisory Sentencing Guidelines Apply*

5.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

3

*Exhibit - 24 a*

---

*Penalties*

3.     The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: Imprisonment for life (with a mandatory minimum term of incarceration of 10 years), supervised release for life (with a mandatory minimum term of five years), and a $250,000 fine. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 2259, 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

*Waiver of Rights*

4.     The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a.     If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.     If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

---

[1]     Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

2

---

*Factual and Advisory Guidelines Stipulation*

6.     This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth at Attachment A, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

a.     Pursuant to U.S.S.G. § 2G1.3(a)(3) of the United States Sentencing Guidelines, the base offense level is 28.

b.     Pursuant to U.S.S.G. § 2G1.3(b)(1), the offense level is increased by 2 levels, because the defendant is the biological father of the minor.

c.     Pursuant to U.S.S.G. § 2G1.3(b)(2)(B), the offense level is increased by 2 levels, because the defendant otherwise unduly influenced the minor to engage in prohibited sexual conduct.

d.     Pursuant to U.S.S.G. § 2G1.3(b)(3), the offense level is increased by 2 levels, because the offense involved the use of a computer to persuade, induce, entice and coerce the minor to engage in prohibited sexual conduct.

e.     Pursuant to U.S.S.G. § 3C1.1, the offense level is increased by 2 levels, because the Defendant willfully obstructed or impeded the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction and the obstructive conduct related to the Defendant's offense of conviction or a closely related offense.

f.     This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. The adjusted offense level is 33.

7.     The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history category could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

4

8.    This Office and the Defendant agree that, with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, or adjustments in the Sentencing Guidelines will be raised or are in dispute. If the Defendant intends to argue for any factor that could take the sentence outside of the advisory guidelines range, he will notify the Court, the United States Probation Officer and government counsel at least 14 days in advance of sentencing of the facts or issues he intends to raise. If the defendant intends to rely upon any expert report or opinion at sentencing, he must disclose any such opinion or report to the government 30 days in advance of the sentencing date.

### Rule 11 (c) (1) (C) Plea

9.    Based on all of the factors set forth in 18 U.S.C. § 3553(a), including but not limited to the nature and circumstances of the offense and the need to protect the public from further crimes of the defendant, the parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of 300 months incarceration is the appropriate disposition of this case. This agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, either party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

### Obligations of the United States Attorney's Office

10.    The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character, and conduct, including any charged and uncharged conduct related to the investigation as well as any images seized during the investigation of any charged and uncharged conduct.

### Restitution

11.    The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663, 3663A, and 2259, the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

5

### Registration as a Sex Offender

12.    The Defendant understands and agrees that as a consequence of his conviction for the crime to which he is pleading guilty, he will be required to register as a sex offender, and to keep that registration current, in the place where he resides, where he is employed, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may violate the terms of his supervised release and subject him to new criminal charges pursuant to 18 U.S.C. § 2250.

### Waiver of Appeal

13.    In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a.    The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b.    If the Court imposes the agreed-upon sentence, the Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c.    Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d.    The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

14.    The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this

6

agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Entire Agreement

15.    This agreement supersedes any prior understandings, promises, or conditions between this Office and the Defendant and constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this agreement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this letter, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By:_____
LisaMarie Freitas
Special Assistant United States Attorney

Stacy Dawson Belf
Assistant United States Attorney

I have read this agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

_____          _____
Date                 Franesiour Bryan Kemache-Webster

7

I am Franesiour Bryan Kemache-Webster's attorney. I have carefully reviewed every part of this agreement with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

_____          _____
Date                 Gary Proctor, Esquire

*Exhibit - 26 b*

8

**PDS Print All Documents**

---

Sheet 3 - Judgment in a Criminal Case with Supervised Release (Rev. 3/2005)     Judgment Page 3 of 4

Case 8:10-cr-00654-RWT   Document 127   Filed 08/05/11   Page 3 of 6

DEFENDANT: FRANESIOUR B. KEMACHE-WEBSTER

CASE NUMBER: RWT 8:10-cr-0654-001

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of   LIFE

**The defendant shall comply with all of the following conditions:**

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

### A. STATUTORY CONDITIONS OF SUPERVISED RELEASE

1) The defendant shall not commit any federal, state or local crime.
2) In any felony case, the defendant shall not possess a firearm or ammunition as defined in 18 U.S.C. §921.
3) The defendant shall not illegally use or possess a controlled substance.
4) The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.
   ☐ The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)
5) Pursuant to Pub. Law 108-405, Revised DNA Collection Requirements Under the Justice for All Act of 2004, if applicable, the defendant shall cooperate in the collection of DNA while incarcerated in the Bureau of Prisons, or as directed by the probation officer.
6) If this judgment imposes any criminal monetary penalty, including special assessment, fine, or restitution, it shall be a condition of supervised release that the defendant pay any such monetary penalty that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment. The defendant shall notify the court of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution, fines, or special assessments.

### B. STANDARD CONDITIONS OF SUPERVISION

1) The defendant shall not leave the judicial district without the permission of the court or probation officer;
2) The defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) The defendant shall support his or her dependents and meet other family responsibilities;
5) The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) The defendant shall notify the probation officer ten days prior to any change in residence or employment;
7) The defendant shall refrain from excessive use of alcohol;
8) The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any persons convicted of a felony unless granted permission to do so by the probation officer;
10) The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer.
11) The defendant shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer;
12) The defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court;
13) The defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court;
14) As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

---



**Federal Bureau of Prisons**
**Psychology Data System**

Date-Title: 05-04-2010 - Eval/Rpt - ISDS Entry

Reg Number-Name: 42459-007 - KEMACHE-WEBSTER, FRANESIOUR B.

Author: JENNIFER A. WEBER, Ph.D., SEX OFFENDER PROG PSYCH

Institution: MAR - MARION USP

Psychology Data System and SENTRY records for Inmate WEBSTER were reviewed. The Mental Health section of the Inmate Skills Development System was completed or checked for accuracy and recommendations for his upcoming Program Review (Unit Team) were made.

**SENSITIVE BUT UNCLASSIFIED**

https://bopware.bop.gov/pds/Document/Print.do?documentKeys=3276992     10/16/2013

**SENSITIVE BUT UNCLASSIFIED**

---

Sheet 5, Part A - Judgment in a Criminal Case with Supervised Release (Rev. 8/2010)     Judgment Page 5 of 6

Case 8:10-cr-00654-RWT   Document 127   Filed 08/05/11   Page 5 of 6

DEFENDANT: FRANESIOUR B. KEMACHE-WEBSTER

CASE NUMBER: RWT 8:10-cr-0654-001

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| TOTALS | $ 100.00 | $ | $ |

☐ CVB Processing Fee $25.00

☐ The determination of restitution is deferred until _____. An Amended Judgment in a Criminal Case (AO 245C) will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | 0 | 0 | |

| | | | |
|---|---|---|---|
| TOTALS | $ 0 | $ 0 | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ the interest requirement is waived for the   ☐ fine   ☐ restitution

    ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

---

Sheet 6 - Judgment in a Criminal Case with Supervised Release (Rev. 8/2010)     Judgment Page 6 of 6

Case 8:10-cr-00654-RWT   Document 127   Filed 08/05/11   Page 6 of 6

DEFENDANT: FRANESIOUR B. KEMACHE-WEBSTER

CASE NUMBER: RWT 8:10-cr-0654-001

## SCHEDULE OF PAYMENTS

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

Payment of the total fine and other criminal monetary penalties shall be due as follows:

A ☒ In full immediately; or

B ☐ $ _____ immediately, balance due (in accordance with C, D, or E); or

C ☐ Not later than _____; or

D ☐ Installments to commence _____ day(s) after the date of this judgment; or

E ☐ In _____ (e.g. equal weekly, monthly, quarterly) installments of $ _____ over a period of _____ year(s) to commence _____ when the defendant is placed on supervised release.

The defendant will receive credit for all payments previously made toward any criminal monetary penalties imposed.

Unless the court expressly orders otherwise, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalties except those payments made through the Bureau of Prisons Inmate Financial Responsibility Program, are to be made to the Clerk of the Court.

If the entire amount of criminal monetary penalties is not paid prior to the commencement of supervision, the balance shall be paid:

    ☐ in equal monthly installments during the term of supervision; or

    ☐ on a nominal payment schedule of $ _____ per month during the term of supervision.

The U.S. probation officer may recommend a modification of the payment schedule depending on the defendant's financial circumstances.

Special instructions regarding the payment of criminal monetary penalties:

☒ Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court costs:

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Exhibit 27a

PDS Print All Documents



### Federal Bureau of Prisons
### Psychology Data System

**Date-Title:** 08-05-2010 - Eval/Rpt - ISDS
**Reg Number-Names:** 42459-007 - KEMACHE-WEBSTER, FRANESIOUR B.
**Author:** ROBIN D. EDMISTER, MSW, SOC WRKR
**Institution:** MAR - MARION USP

Psychology Data System and SENTRY records for Inmate WEBSTER were reviewed. The Mental Health section of the Inmate Skills Development System was completed or checked for accuracy and recommendations for his upcoming Program Review (Unit Team) were made.
**SENSITIVE BUT UNCLASSIFIED**

https://bopware.bop.gov/pds/Document/Print.do?documentKeys=3491416

10/16/2013

---

BP-S327.058   RETURNED CORRESPONDENCE
U.S. DEPARTMENT OF JUSTICE                                   FEDERAL BUREAU OF PRISONS

| TO: (Sender-See Return Address) | FROM: (Institution) |
|---|---|
| FBOP, Box Release-b, WEBSTER SILVER SPRING, MD 20902 | Federal Correctional Complex 4700 Bureau Road South Terre Haute, IN 47802 |

| RE: (Inmate's Name and Register No.) | DATE: |
|---|---|
| KEMACHE-WEBSTER, FRANESIAR | SEPTEMBER 12, 2012 |

SUBJECT:  Correspondence Returned to Sender

**Program Statement 5265.11.  The Warden may reject a correspondence sent by or to an inmate if it is determined detrimental to the security, good order, or discipline of the institution, to the protection of the public, or if it might facilitate criminal activity.  The correspondence has been rejected as it has been determined that it is detrimental to the security, good order, or discipline of the institution.**

The rejection of this correspondence is in accordance with the Federal Bureau of Prisons policy on "Correspondence" as published in Title 28 Code of Federal Regulations, Part 540 and in the Federal Bureau of Prisons Program Statement on correspondence.  You have the right to appeal this rejection by writing the Warden in care of the above address.  The inmate to whom you addressed your correspondence has been notified that this correspondence has been returned to you and of his or her right to appeal the rejection.

C. Williams, Associate Warden

(Printed or Typed Name and Written Signature of staff rejecting correspondence)

---

PDS Print All Documents                                   Page 1 of 2



### Federal Bureau of Prisons
### Psychology Data System

**Date-Title:** 05-03-2010 - Intake Screening
**Reg Number-Names:** 42459-007 - KEMACHE-WEBSTER, FRANESIOUR B.
**Author:** JENNIFER A. WEBER, Ph.D., SEX OFFENDER PROG PSYCH
**Institution:** MAR - MARION USP

**TREATMENT/MENTAL HEALTH HISTORY:**

Inmate **KEMACHE-WEBSTER** reported the following:

**Violence:** 1988 Battery (Inmate described as domestic)

**ABUSE HISTORY:**

Inmate KEMACHE-WEBSTER reported no abuse history.

**MENTAL STATUS:**

During the screening interview no mental status items were noteworthy.

His psychological stability for custody is judged to be **FAVORABLE** .

**DRUG ABUSE HISTORY:**

Inmate KEMACHE-WEBSTER does not report a history of substance abuse.

**PROGRAM TREATMENT RECOMMENDATIONS:**

No programs/treatment are recommended at this time.

Inmate KEMACHE-WEBSTER reported NO interest in participating programs/treatment.

**COMMENTS:**

The following information was gathered from a review of Sentry records and a clinical interview with the inmate.  The purpose of the interview and the limits of confidentiality were reviewed with WEBSTER and he expressed a clear understanding of these issues.

BACKGROUND:  Inmate WEBSTER is a 49-year-old, BLACK offender who is currently serving a 6-month sentence for Bad Check More than $400. PRD=09-16-2010.  Prior convictions include Larceny, Forgery, Failure of Bailee to Return, Battery, Theft, Resisting LEO, Fraud, and Bad Checks.  Please see the PSIR for further review.

To summarize the pertinent details of WEBSTER's personal history, the inmate is from Washington, DC.  He completed various graduate degrees (one reportedly in sociology), has never served in the military, and was last employed in investigations.  He is separated and has 14 children, ranging from 5 to 30 years old.  He stated he worries about his younger children, who were reportedly placed in

---

foster homes secondary to his incarceration.

Medical history is unremarkable with the exception of diabetes.  Although his Sentry information indicates a drug history, there is no reported substance abuse history.  He indicated no prior substance abuse treatment and no present interest in participating in treatment.  According to Sentry, inmate WEBSTER has no documented history of sexually inappropriate behaviors.  Inmate WEBSTER reported no mental health history, treatment, or psycho-pharmacological medication use.

The BOP Sexual Abuse Prevention policy was discussed.  Inmate WEBSTER denied ever being the victim or perpetrator of sexual assault while in federal custody.  The inmate expressed no desire for mental health services at this time.

MENTAL STATUS:  During the interaction today, the inmate presented as calm, alert, and fully oriented.  He was appropriately groomed.  There was no notable difficulties with receptive or expressive language.  His speech was of a normal rate and tone.  The inmate denied any delusional content.  His mood was within normal limits with congruent affect.  The inmate denied current and past suicidal/homicidal ideation, plan, and intent.  No mental health concerns or adjustment problems were reported and no acute distress was observed.  His mental status is deemed to be stable.  He does not meet MDS designation criteria.

He indicated an understanding of the procedure for contacting psychology services.  No follow-up services are required.

**SENSITIVE BUT UNCLASSIFIED**

Exhibit-27b

---

PDS Print All Documents                                   Page 2 of 2

https://bopware.bop.gov/pds/Document/Print.do?documentKeys=3276987     10/16/2013

https://bopware.bop.gov/pds/Document/Print.do?documentKeys=3276987     10/16/2013

PDS Print All Documents

**SENSITIVE BUT UNCLASSIFIED**

## Federal Bureau of Prisons
### Psychology Data System

**Date-Title:** 09-13-2010 - Brief Counseling Session
**Reg Number-Names:** 42459-007 - KEMACHE-WEBSTER, FRANESIOUR B.
**Author:** JENNIFER A. WEBER, Ph.D., SEX OFFENDER PROG PSYCH
**Institution:** MAR - MARION USP

S/O: Inmate Webster was seen today per his request to discuss a family matter. Inmate Webster discussed a family history of conflict involving the mothers of his children. His 16-year-old daughter, and his daughter's stepfather. Inmate Webster indicated his daughter had been sexually abused by her stepfather at an early age, but that his daughter's mother has not been accountable to recommendations and orders from the court regarding care of his daughter, reportedly resulting in his daughter's decision not to live with her mother at this time. Inmate Webster discussed his concerns for the well-being of his children and his intentions to reunite with all three children upon his release. At the end of today's session, he asked this writer for recommendations on how to manage his daughter's behaviors. He also asked for a written recommendation regarding custody/care of his children. Inmate Webster was encouraged to seek assistance from local child and family services upon release and was advised that custody evaluations require the evaluation of all parties (children and adults) and thus such recommendation of any form would not be offered by this writer.

A: Inmate Webster was alert, stable, and oriented across domains. He appeared cooperative and engaged in discussion. His mood and affect were congruent and within normal limits.

P: Inmate Webster is aware of how to contact Psychology Staff for assistance. He is scheduled to be released from custody this week. No follow-up services appear warranted at this time.

**SENSITIVE BUT UNCLASSIFIED**

---

BP-S327.058 RETURNED CORRESPONDENCE
U.S. DEPARTMENT OF JUSTICE     FEDERAL BUREAU OF PRISONS

**SENSITIVE BUT UNCLASSIFIED**

| TO: (Sender-See Return Address) | FROM: (Institution) |
|---|---|
| Inmate Webster's D.O. Webster<br>1900 Edridge Rd., d. Webster<br>SILVER SPRING, MD 20902 | Federal Correctional Complex<br>4700 Bureau Road South<br>Terre Haute, IN 47802 |

| RE: (Inmate's Name and Register No.) | DATE: |
|---|---|
| KEMACHE-WEBSTER, FRANESIAR | SEPTEMBER 12, 2012 |

**SUBJECT:** Correspondence Returned to Sender

Program Statement 5265.11. The Warden may reject a correspondence sent by or to an inmate if it is determined detrimental to the security, good order, or discipline of the institution, to the protection of the public, or if it might facilitate criminal activity. The correspondence has been rejected as it has been determined that it is detrimental to the security, good order, or discipline of the institution.

The rejection of this correspondence is in accordance with the Federal Bureau of Prisons policy on "Correspondence" as published in Title 28 Code of Federal Regulations, Part 540 and in the Federal Bureau of Prisons Program Statement on correspondence. You have the right to appeal this rejection by writing the Warden in care of the above address. The inmate to whom you addressed your correspondence has been notified that this correspondence has been returned to you and of his or her right to appeal the rejection.

C. Williams, Associate Warden

(Printed or Typed Name and Written Signature of staff rejecting correspondence)



The Women's Wing Organization, Inc.

"Abetting the least, the lost, and the forgotten, while elevating the lives of all person's in an atmosphere of dignity and respect."

R.E.E.D. Program

Presents this certificate to

Bryan Webster

For the successful completion of module(s) on Domestic Violence, Life Skills, and Anger Management

Issued by the
United States Federal Marshal's Service program,
Greenbelt, Maryland District
September 28, 2011

Sayneedy Lloyd
Founder, Program Director

"The downfall of a man is not the end of his life" --
"We Do Recover"

---

THE GEORGETOWN UNIVERSITY LAW CENTER

Presents this certificate to

**Franciour Kemache-Webster**

for successful completion of the

**D.C. Street Law Program**

July, 2011

Sarah Medway, Chelpis Fellow

Michael O. Murphy, Law Student Instructor

Richard L. Roe, Program Director

M. Elydia Baker, Law Student Instructor

Exh. H-2FC

CHILD2MAIN          2010   09   20          164800-2 sp2

02:40-->
    FKW states adamantly; that she [KNOWS] her mother [GISELLE] had walked in one day while her stepfather [TOBE] was doing it to me. FKW states that her stepfather [TOBE] made a video of her, and that her mom knows about it.

03:20-->
    FKW states that a social worker came to the house from P.G.County Maryland, but noting was done. Giselle made a statement, that if any thing was going on it was not with her husband that it is probably things going on with her daughter and her father.

03:38 to 10:00-->
    FKW speaks more about the actions of her mother and how she has a strong dislike for her, and that she feels her mom threw her and her father under the bus to save her self and her husband. FKW speaks about her father and how they resemble each other in several ways, states that her mother loves to stretch the truth by saying one thing and then making it longer or more than it is. She states that she has spoken with her school counselor about Devonte because her mom has told all of her business about her and her on-going situation and circumstance with her father.

10:01 to 10:14-->
    FKW explains her closeness with Devonte as well es where he lives, what school he attends and how she has been staying there with him and his family and friends.

10:14-->
    The detective tells her that there is a U.S. Postal Investigator there to speak with her about her and her father, the agents name is: Crawford, everyone is talking over each other so its hard to make out, they're discussed that her narratives are fabricated and out of kilter.

11:40-->
    FKW states that she is about to be emancipated by her mother, that she wants to leave from 1602, that she does not like it there

13:11-->
    She tells them that she had recently sent an e-mail to her father's regular e-mail account, to find out where he was at, he was suppose to already be home, but he did not answer me. I cursed him out for not answering me. They questioned her about what e-mail, she explained it is his personal e-mail, then she gives them her e-mail to check her account by giving up her password - unknowingly. They again [COERCE] and [MANIPULATE] her.

15:20-->
    They ask her about the baby names and what does the 10/10/08 date mean of represent. She explains that the baby names were her idea, and the date is when her father first came and got her from her moms. They ask her about the names for the different body parts. She again explains about the names and how they came about.

20:15-->
    They ask her when was the last time she spoke to her father. FKW mentions that she spoke to her father yesterday, he gave her the address to where he was at and explained that he was charged but was not exactly sure what it is all about.

21:22-->
    FKW states to them that she was looking for additional apts. she stated that she told her father that she wanted to come back and live with him. She also tells them that she was just saying that to lead her father on. That did not make any sense to them if he had done the things she was saying he done, with her now being away from him, there is no need to keep no contact or no type of communication or commitments with her father. Something is amiss.

24:10-->
    FKW contradicts her self from what she stated in the 2nd part of the interview. [See page 5 time stamp 07:38].

24:40-->
    FKW now states that the bruises on her legs all came from her father, yet the bruisings and markings are 3 to 4 years old or much older. She again contradicts herself differently then that from what she stated about her mom beating on her and beating her up constantly. [See page 2 time stamp 12:24 <> page 3 time stamp 22:00]

25:00 to 29:59-->
    FKW now speaks about being the woman of the house, does not state or mention that her father is married and that his wife lives in the home with them as well as his two sons with his wife. She states that the feelings that she had expressed about her father in these e-mails, letters and phone calls were all made up, she states that they were not at all true.

FOURTH PART     CHILD2MAIN          2010   09   20          164800-3 sp2

00:00 to 01:00-->
    They ask her some more questions about Devonte and where he lives. FKW tells them more about Devonte, where he lives etc. This is so they can keep a better track of her movements and where-abouts. She explains to them that during the week she is staying at his home.

01:10-->
    She begins by telling them about not wanting to remain at 1602 because her Uncle lives there, and he stares at her the same way that her daddy stares at her. She states that he has never touched her, she again; speaks about her mom throwing her under the bus. They continue to talk about her and Devonte, they want to know his exact address and phone number, she tells them that he does not have a cell-phone, because it was taken from him. They ask her how is she contacted other than cell-phone, she gives them her Facebook name and account, she already gave them her passwords. So they have full track of her, she is just not aware of it at the moment, she figures it out later on into the case.

End of interview.

Page 9 of 10          In-camera Interview                    Page 10 of 10          In-camera Interview

August 3, 2011

CCA
America's Leader in Partnership Corrections
CCA.com

RE: Webster Bryamnn I.D # 42459-007

To Whom It May Concern,

My name is Phillip McNeal and I am the Head Addiction Counselor and Case Manager for the Educational Drug Program at the Correctional Treatment Facility in Washington, DC. I am writing this letter as an official reference to the progress of Webster Bryamnn who has been a resident participant of the program.

Mr. Webster B. entered the program on May 4, 2011 and became an active participant in a structured therapeutic group. His daily schedule included, but was not limited to, groups on the following curriculum: Narcotics Anonymous, Anger Management, Relapse Prevention, Drug Education, Men's Health, and Changing Addictive and Criminal Behavior.

Bryamnn shows the necessary willingness and desire to make changes in his life, and has exhibited these traits by his actions. His progress will continue to be monitored during his stay in the Educational Drug Program, and will be made available should the court request such information.

Respectfully yours,

*Phillip McNeal*
Phillip McNeal
CAC I, Case Manager CCA/CTF
Addictions Education Program

To whom it may concern:

    It is my pleasure to write this letter on the behalf of Webster, Bryan #42459-007 giving his status while he has been housed here at the Correctional Treatment Facility in Washington DC. As his Case Manager I would like to inform this reader Mr. Webster's behavior, and respect to staff at this facility has been outstanding. Mr. Webster is one of the few inmates on the unit that I supervisor that has never received a disciplinary in regards to behavior. Also, Mr. Webster is an aide in our facility Law Library, and GED chancellor for our US Marshal Unit. Please don't hesitate to contact me Case Manager Hayward at the phone number listed below.

Thank You.

Case Manager D.Hayward

202-547-7822 Ext: 72235



*Exhibit 28a*

THE IN-CAMERA INTERVIEW OF:  F. "NIKKI" KEMACHE-WEBSTER

Lab # 9.215 - D06608(1')
Case # 10A3393 - FMCE
Bar Code # IS0000405047
IS0000405572  CHILD2MAIN  2010  0920  164800-mp2
FLS Imaging 12433 Randolph Dr.  Dalles,Va. 20104 (703) 405-7144 10/13/10
[Disk is Formatted]

Interview is conducted by Detective "Levi" & Mont. Co. Soc. Serv. "Courtney"

Time Stamped #1
164800-0
* There was No Guardian Ad Litem, Parent, Attorney nor Adult Supervision
  involved in the interview of the minor.

First Part: Time Start:
00:00->
    Mont. Co. Soc. Serv. [Courtney] & Detective [Levi] tell FKW she is
    not in any trouble, and that the question that are being asked are in
    fact the same ones that have been previously asked.
00:18->
    FKW is asked to give her full name and what school she attends.
    FKW gives her current resident address as 1602 Belvedere Blvd. Sil.Spg,Md.
01:20->
    FKW states that she lives with her mom and Grand-parents,also state
    that also residing there is her Aunts and an Uncle as well as the
    the pets that reside in: 1602 Belvedere Blvd. Sil. Spg. Md 20902³
05:10->
    FKW states, she does not [LOVE] her step-father, he's a pain in the
    butt. Dad is in jail he was suppose to get out on the 16th, but the
    next day he went back to jail on the 17th. She states he was in the
    Penitentiary, but now he is in the jail. States she last saw her
    daddy in March this year.  March 18, 2010
08:10->
    FKW states, that there were conversatitions between her and her daddy
    about is having a child with her. she tells them that her and her daddy
    never had sex.
08:40->
    FKW states that she has other siblings and that there are 14 of them.
    That most of them are grown, and speaks about places that are all
    considered to be inappropriate. She says that he had a feeling that
    the conversation that she had with her father was not the only one
    that he has had that conversation with about that conversation on
    the child issue, again states she and him have never had sex and she
    does not know why that conversation was ever mentioned.
10:15->
    FKW states that she had sex with her boyfriends, she states that
    she has had 8 boyfriends, that she does not have a boyfriend now, she
    states that she had sex yesterday with a boy named Devonte, he's the
    boy that will taking me to homecoming. He's not my boyfriend, he is
    just someone I trust, I've know him a long time

³F. " NIKKI" KEMACHE-WEBSTER = FKW
 1602 Belvedere Blvd. Sil. Spg, Md. 20002 = 1602
Page 1 of 10                    In-camera Interview

---

CHILD2MAIN    2010  09 ·20    164800-0 mp2

11:00->
    FKW states the boys name is Devonte Ryan McNimi, he's going
    to take me to homecoming.
    The Detective and the Social Worker ask her if she's using any type of
    protection. She states she was on the pill, but had to get off of them,
    that they messed up her stomach.
11:08->
    FKW says that she is currently using condoms, because of the pills.
11:55->
    FKW states, my daddy drew pictures of what my daughter and son is
    supposed to look like. He sent me baby names. On October 10th of
    this year we're supposed to get married, I was not serious with him.
12:15->
    She states, my dad is a fool, I am not going to get married to him.
12:24->
    She states that her mom use to beat on her all the time. That her
    and her mom use to fight all of the time and have arguments.
12:56->
    States that her mom use to call the police on her all the time.
    Said that her daddy missed her birthday, she stated that she had spoke
    to social services back in March of this year.
14:05->
    She stated that they had spoke about her step-father with social
    services, they did nothing.
    She said that her daddy looks at her wierd sometimes, they ask her
    about the date of 10/10/10 - 10am, she attempts to explain the date.
    She states that there is court on September 23, 2010.
    She is asked if she is currently pregnant, she tells them No!
12:24->
    They asked her about the e-mails through Errrlinks, she tells them
    she is not going to speak to them; on the e-mails that she wrote. She
    tells them that she is not going to help them.
12:36->
    FKW states that she sent her daddy drawings photos, & pictures &
    that she wrote her dad, that she never sent no naked photos, that it
    was not like that.
12:56->
    FKW stops to take a phone call, it is her mother asking where is she,
    she explains where she is and how to get there.
14:05->
    They ask her to tell them about the relationship between her and her
    father, she tells them there was no relationship, she begins to tell
    them about what she had previously disclosed to the authority's about
    her [STEPFATHER] had touched her inappropriately. She continues to tell
    them what she had went through
14:15->
    She tells them that her stepfather does not touch her any-more, she
    says she can remember three times, but there were other times.

Page 2 of 10                    In-camera Interview

---

CHILD2MAIN    2010  09 ·20    164800-0 mp2

22:53->
    Detective Levi, tells her that it is his job to make sure that
    that her father did not force her to have sex, he tells her that
    he could care less if she was okay with it. She again tells them
    that was not the case or the issue. They explain again to her that
    is the reason why her father is currently locked up.
24:00->
    FKW tells them, she did not have her father locked up, she did
    not file or agree to no protections order against her father. She
    tells them she did not request no protective order.
25:10->
    They began questioning her about the letters, and about the talk
    of sex and about having children. They ask her why the conversations.
    She states that she has no answer, nor reason, they continue to ask
    and she tells them she does not have an answer.
25:50->
    FKW tells them, she does not know why she wrote the things that
    she wrote, she does not have a reason for why she did what she did.
26:10->
    FKW is now angry and engaged in her responses, telling them, she
    is done talking, that she is not going to say or tell them anymore.
    FKW is now at a boil of telling them, I am not going to tell you
    whether I wrote anything or not. She tell them; I am not going to tell
    all help you in hurting my father.
26:17->
    FKW again emphatically tells them "I AM NOT GOING TO HELP YOU"
    she also tells them "I AM DONE HERE"
26:36->
    They begin to threaten her with arresting her mother, by telling
    her if her mother was not telling the truth for writing the things
    that she wrote in her statements and they are not true, that she is
    going to be in trouble.
26:46->
    FKW takes up for her mom, by saying: This is over with!
    I couldn't care less if I get locked up!, She expresses that she's
    not afraid or the police nor is she afraid to put her hands on the
    police or a police officer.
27:50->
    FKW consistantly tells them the interview is over! They continue
    to constanly [COERCE] her from 28:25 to 28:54, she gets to the point
    of being ready to leave yet can not, she gestures, in a different way.
28:54->
    FKW looks at them and says" I wrote it those; (things in the e-mail
    account, I wrote it)

Page 3 of 10                    In-camera Interview

---

CHILD2MAIN    2010  09  20    164800-0 mp2

14:25->
    FKW states to them, that her daddy never touched her inappropriately,
    the only thing my daddy does is look at me wierd - he stares at me.
    FKW refers to her daddy as her biological father as oppose to who
    she refers to as the step-father to keep the two seperate.
16:20->
    Detective "Levi" confronts her about the e-mails and about being
    pregnant, they tell her again she is not pregnant and that she takes
    pregnancy test. They tell her that they know about having a baby with
    her father. She tells them that, she has never done anything with her
    father. They told her that they know that they were planning to have a
    child together, she tells them no, it is not like that. They tell her
    that is the reason why he is being held.
17:40->
    FKW states, the reason that my daddy is locked up is for a stay away
    order filed. They tell her-that is not the case & that, they know about
    the names of different body parts; she tells them again, she did not do
    anything with her daddy.
18:45->
    FKW tells them , the reason that her father is not out is because of
    a stay away order, that is what her mom told her. Levi tells her No!,
    he has been arrested because it is illegal to entice a minor to engage
    in sexual activities.
19:35->
    FKW tells them again that she did nothing with her father, that it
    was her stepfather.
21:00->
    They tell her that she is lieing and that she is not in any trouble.
21:20->
    They tell her the bottom line is that they need to know if it is
    something that she went along with or if her father forced her to do
    this stuff.
21:45->
    FKW tells them, she neer had sex with her father and that he never
    forced her into anything, they ask her also telling her she is lieing
    to them she emphatically expresses that there was no sexual relation-
    ship with her father. She expresses in her answer NO!
22:00->
    FKW, tells she is telling them the truth, they continue to tell
    that she is lieing, making her tell them what they want to hear, not
    what she has to say. She explains to them that she had just met her
    father within the past two years and that she did not know him before
    that time.
22:40->
    Again, they pressure her and tell her she is lieing and that they
    need to know the truth, they want to know if her father kept her as a
    captive. She again expresses with anger that they are wrong and tells
    that is her father and she was never no captive, she is becoming very
    up-set and agitated by the accusations

Page 4 of 10                    In-camera Interview

Exhibit-28 b

CHILD2MAIN        2010   09   20        164800-1 mp2

**00:00 to 00:49->**
FKW is still aggitated and appalled by the accusations and the threats that are given in regards to her father getting into some type of trouble. They continue to [COERCE] her, even though she tells them the interview is over.

**00:50 to 01:20->**
FKW is asked about what does it mean about the 16 acts, she tells she does not want to talk no more, they continue to pressure her and she continues to get angry, they continue to ask her about the sex < tell her she's leing, and she wrote who she wrote means something. She tells them she did write them and used her own account to do so, she offers the account information again and password.

**02:31->**
They again still pressure her about whether it happened in D.C. or in Maryland, she tells them it never happend, and stresse that.

**03:20->**
FKW screams out, "How can you sit there and jump on my biological father, but you can't jump on my stepfather?"
He begins to tell her, if you do not talk about this now it will mess you up in the head by not speaking about it, he tells her we do know he took advantage of you. She tells them, NO, we did not do any thing and he did not take advantage of me.

**04:00->**
He begins to pressure her about either it happend in D.C. or in Montgomery Co., he continues to [COERCE] her and pressure her he does not let up. She becomes even engerier and will not calm down.

**04:20->**
He tells her, the reason we're investigating is that we don't know where the sex occured. She tells them there was no sex, I lived with my daddy in D.C. she gives the address. I never lived with him in Md, in Mont. Co.

**05:30->**
FKW tells them it's not right for him to be locked up while my stepfather is still out there, still able to come to my home. That's why I ran away. She again tells them nothing happend with her father.

**06:10->**
He begins to pressure her and [COERCE] her even more.
She still tells them nothing happend, she speaks of her mom and her stepfather. They tell her she is still lieing.

**06:40->**
He tells her, "unless you get this out it will haunt you the rest of your life. They still continue to go back and forth over her not talking any more about it.

**07:30->**
FKW tells them she does not want to talk about any more. He still pressures her and coerces her, she gives up and gives a look of I 'll tell them what they want to hear.

**07:38->**
FKW says "Dad is threatening to kill me. The sex with my dad, it happend in D.C. It wasn't even sex that you would call or consider, because I went along with it. And that why I went on birth control.

---

CHILD2MAIN        2010   09   20        164800-1mp2

**08:00->**
FKW states to them that she went on birth control on her own, but Courtney looks at her with disbelief, they begin talling about what supposedly took place, where this all had taken place, FKW starts to express exaggerations in what she was saying, they both look very displaced and disheveled. They appear as they can not believe she says some of what she is saying.

**08:30->**
FKW states, "I feel like my mom sold me out. She doesn't like me dad so she's trying to get him in trouble, but she protects my stepdad."
FKW continues to express the ill feelings that she has over her step father and how her mom is protecting him to hurt her father.

**09:22->**
The detective ask her how does she feel about saying dad had sex with her, she doesn't like it at all. They continue to ask her how she feels about that issue, she says she is just so sexually active

**10:14->**
FKW tells them that she wants her father out of jail, she explaines her reasons for why she wants him out and explains that she has younger brothers that live with her father that need their dad, they're in care.

**10:30->**
FKW tells them that she does not believe that her dad had sex with none of her brothers and sisters.

**10:34->**
They ask her how come her dad picked only her and why none of the others. They asked her how did he get her to have sex with her?  She answered "oh he would beat me."

**11:47->**
Said she tried to leave, but she could not, so she was beaten up.

**12:38->**
FKW tells them she is not trying to get her father into trouble.

**12:52->**
FKW states that she does not care about her self, said before her dad she had a lot going on, she tells them how important her dad is to her and how messed her life was without him. They appear confused.

**13:36->**
Tells; them that she wants to be an investigator, that her daddy is a private investigator and that she likes that kind of work.

**14:00->**
FKW, states that Davonte is the only person that ever care and protected her; Courtney is a bit shocked, mainly this is the same that she said she just slept with yesterday who is not her boyfriend but is taking, her to the homecoming.

**14:14->**
FKW states that her mom sold her out, she states that her mom does not care about her or her father, that her mom threw them under the bus to protect her husband. Speaks about what she's been through with her.

---

CHILD2MAIN        2010   09   20        164800-1 mp2

**15:16->**
FKW says that her dad has always been violent, she starts pointing marks on her arms and says that her daddy did them, she tells them that the bruises came from her dad. It is obvious that "Levi" nor "Courtney" believe her, it is showing her narratives to be imaginary. They are becoming dispelled by her fabrications.

**15:40 to 17:48->**
FKW states that her daddy was always violent, and that they did fight everyday from the first day that she was picked up, said they fought and she got beat up the first day they met, said she was beaten because she had on a halter top and a pair shorts. Again they had concerns or show concerns in the allegory since the first encounter with her father was on October 10, 2009 it is not probable that she was wearing a halter top and shorts to school in October during school hours nor the fall season.

**17:49 to 18:17->**
FKW starts speaking about the arrest in March when she last saw her daddy. They begin asking her where all did they live and what had happened where and when.

**18:18->**
FKW states that her daddy got them their own home, and that he got locked up for writing a bad check, lets them know that they were still living in D.C.

**18:40 to 23:14->**
FKW speaks about the homes, speaks about the doctor appointments, speaks about school, then she homes explicit and graphic as if she is bragging in her fabrications. The story is not consistant.

**23:15 to 24:49->**
FKW starts speaking about sex and positions, becoming more graphic, they began questioning her more about when and where her and her father were suppose to had been. She speaks about the use of her computer to speak with her father, and explains how her father would use a friends when her father would not be able to use his account because of him running out of units to speak with her on his account.

**25:00 to 25:50->**
FKW states that everything that she said in all of e-mails, letters and phone calls was not true, that she did not mean any of it, but everything that was in her father's e-mails, letters and phone calls that he said he meant every word of it. She stated that she was actually stringing him along until he came home, that when he came home she was going to cut him off and basically push him away. She tells them that she was telling hi things that she thought that he wanted to hear yet I would be like not giving him what he wanted.

**26:15->**
The detective and the social worker ask her about what was suppose to happen when you father comes home from prison? FKW said that her plans were that when he come home, she was going to spend the day with him, like with a friend, but not spend the night with him, not to be with him any more. She said it would be more like friends, it is now obvious that the story is fabricated she uses the words friend or lil sister instead of father and daughter.

---

CHILD2MAIN        2010   09   20        164800-1 mp2

**26:45->**
FKW again starts speaking about sex again, she states that on some occasions there were condoms used and on others they were not, she again states that she placed herself on birth control after the first week or two, then she says that her father found out and took the pils from her. Again the social worker found that to be odd, since prescriptions are done by the doctor and the parent or guardian where a minor is of concern. And she had just stated that her father took her to the doctors act.

**27:45->**
FKW states that her father had paid for a couple of pregnancy test for her, she not get into the specifics of why they were taken. Nor did the detective or social worker question her to why she needed the test other than to see if she were pregnant.

**28:25->**
FKW states that at first she thought initially the conversation over the child issues was if she had a boy or girl, what would it be or what she actually wanted. I had realized afterwards that when he sent the letter he wrote that he wanted it to be a child with me. They question her about it but she denys or does not give a full or complete answer to their questions.

**29:45->**
FKW states that after she had ran away she had shown Davonte the letters. She also states that since they use different colognes and perfumes that s/he sent each other spents of those.

THIRD PART   CHILD2MAIN        2010   09   20        164800-2 mp2

**00:00 to 00:19->**
FKW, becomes aggitated saying something about her picture was given out and that she did not like it. She was not clear on that issue.

**00:45 to 01:19->**
FKW states that of all of her siblings that she is the only one that likes or cares about her father, and no matter of regardless of what he does or has done she says she is the only one that can forgive.

**02:10->**
They question her more about the sexual relationship, she talks them that her stepfather did the same things as her father, except that he did it brutally.

**02:24->**
FKW, states that she had told her mother about what her stepfather had done to her and was doing to her, but all they would do is fight said her mom did nothing about it.

**02:30->**
FKW states; she was like 7 years old when her stepfathr did the things that he did to her. She said she would tell her mother that her stomach hurts and she would say we will deal with it later. She is more engaged in the narration with her stepfather than she is with her father, she is even more direct and explicit on age, time and dates

*Exh.6.1-28 C*

# Certificate of Appreciation

## Franesiour Kemache-Webster

The Education Department Expresses Appreciation
for Your Achievement as an Inmate Tutor at the
Federal Correctional Complex Terre Haute, Indiana
May 2014

A. Adams, Teacher
FCI Education Department

---

## Adult Continuing Education

FCI Terre Haute Education Department

*Franesiour Kemache*

For successful completion of
ACE Tools Of Thinking I

*Presented on August 9, 2012*

8/9/12
Date

FPC Literacy Coordinator

---

Date: 09/14/2010    Facility: MAR
Time: 01:55 PM

Federal Bureau of Prisons
TRULINCS
Message
Sensitive But Unclassified

**Message**

FROM: l800gigglez@yahoo.com
TO: 42459007 WEBSTER, BRYAN
SUBJECT: I JUST WANTED TO SAY......I LOVE YOU
DATE: 05/15/2010 09:45 PM

I LOVE YOU SO MUCH...I REALY DO..IM SORRY THAT YOU FEEL THIS WAY!! I NEVER WHAT ANYTHING TO HAPPEN TO YOU...IM SICKER THAN I WAS BEFORE BECAUSE OF ALL THIS CRYING...BUT ITS OK BECAUSE ITS NOT ALL ABOUT ME... IM SORRY FOR WHAT EVER I HAVE DONE AND WHAT EVER YOU MAY HAAVE FELT THAT I HAVE DONE..I LOVE YOU EVER SO MUCH AND I HOPE YOU LOVE ME TO...I AM SO GLAD THAT I GOT TO HEAR YOUR VOICE...AGAIN IM SORRY FOR SAYING WHAT I SAID...BUT I WAS NOT REFERING TO ME...I DO LOVE YOU AND I DO CARE I DO WHAT TO SPEND THE REST OF MY LIFE WITH YOU!!! DADDY YOUR THE BEST THIG A GIRL CAN EVER ASK FOR...AND I LOVE YOU!!! I REALY DO... I KNOW THAT TONITE I WILL SEE YOU BUT I ALSO KNOW THAT I WILL HAVE NITEMARES..I SAY THIS BECAUSE I KNOW NOW THAT IM NOT SURE WAHT TO THINK...IS THIS GOING TO HAPPEN AGAIN? OR WILL THIS HAUNT ME LATER QN IN LIFE? ITS SCARY STUFF!! PLEASE KNOW THAT I LOVE YOU AND I DO CARE...KNOW THAT NO MTTER WERE YOU ARE...IF YOU EVER GIVE BY UP OR DOWN I WILL LOVE YOU FOR WHO YOU ARE AND I WILL CARE FOR YOU NO MATTER WHERE YOU ARE..YOU STILL HAVE TO REMRMBER THAT I AM ONLY 16 AND I AM STILL TITLED AS A CHILD..I HAVE DONE MANY ADULT THINGS AND I STILL WILL DO CHILDISH THINGS... I LOVE YOU VERY MUCH VEN IF YOU DONT WANT TO BE TOGETHER AFTER THIS I WILL LOVE YOU BECAUSE NO MATTER WHAT YOU WILL ALWAYS BE MY DADDY!!IF IM NOT UP IN TIME TO SEND YOU A GOODNITE LETTER...I WANT TO SAY GOOD NITE AND I LOVE YOU EVER SO MUCH!!EVEN IF WE ARE NOT TOGETHER I WILL NOT WANT T LOOK FOR ANYONE ELSE BECAUSE I KNOW FOR A FAACT THE I WILL NEVER GET OVER YOU...I LOVE YOU WITH ALL MY HEART I REALY DO AND I WILL KEEP ALL MY HURTING COMMENTS TO MYSELF... REMEMBER THAT TONITE IS THE NITE WERE I FLY TO YOU..SO DONT COME FLYING TO ME TONITE IM GOING TO COME TO YOU..SO I WILL SEE YOU TONITE....DADDY I LOVE YOU SO MUCH AND IM SORRY I REALY A THOUGH TODAY WAS GOING TO BE A GREAT DAY!!! I GUESS NOT!!! IF I WAKE UP IN THE MORNIG GOD WILLING I WILL E-MAIL YOU IF I CANT TONITE...I LOVE YOU WITH ALL MY HEART THAT I PROMISE I WILL NOT HURT YOU AGAIN...IF I AM MAKKING YOU UP SET OR WHAT HAVE WE PLEASE LET ME KNOW SO I CANCORRECT MYSELF!! WELL IM GOING TO LET THIS END NOW...O SO DOES THIS MEAN THAT WE ARE OVER? I HOPE NOT!!! WELL I LOVE YOU SO MUCH AND I HOPE YOU LOVE ME TOO...XOXOXOXOXOX GIVE YOUSELF A HUG AND KISS...DID YOU EAT? WELL I LVOE YOU MUAH

**Translation**

No data found matching the specified criteria.

All messages are placed on a 1 hour hold.

User ID: tf10233    Page 1 of 1

---

Date: 09/14/2010    Facility: MAR
Time: 01:55 PM

Federal Bureau of Prisons
TRULINCS
Message
Sensitive But Unclassified

**Message**

FROM: 42459007 WEBSTER, BRYAN
TO: "Francesca Kemache" <l800gigglez@yahoo.com>
SUBJECT: RE: I hate my life I just wanna die
DATE: 05/11/2010 05:18 PM

Don't Hate........read the previous e-mail and I only have $20,oo  left on my e-mail account so it will truly have to be by thursday the commissaory  ok  I will e-mail in 2 hrs   Just calm down and hold ur head up  I got u  don't I always  and I always keep my promises  something will work out 2morrow I am sure   Sorry ms Bratler did not contact U back, I do not know, why, but then again I do not know exactly what U 2 had fully discussed.  llove U  L8r  (muah)  :)

-----Kemache, Francesca on 05/11/2010 04:18 PM wrote:

>
I hate my life....I feel as if im dying and the only thing thts keeping me alive is the fact that I know your comming home, Im sick as a dog and Im mad because I cant get anything you ask accomplished.. I have not been to Western nion and I wanted to have been send you the money! I miss you more that I have ever missed anything, and I love you more that life its self. I dont know wat to say or do anymore, I just cant wait until tomarow!!! I hope you let me know what they say!! I want you to call like you have before but I know you cant because its not you money you are ring :(...I just ant wait to see you again! All I can remember I that day in court when I say you and I was abel to hug and kiss you, Im so mad that I cant do that now! I want to be able to hold you and see you!  Great your voice your face your smile your laugh you help your incorgment I just miss everything about you! at times I just want to do something so bad to get to were you are but then I remember  I m a minor and 2 Im a girl we cant be together :( I then want to run away to were you are and sneak in your cell and be with you everyday!  I never knew I could miss some one this bad!But now I can realy seee how much feeling I have for you and its ALOT!!When the time comes for me to b with you again Im going to be oh so happy!! Im not going to stop smiling nor let go of you! Im going to cling on to you like glue stuck to paper! Everyone when I wear you t-shirt I sit and think I wonder if hels is the last thing I would have from him...... but then I tell myself no I have evenmore I have his heart!! I love you more that you can ever emagine. Then when Im done thinking I get your special loation and rub it on my face then on my hands then on my butt, and say daddy if you can hear mel!thanks to your loation you will no longer have to worry about looking at ashly ness again! then smile. I say my prayers and hope to dream about you all nite long!I  dont cry I just sit and think,I remember you saying I dont want a baby I want a grown woman! so you dont have to worry about me being a baby. In my notes I keep a countdown just incase the people in there want to pkay with your mind and you do have to get out the 16th of Sept. I count down so today you only have 128 more days to go. Isent you the address fax and telephone numbers to the 3 people at the halfway house.I hope that helps.  I love you so much and I do hope to hear from you soon. Lots of love ME. 143 all day long! hus and kiss yourself for me. I thought of a cupte names pick wat ones you like and if they should be for the kitten or the twins. If you dont like any make one for me!  1.kitten 2.twins 3.tom&jerry 4.happy nappy * I dont know can you please think of names and I will choose..its hard!! well xoxoexoxoxoxoxoxoxoxoxoxoxoxo and I love you take care of your self and I will do the same please talk to me sometime to nitel! lots of love.. ME
Ps I love you............did you know this is a type of loation....I use this loation it smells rally good whe I wrie agai I will rub it in the paper as well a spray my special sentl! :) well lota of love MUAH~MUAH~MUAH~MUAH~MUAH

**Translation**

No data found matching the specified criteria.

All messages are placed on a 1 hour hold.

User ID: tf10233    Page 1 of 1

Exhibit 24

Exhibit-30

**CERTIFICATE OF COMPLETION**

PRESENTED TO

# Franesiour Kemache-Webster

### The Art of Critical Decision Making 1

March 2014

For Successfully Completing the above Adult Continuing Education Course
Federal Correctional Complex Education Department Terre Haute, Indiana

_A. Adams_
A. Adams, Teacher

---

**CERTIFICATE OF COMPLETION**

PRESENTED TO

# Francesiour Kemache-Webster

### The Art of Critical Decision Making, Part 2

July 2014

The gentleman named successfully completed the above Adult Continuing
Education Course through the Education Department of the
Federal Correctional Complex in Terre Haute, Indiana

_A. Adams_
Adams, Teacher

---

## Certificate of Completion

awarded to:

# Franesiour Kemache-Webster

for participating in the following ACE class:

### Effective Communication, Part 2

FCI Terre Haute

October 24, 2014

ACE Coordinator